**2022-1200 and 2022-2223**

# United States Court of Appeals for the Federal Circuit

AMERANTH, INC.,

*Plaintiff-Appellant,*

— v. —

DOMINO'S PIZZA, LLC, DOMINO'S PIZZA, INC.,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the Southern District of California in No. 3:12-cv-00733-DMS-WVG, Honorable Dana M. Sabraw, Judge*

## NON-CONFIDENTIAL BRIEF FOR PLAINTIFF-APPELLANT

JERROLD J. GANZFRIED
GANZFRIED LAW
5335 Wisconsin Avenue, NW, Suite 440
Washington, DC 20015
(202) 486-2004
jjg@ganzfriedlaw.com

ROBERT F. RUYAK
LARSON LLP
900 17th Street, NW, Suite 320
Washington, DC 20006
(202) 798-4661
rruyak@larsonllp.com

*Counsel for Plaintiff-Appellant*

NOVEMBER 21, 2022

## CERTIFICATE OF INTEREST

Counsel for Appellant, Ameranth Inc., certifies the following:

1. The full name of every party or amicus represented by me is:

Ameranth, Inc.

2. The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me:

None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4. The names of all law firms and the partners or associates that appeared the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Larson LLP:  Robert F. Ruyak

Ganzfried Law:  Jerrold J. Ganzfried

Caldarelli Hejmanowski Page & Leer LLP: Ben West, Lee Everett Hejmanowski, William J. Caldarelli

Witkowlaw, APLC: Brandon J. Witkow

Osborne Law LLC: John William Osborne

Fabiano Law Firm, P.C.: Michael D Fabiano

Munger Tolles & Olson LLP: Edward George Dane, Peter E. Gratzinger

Watts Law Offices: Ethan Mahoney Watts

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

Federal Circuit Case Nos. 2022-1655, 2022-1657, 2022-1660, 2022-1661, 2022-1662, 2022-1663, 2022-1666, 2022-1667, 2022-1668, 2022-1669, 2022-1671, 2022-1672, 2022-1673, 2022-1674, 2022-1675, 2022-1676, 2022-1677, 2022-1678, 2022-1679, 2022-1680, 2022-1681, 2022-1682, 2022-1683, 2022-1684, 2022-1686, 2022-1687, 2022-1689, 2022-1690, 2022-1692,

AMERANTH, INC. *Plaintiff – Appellant,* v. PAPA JOHN'S USA, INC., OPENTABLE, INC., SEAMLESS NORTH AMERICA, LLC, GRUBHUB, INC., AGILYSYS, INC., HYATT CORPORATION, STARWOOD HOTELS & RESORTS WORLDWIDE INC., BEST WESTERN INTERNATIONAL, INC., MARRIOTT INTERNATIONAL, INC., THE RITZ-CARLTON HOTEL COMPANY, L.L.C., MARRIOTT HOTEL

SERVICES, INC., RENAISSANCE HOTEL OPERATING COMPANY,

HOTEL TONIGHT, INC., HOTELS.COM, L.P., HILTON RESORTS

CORPORATION, HILTON WORLDWIDE, INC., HILTON

INTERNATIONAL CO., KAYAK SOFTWARE CORPORATION, MOBO

SYSTEMS, INC., ORBITZ, LLC, STUBHUB, INC., TICKETMASTER,

LLC, LIVE NATION ENTERTAINMENT, INC., TRAVELOCITY.COM

LP, USABLENET, INC., FANDANGO, INC., HOTWIRE, INC.,

EXPEDIA, INC., ORACLE CORPORATION, ATX INNOVATION, INC.,

dba Tabbedout, APPLE INC., EVENTBRITE, INC., TICKETBISCUIT,

LLC, TICKETFLY, INC., STARBUCKS CORPORATION, *Defendants –*

*Appellees.*

---

*(Appeals from the United States District Court for the Southern District of*

*California in Nos. 3:12-cv-00729-DMS-WVG, 3:12-cv-00731-DMS-WVG,*

*3:12-cv-00737-DMS-WVG, 3:12-cv-00739-DMS-WVG, 3:12-cv-00858-*

*DMS-WVG, 3:12-cv-01627-DMS-WVG, 3:12-cv-01629-DMS-WVG, 3:12-*

*cv-01630-DMS-WVG, 3:12-cv-01631-DMS-WVG, 3:12-cv-01633-DMS-*

*WVG, 3:12-cv-01634-DMS-WVG, 3:12-cv-01636-DMS-WVG, 3:12-cv-*

*01640-DMS-WVG, 3:12-cv-01642-DMS-WVG, 3:12-cv-01644-DMS-WVG,*

*3:12-cv-01646-DMS-WVG, 3:12-cv-01648-DMS-WVG, 3:12-cv-01649-*

*DMS-WVG, 3:12-cv-01650-DMS-WVG, 3:12-cv-01651-DMS-WVG, 3:12-*

*cv-01653-DMS-WVG, 3:12-cv-01654-DMS-WVG, 3:12-cv-01655-DMS-WVG, 3:12-cv-01656-DMS-WVG, 3:12-cv-02350-DMS-WVG, 3:13-cv-00350-DMS-WVG, 3:13-cv-00352-DMS-WVG, 3:13-cv-00353-DMS-WVG, and 3:13-cv-01072-DMS-WVG, Judge Dana M. Sabraw.)*

---

6.    All information required by Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6):

None.

/s/ Robert F. Ruyak
Robert F. Ruyak

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF CONTENTS.................................................................... v

TABLE OF AUTHORITIES .............................................................. viii

STATEMENT OF RELATED CASES ................................................ xii

I.      INTRODUCTION ...................................................................1

II.     JURISDICTIONAL STATEMENT ..........................................7

III.    STATEMENT OF THE ISSUES ..............................................8

IV.    STATEMENT OF THE CASE ..................................................9

        A.     Ameranth's History, Technology and Patents .....................9

        B.     Ameranth's Licensing and Enforcement of Its Patent Portfolio.........10

        C.     PTAB Denied Review of All CBM Challenges to '077 Patent..........12

        D.     After The PTAB and *Apple* Decisions, The District Court Lifted the Stay and Scheduled Pretrial Proceedings and Trials on Ameranth's '077 Claims ..................................................14

        E.     Ameranth's Case Against Domino's................................15

        F.     The District Court's "Exceptional Case" Finding and Award of Attorney's Fees and Non-Taxable Costs.............................16

V.      SUMMARY OF THE ARGUMENT ........................................21

VI.    ARGUMENT..........................................................................26

        A.     Standard of Review ...........................................................26

        B.     The District Court's Exceptional Case Analysis Is Contrary to the Fundamental Legal Requirement to Consider "Both the Governing Law and the Facts of the Case."........................27

1.     Contrary to the Presumption of Validity, The District Court Erroneously Concluded That Ameranth Should Have Known that the '077 Patent Claims Were Invalid From Their 2012 Issuance Date .................................................. 28

      a.     The PTAB's Repeated Decisions Finding That the '077 Claims Were Different And Presumed Valid Confirmed the Reasonableness of Ameranth's Continued Assertion of '077 Patent Claims ................... 29

      b.     The Actions of Defendants and The Court Were Consistent with the PTAB's View That the '077 Patent Claims Were Valid and Distinct And Ameranth's Enforcement was Reasonable ..................... 33

      c.     The District Court Ignored the Pervasive Lack of Clarity and Guidance on §101 Patent Eligibility During the Critical Time Period Of This Case ............... 36

      d.     The District Court's Statement That Ameranth Failed to Reassess Its Case After the Federal Circuit's Decision in *Apple* Case Is Wrong And Contrary to the Record .................................................................. 38

2.     The District Court Compounded its Errors in Articulating the Governing Legal Standards By Incorrectly Applying §285 Principles to the Record In Its Conclusory Findings of Fact ...................................................................................... 39

3.     The District Court Consideration of the Vacated Judgment and Improper Inferences From the Settlements of the *Menusoft* and *Pizza Hut* Cases Contravene Governing Legal Standards For Finding Exceptionality ............................ 40

      a.     The '077 Patent Claims Asserted against Domino's Were Not Involved in the *Menusoft* Verdict and Were Presumed Valid ..................................................... 43

      b.     Sanctioning Ameranth For Its Good Faith Participation In This Court's Mandatory Mediation Program In *Menusoft* Was Error ......................................................... 44

        c.     The Pizza Hut Settlement is Objective Evidence of the Reasonableness of Ameranth's Continued Enforcement of the '077 Claims.......................................45

    4.    The District Court's Reliance on Undecided Factual Disputes, and Late-Stage Unresolved Non-Infringement Contentions Cannot Support an "Exceptional Case" Determination.............................................................49

  C.    Even If This Case Was Properly Deemed "Exceptional," the District Court Committed Reversible Error In Quantifying Attorney's Fees......................................................................54

    1.    The District Court Failed to Explain the Relationship Between its Exceptionality Findings and the Amount Awarded ...................................................................54

    2.    The District Court Abused Its Discretion When It Failed To Quantify Fees Based on the Temporal Limitations In Its Exceptionality Order............................................58

VII.  CONCLUSION.............................................................................61

**CONFIDENTIAL MATERIAL OMITTED**

The material redacted from this brief is subject to a protective order.  The confidential information on pages 5, 6, 8, 10, 15, 19, 24, 45, 46, 47, and 48 relates to confidential settlement information.

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*ACS Hospital Systems, Inc. v. Montefiore Hospital*,
732 F.2d 1572 (Fed. Cir. 1984) ...................................................5, 42

*AdaptiveStreaming Inc. v. Netflix, Inc.*,
No. 8:19-01450-DOC-KES, 2020 WL 2573471 (C.D. Cal. Mar.
11, 2020) ...........................................................................................27

*Alice Corp. PTS. Ltd v. CLS Bank International*,
573 U.S. 208 (2014) ................................................................*passim*

*Ameranth, Inc. v. Domino's, LLC*,
792 Fed.Appx.780 (Fed. Cir. 2019).......................................1, 2, 15

*Ameranth, Inc. v. Menusoft Sys. Corp.*,
463 Fed.Appx. 920 (Fed. Cir. 2012)........................................*passim*

*American Axle & Manufacturing, Inc. v. Neapco Holdings LLC, et al.*,
142 S.Ct. 2902 (2022), *cert. denied*............................................37, 38

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................51

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ...............................................*passim*

*Bass Enters. Prod. Co. v. United States*,
133 F.3d 893 (Fed. Cir.1998) ..........................................................26

*Bayer CropScience AG v. Dow AgroSciences LLC*,
851 F.3d 1302 (Fed. Cir. 2017) .......................................................26

*Ceats, Inc. v. Cont'l Airlines, Inc.*,
2013-1529 (Fed. Cir. June 24, 2014).................................................44

*Cellspin Soft, Inc. v. Fitbit Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) .......................................................34

*Checkpoint Sys., Inc. v. All-Tag Security S.A.*,
   858 F.3d 1371 (Fed. Cir. 2017) ...........................................................50

*Dragon Intell. Prop., LLC v. Dish Network LLC*,
   956 F.3d 1358 (Fed. Cir. 2020) ...........................................................60

*Effective Expl., LLC v. BlueStone Nat. Res. II, LLC*,
   2018 WL 466246 (E.D. Tex. Jan. 18, 2018) ........................................55

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
   No. 2020-2038 (Fed. Cir. Oct. 14, 2021)..............................................44

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
   790 F.3d 1369 (Fed. Cir. 2015) ...........................................................26

*Global Cash Access, Inc. v, NRT Tech. Corp.*,
   2018 WL 4566678 (D. Nev. 2018).......................................................30

*Goodyear Tire & Rubber Co. v. Haeger*,
   581 U.S. 101 ...............................................................................54, 56

*Gust v. Alphacap Ventures, LLC*
   905 F.3d 1329 (Fed. Cir. 2018) ...............................................28, 37, 57

*Hartley v. Mentor Corp.*,
   869 F.2d 1469 (Fed. Cir. 1989) .............................................................6

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   572 U.S. 559 .......................................................................................26

*HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*,
   No. 08-2220-JWL (D. Kan. Feb. 10, 2014).........................................44

*Industrial Print Technologies, LLC v. Cenveo, Inc.*,
   2020 WL 50507738 (N.D. Texas Aug. 26, 2020) ...............................55

*Interactive Wearables, LLC v. Polar Electro Oy*,
   No. 21-1281, 2022 WL 4651135 (Oct. 3, 2022) .................................38

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017) .....................................................58, 59

ix

*Konami Gaming Inc. v. High 5 Games LLC*,
  No. 2:14- cv-01483-RFB-NJK, 2021 WL 6497033 (D. Nev. Oct.
  25, 2021) ................................................................................................30

*Large Audience Display Sys., LLC v. Tennman*,
  660 Fed.Appx. 966 (Fed. Cir. 2016)...................................................28

*Lumen View Technology LLC v. Findthebest.com, Inc.*,
  811 F.3d 479 (Fed. Cir. 2016) .............................................................54

*NetSoc, LLC v. Chegg Inc.*,
  No. 18-CV 10262, 2020 WL 7264162 (S.D. N.Y. Dec. 10, 2020) ...................59

*Mayo Collaborative Serv. v. Prometheus Lab., Inc.*
  566 U.S. 66 (2012) .......................................................3, 13, 24, 37, 57

*Medtronic Nav. v. Brainlab Medizinische*,
  603 F.3d 943 (Fed. Cir. 2010) .............................................................50

*Microsoft Corp. v. I4I Limited Partnership*,
  564 U.S. 91 (2011)................................................................................42

*Monolithic Power Systems, Inc. v. O2 Micro International Ltd.*,
  726 F.3d 1359 (Fed. Cir. 2013) ...........................................................56

*National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
  676 Fed.Appx.967 (Fed. Cir. 2017).....................................................59

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)..............................................................................27

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
  635 F.3d 539 (Fed. Cir. 2011) ........................................................4, 30

*PersonalWeb Techs. v. EMC Corp.*,
  No. 5:13-cv-01358-EJD (N.D. Cal. July 6, 2020)..............................48

*Rambus Inc. v. Infineon Techs. AG*,
  318 F.3d 1081 (Fed. Cir. 2003) ...........................................................56

*In re Rembrandt Technologies LP Patent Litigation*,
  899 F.3d 1254 (Fed. Cir. 2018) ..............................................54, 56, 57

*SFA Systems, LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) .........................................................27

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
  No. 5:19-CV-243-H, 2022 WL 1447946 (N.D. Tex. Feb. 9, 2022)...................59

*Stone Basket Innovs., LLC v. Cook Med., LLC*,
  892 F.3d 1175 (Fed. Cir. 2018) .........................................................27

*Stragent, LLC v. Intel Corp.*,
  No. 6:11-CV-421, 2014 WL 6756304 (E.D. Tex. Aug. 6, 2014)................49, 50

*Thermolife Int'l LLC v. GNC Corp.*,
  922 F.3d 1347 (Fed. Cir. 2019) ...................................................33, 53

*United States v. Munsingwear*,
  340 U.S. 36 (1950).............................................................................43

*Univ. of Pittsburgh v. Varia Med. Sys., Inc.*,
  561 Fed.Appx. 934 (Fed. Cir. 2014).................................................30

*Volkswagen of Am., Inc. v. United States*,
  540 F.3d 1324 1330 (Fed. Cir. 2008) ...............................................26

*Wi-LAN Inc. v. Sharp Electronics Corporation*,
  No. 15-379-LPS, 2022 WL 1224901 (D. Del. April 25, 2022).........................60

## Federal Statutes

28 U.S.C.
  § 1295(a)(1) ...............................................................................7
  § 1338(a) ....................................................................................7
  § 1400(b).....................................................................................7

35 U.S.C.
  § 101.............................................................................*passim*
  § 102..............................................................................10
  § 103.................................................................2, 10, 13
  § 112................................................................................2
  § 285.............................................................................*passim*

## STATEMENT OF RELATED CASES

This case was previously before this Court in *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 Fed. Appx. 780 (Fed. Cir. 2019), Circuit Judges Prost, Plager, and Dyk.

By order dated June 3, 2022 (Doc. 14), the Court designated No. 2022-1200 as a related companion case to be assigned to the same merits panel and heard together with 29 other cases that "appear to be related and involve the same patent."[1]

On October 17, 2022, this Court (Doc. 23) consolidated Nos. 2022-1200 and 2022-2223 and directed that the consolidated appeals be companion cases to Nos. 2022-1655, *et al*.

---

[1] Federal Circuit Nos. 2022-1655, 2022-1657, 2022-1660, 2022-1661, 2022-1662, 2022-1663, 2022-1666, 2022-1667, 2022-1668, 2022-1669, 2022-1671, 2022-1672, 2022-1673, 2022-1674, 2022-1675, 2022-1676, 2022-1677, 2022-1678, 2022-1679, 2022-1680, 2022-1681, 2022-1682, 2022-1683, 2022-1684, 2022-1686, 2022-1687, 2022-1689, 2022-1690, 2022-1692.

## I. __INTRODUCTION__

Years of heavily contested litigation culminated in this Court's decision, affirming-in-part and vacating-in-part, a summary judgment ruling against Ameranth, resulting in twelve of the '077 patent's eighteen claims being found ineligible under 35 U.S.C. §101. *Ameranth, Inc. v. Domino's, LLC*, 792 Fed.Appx. 780 (Fed. Cir. 2019) ("*Domino's*"). The district court subsequently declared this case exceptional under 35 U.S.C. §285 and awarded $2.7M in fees to Domino's for the entire case.

The starting point and fulcrum for the district court's exceptional case determination was a settlement on appeal, and vacated judgment resulting from, this Court's mandatory mediation program in 2011 in an altogether different matter. *See Ameranth, Inc. v. Menusoft Sys. Corp.,* 463 Fed.Appx. 920 (Fed. Cir. 2012) ("*Menusoft*"). In the district court's opinion, the trial judgment, settlement and vacatur in *Menusoft*—which antedated the issuance of Ameranth's '077 patent, involved claims of different patents (the '850 and '325), and did not address §101 eligibility at all— "weakened" the presumption of validity and placed a "cloud" over all of Ameranth's patents and all claims thereof, even those not yet issued, like the '077. Carrying this flawed perspective throughout its §285 analysis, the district court's admittedly "clouded" view ignored, discounted, or simply dismissed critical events and circumstances that occurred over the next six years of

1

litigation in *Domino's*.  Foremost among the key events that, under governing legal standards, strengthened and reinforced (rather than weakened) the '077 claims' statutory presumption of validity:  the PTO granted the '077 claims in 2012 *after* and *over Menusoft*'s prior art and judgment, thus endowing the claims with the statutory presumption of validity; and an unbroken series of PTAB decisions between 2013 and 2017, rebuffing every validity challenge Domino's and others aimed at the '077 patent under 35 U.S.C. §§ 101, 103, and 112, with detailed explanations why the '077 differed from other Ameranth patents held invalid (including the patent claims in *Menusoft*).  Appx400-403, Appx1191-1231, Appx848-869.  Yet the district court decided that Ameranth, as a "reasonable litigant" should have "known" as early as 2012 that the yet-to-be-issued claims of the '077 patent were ineligible, and awarded fees from that point on.

The district court's failure to account for these—and other—post-*Menusoft* circumstances defines its failure to properly consider the "totality of the circumstances" and constitutes legal error for which its §285 finding, and concomitant fee award, should be reversed.

The series of PTAB decisions rejecting all challenges to the '077 illuminates why the purported "cloud" attributed to the vacated *Menusoft* judgment is a legally indefensible illusion.  Declining defendants' early 2013 attack, the PTAB stated: "we determine that the information presented in the Petition does not establish that

2

any of claims 1-18 of the '077 Patent are more likely than not unpatentable."
Appx1231. The defendants tried again in 2015. They failed. *See* Appx1236. And
when the defendants returned to the PTAB in 2017, they failed again. That final
attempt is significant because defendants invoked §101 to argue that the '077 was
invalid under the Supreme Court's decisions in *Alice Corp. PTS. Ltd v. CLS Bank
International*, 573 U.S. 208 (2014) ("*Alice*") and *Mayo Collaborative Serv. v.
Prometheus Lab., Inc.*, 566 U.S. 66 (2012) ("*Mayo*") and this Court's decision in
*Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) ("*Apple*"). *See, e.g.,*
Appx1273, Appx1286, Appx1294-1296, Appx1299, Appx1310. Once more
declining to institute, however, the PTAB explained why those cases did not
warrant a different result:

> One of the later cases Petitioner specifically relies upon
> in its Petition is *Apple* …. In that case, the Federal Circuit
> upheld the Board's determination that claims from
> several patents related to the '077 patent were
> unpatentable under 35 U.S.C. § 101. There are, however,
> a number of limitations found in the '077 patent claims
> that are not in the related patents. Appx858 at n.1
> (internal citations omitted).

> We are not persuaded that this analysis [in its 2014
> decision] is in tension with *Alice*, its predecessor *Mayo*,
> or its progeny, and, therefore, we are not persuaded that
> we should institute this ground due to subsequent
> statement of the existing law. Appx860-861.

In this litigation, Ameranth pursued a course that aligned exactly with the
PTAB's rulings. After *Apple* was decided in November 2016, Ameranth limited

its case against Domino's solely to '077 claims, all of which had withstood

defendants' barrage of attacks.  And Ameranth ceased enforcing claims of all

patents that had been held invalid.  On that basis, the district court—with the

acquiescence of Domino's and all defendants in the companion cases—permitted

and scheduled litigation to proceed toward trial on Ameranth's '077 claims.

When it ultimately declared this case exceptional, the district court harshly

criticized Ameranth for enforcing its '077 claims—even after the PTAB's

favorable decision—on the incorrect premise that the PTAB's 2017 denial of

review after *Alice* and *Apple* did not constitute a substantive application of those

cases to the '077.  Appx11 at 3-10.  Yet it <u>did</u>.  That manifest error alone unravels

the district court's entire exceptionality analysis.

First, the plain language of the PTAB opinions contradicts the foundation

upon which the §285 finding depends.

Second, the district court erred in its failure to adhere to this Court's

recognition that such PTAB decisions are probative evidence that a party's

enforcement of patent claims that withstood review is objectively reasonable.  *See*

*Old Reliable Wholesale, Inc. v. Cornell Corp.,* 635 F.3d 539, 549 (Fed. Cir. 2011)

("…the fact that the PTO confirmed the validity of the '950 patent on

reexamination provides probative evidence on the issue of whether Old Reliable

had a reasonable basis for its assertion…").

4

CONFIDENTIAL MATERIAL REDACTED

Third, by conflating the '077 claims that withstood every attack at the PTAB with claims of other patents held invalid, the court's exceptionality analysis violates the bedrock principle that each claim of each duly-issued patent is entitled to a presumption of validity that is "never annihilated, destroyed, or even weakened regardless of what the facts are of record" (*see ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1574-75 (Fed. Cir. 1984)), unless and until *that claim* is extinguished by final judicial or administrative decree.  These foundational errors impacted every other basis the court relied on in deeming Ameranth's enforcement of '077 claims unreasonable.  And the errors broadly resonated, affecting the disposition of still other '077 claims against defendants in the 29 companion appeals[2].

Fourth, in assessing the reasonableness of Ameranth's '077 enforcement, the district court criticized not only Ameranth's reliance on the favorable PTAB actions and the presumption of validity, but also Ameranth's reliance on—and compliance with—other judicial orders, including the court's unopposed order to proceed toward trial on the '077 claims.

These included Ameranth's successful participation in court-ordered mediation that resulted in ███████ settlements:  one in this Court's Appellate Mediation Program in 2011 and another that Judge Sabraw himself mandated.  The

---

[2] *See* Statement of Related Cases, *supra*.

criticism leveled against Ameranth in the exceptionality opinion is thus contrary to precedent holding that a party cannot be sanctioned for litigation efforts it was permitted to pursue. *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1381 (Fed. Cir. 2020). And it is irreconcilable with well-settled precedent that the settlement of disputes is desirable and should be promoted. *See, e.g., Hartley v. Mentor Corp.*, 869 F.2d 1469, 1473, n. 5 (Fed. Cir. 1989).

The district court's reliance on late-stage settlements to draw adverse inferences about Ameranth's motives is all the more erroneous because the court raised the issue *sua sponte*, lacked any record of the actual facts, circumstances, or amounts of the settlements, and made inaccurate findings before the parties knew the matters were under consideration in the §285 analysis. With all those shortcomings, the district court committed clear error in equating Ameranth's licensing settlements, including its ▮AMOUNT▮ settlement with Pizza Hut, to nuisance-value settlements imposed on unsophisticated parties early in the cases that the court cited.

Fifth, in quantifying fees, the district court erred by awarding all fees incurred by Domino's during the entire case and failed to relate the amount awarded to the aspects of the case that informed the exceptionality finding. This Court has never affirmed an exceptional case finding based even in part on the situation presented here. Patent owners are entitled to enforce statutory rights that

the PTO granted, that withstood multiple challenges year after year and that, under law, are protected by a presumption of validity. The exceptional case ruling should be reversed.

## II.    **JURISDICTIONAL STATEMENT**

This Court's jurisdiction over this appeal from the United States District Court for the Southern District of California rests on 28 U.S.C. §1295(a)(1). *See* Fed. R. App. P. 4(a)(4)(B)(i).

This case arises under the United States patent laws and jurisdiction exists under 28 U.S.C. §§ 1338(a) and 1400(b). Ameranth appeals the following: (1) Order Granting Domino's Second Renewed Motion to Declare Case Exceptional and to Award Attorney's Fees and Non-taxable Costs (Appx1-21); (2) Order Denying Ameranth's Motion to Retax Costs (Appx22-25); (3) Order Granting Domino's Request for Fees and Costs (Appx26-32); (4) Order Granting Ameranth's Motion for Issuance of a Final and Appealable Amended Judgment (Appx33-36); and (5) Clerk's Judgment (Appx37-40).

Notices of appeal were filed six days after the Final and Appealable Amended Judgment and seven days after the district court order extending the time to appeal. Appx2681-2684. This Court denied Domino's Motion to Dismiss No. 2022-1200 on timeliness grounds on October 17, 2022. Doc. 23.

CONFIDENTIAL MATERIAL REDACTED

III.    **STATEMENT OF THE ISSUES**

1.    Did the district court abuse its discretion in assessing the totality of

circumstances in a §285 analysis?

      a.    Did the court err by disregarding critical factors such as: the

'077 claims' presumption of validity from its issuance in 2012;

the PTO's granting, and subsequent PTAB decisions

supporting, the continued validity of the '077 claims; and the

existing uncertainty in the law of patent eligibility under §101?

      b.    Did the court err by penalizing a patent owner's continued

enforcement of the claims by relying on:  the '077 claims'

presumption of validity and the PTAB's repeated reasoned

rejections of all invalidity challenges; and the full acquiescence

of Domino's and all defendants to the court's approval and

order to proceed toward a 2018 trial on the asserted claims of

the '077 patent?

      c.    Did the court err by improperly considering and misconstruing

prior judicial actions that: mandated mediations that led to very

`[SETTLEMENT TERM]` of other cases; and a thrice confirmed

court-ordered vacatur of a judgment in another case?

2.    Did the district court's award of full fees from the inception of the

case in 2011 comply with governing standards, including the

requirement that the amount awarded must be related to the basis for

finding exceptionality, where there was no sanctionable conduct and

where the '077 claims were not found invalid until September 2018?

## IV.    STATEMENT OF THE CASE

Because the district court's "exceptional case" assessment relied extensively

on proceedings in other courts and forums, and involved patents other than the

'077, a full understanding of those proceedings is necessary.

### A.    Ameranth's History, Technology and Patents

Inventor and current President Keith McNally founded Ameranth more than

twenty-five years ago to develop and provide innovative wireless, real-time

communications technology and associated computer software and hardware

systems that would enhance the efficiency of hospitality-focused enterprises such

as hotels, restaurants, entertainment venues and similar establishments.  Appx339,

¶8; Appx779.

Ameranth's inventions and development of these systems resulted in the

issuance by the PTO of five patents:  the '850 (2002), '325 (2005), '733 (2006),

'077 (2012) and '060 (2015).  *See* Appx341-342, Appx347, Appx352, Appx356.

In addition to sales of its own products, Ameranth has licensed to forty-seven

sophisticated royalty-paying entities.  Appx340, ¶10; Appx779-780.

9

CONFIDENTIAL MATERIAL REDACTED

### B.    Ameranth's Licensing and Enforcement of Its Patent Portfolio

**E.D. Texas:**  Ameranth filed its first enforcement action in 2007 in the Eastern District of Texas against Menusoft, Inc. (Case No. 2:07-cv-0271), alleging infringement of various claims of Ameranth's '850, '325 and '733 patents.  *See* Appx460.  Three years later, Ameranth sued six more companies for infringement in the same federal court.  Trial in *Menusoft* resulted in a September 2010 jury verdict finding that the seven asserted claims of the '850, '325 and '733 patents[3] were not infringed and were invalid as anticipated (35 U.S.C. §102) and obvious (35 U.S.C. §103).  Appx493-501.  While Ameranth's appeal from the judgment was pending, the parties successfully participated in this Court's mandatory mediation program.  Appx2313-2316.  Settling the infringement action, Menusoft licensed Ameranth's patents and agreed to ▮SETTLEMENT TERM▮ a ▮SETTLEMENT TERM▮ that is ▮SETTLEMENT TERM▮.  Appx2270-2271, Appx2419.

Based on this ▮SETTLEMENT TERM▮ settlement, Magistrate Judge Payne granted the parties' joint request to vacate the *Menusoft* judgment.  Appx841-843, Appx1406.  In so doing, he considered and rejected objections filed by amici who were defendants in other infringement cases brought by Ameranth and found that vacatur was "in the interests of the parties and the public."  *Id.*

---

[3] The three patents have a total of 47 claims.  Appx368-382, Appx383-399, Appx423-440.

That vacatur was challenged and revisited twice in the present case. Each time, the district court, Judges Sammartino and Sabraw, upheld it, finding that the vacated judgment did not have any preclusive effect. Appx2869, Appx2873-2875, Appx3268-3270.

**S.D. Cal.:** In August 2011, Ameranth filed enforcement actions in the Southern District of California, including against Domino's, Pizza Hut, Papa John's, and OpenTable. Appx2708-2733. The original complaints alleged infringement of claims of the '850 and '325 patents. Appx2714-2721, Appx2722-2729. In March 2012, Ameranth's '077 patent (which is the subject of the judgment in these appeals) was issued over all the prior art introduced in, and the judgment entered by, the district court in *Menusoft*, which Ameranth submitted to the PTO during prosecution of the '077. Appx400-421. Ameranth then added allegations that Domino's and other defendants infringed claims of the newly-issued '077 patent, and another patent, the '733, and sued additional defendants. *See* Appx335-366. All cases filed in the Southern District were subsequently consolidated for pre-trial proceedings. Appx330-334.

In October 2013, Apple, Domino's and other defendants filed PTAB petitions challenging the validity of each asserted claim of the four patents. *See* Appx3271.

At defendants' request, the consolidated cases were stayed pending

11

resolution of these petitions. Appx3271-3275.

### C.    PTAB Denied Review of All CBM Challenges to the '077 Patent

The PTAB instituted CBM review of some claims of the '733, '850 and '325 patents in March 2014. The history of those PTAB petitions and Ameranth's unbroken success on the '077 challenges is central to how this litigation proceeded and plays a pivotal role in the totality of circumstances relevant to the §285 decisions.

Although the PTAB found certain claims of those three patents to be invalid, the PTAB repeatedly and consistently declined to institute any proceeding challenging the '077 claims on any ground.  The PTAB panel stated:  "…we determine that the information presented in the Petition does not establish that any of claims 1–18 of the '077 Patent are more likely than not unpatentable."  Appx1231.  And it explained in detail how the '077 claims differed from the others. Appx1191-1231.[4]

In 2015, various defendants filed new CBM petitions seeking review of the still valid claims of the '325 and '850 patents under §§103, 112 and 101, and two petitions seeking review of the '077 patent under §§112 and 103.  Again, the

---

[4] On the three other patents, the same panel of PTAB judges found all but ten claims of the '850 and '325 patents ineligible under §101; and it found some claims of the '733 patent ineligible under §101, but that others (3, 6-9, 11 and 13-16) were valid. *See Apple*, *supra,* 842 F.3d at 1236, n. 2.

PTAB granted review of the '850 and '325 patents and found the challenged claims invalid under §103, but again denied review of the '077 claims. *See* Appx1236.

On appeal from the first PTAB rulings on the other three patents, this Court affirmed-in-part and reversed-in-part. All asserted claims of the '850, '325, and '733 patents the PTAB considered were held ineligible under §101. *Apple,* 842 F.3d at 1245.[5]

Defendant Starbucks in 2017 made yet another attempt at PTAB review of '077 claims. Appx848-869. This petition cited both the Supreme Court's *Alice* (2014) and this Court's *Apple* (2016) decisions as new authorities. *See, e.g.,* Appx1273, Appx1286, Appx1294-1296, Appx1299, Appx1310. The PTAB, applying and considering both cases*,* again rejected attacks on the '077, stating:

> Our analysis in the 14 Decision was based on the specific application of the alleged abstract idea claimed in the '077 patent and our determination, based on the record in the 14 Proceeding, that the claims were directed "to a specific computer-aided system programmed by software to perform specialized functions." 14 Dec. 40. We are not persuaded that this analysis is in tension with *Alice*, its predecessor *Mayo*, or its progeny, and, therefore, we are not persuaded that we should institute this ground due to subsequent statement of the existing law.

---

[5] The ten '850 and '325 claims originally held eligible, but later found obvious in the second CBM, were not part of that appeal. They were the subject of a separate appeal, Nos. 16-2678, -2679, -2680, and -2681, that Ameranth later withdrew. Appx3734-3738; *see also infra* at 14.

Appx860-861.

> **D.** **After The PTAB and *Apple* Decisions, The District Court Lifted the Stay and Scheduled Pretrial Proceedings and Trials on Ameranth's '077 Claims**

The PTAB's post-*Alice/*post-*Apple* decision concluded the review proceedings for which the consolidated cases had been stayed. Ameranth moved the district court to permit the S.D. Cal. cases to resume. Ameranth also dismissed its appeal (*see* n. 5, *supra*), dropped all claims of the '850, '325 and '733 patents from all pending cases, and advised the defendants and the district court that it would continue to assert only the '077 claims. Appx3726-3729.

Consistent with Ameranth's repeated CBM successes on the '077 claims, no defendants asked to preserve the stay, nor did any seek a ruling from the district court on the eligibility of '077 claims. Rather, they filed a Statement of Non-Opposition. Appx3744. So, with all parties' agreement—and consistent with the PTAB position on the '077 claims' validity—the district court lifted the stay. Appx3751-3752. It also issued a scheduling order regulating discovery and other pretrial proceedings, including claim construction. Appx3758-3764.

On December 14, 2017, the district court set a June 2018 deadline for summary judgment motions and scheduled the first trial (Pizza Hut) for late August 2018. Appx8351-8355. During the nearly year and a half of trial preparation, no defendant sought a district court ruling on the eligibility of the '077

14

CONFIDENTIAL MATERIAL REDACTED

claims.

It was not until the summary judgment deadline in June 2018, within three months of trial, that Pizza Hut filed the first motion[6] of any defendant seeking such a district court ruling.  Appx8594, Appx8607-8622.  Domino's did not join in Pizza Hut's motion or file its own §101 motion by the deadline.

While Pizza Hut's motion was pending, and before trial commenced, Ameranth and Pizza Hut complied with the court's mandatory settlement conference requirement and reached a settlement before Magistrate Judge Gallo. Appx1361, ¶3, Appx9789, ¶10.  Pizza Hut agreed to ███ a ███ SETTLEMENT TERM ███ of ███ AMOUNT ███ in exchange for a ███ SETTLEMENT TERM ███.  Appx1364-1387.

With the Pizza Hut trial off-docket, Ameranth's case against Domino's was next in line, with trial scheduled for October 1, 2018.  Appx9778.  That case is the subject of this appeal.

### E.    Ameranth's Case Against Domino's

After Pizza Hut settled, Domino's sought leave to file a late joinder adopting Pizza Hut's now-moot §101 motion.  Appx9814.  The district court granted that request and permitted additional briefing on points specific to Domino's. Appx9837-9838.  Less than a week before the scheduled trial, the court held

---

[6] Pizza Hut's motion included the 2014 and 2017 PTAB decisions discussed *supra* at Section C.  *See* Appx8651, Appx8693 (cover pages only to avoid duplication of documents in appendix).

fourteen claims of the '077 patent ineligible under §101—in direct conflict with the PTAB's prior '077 decisions. Appx10929-10942. Before that late September 2018 order, no court or other authority had determined that any claim of the '077 patent was ineligible or invalid on any basis.

This Court affirmed in part, upholding the finding that claims 1, 6-9, 11, and 13-18 of the '077 patent were ineligible, but vacated-in-part and remanded as to claims 4 and 5 for lack of jurisdiction. This Court did not award costs to either side on the appeal. *Domino's,* 792 Fed.Appx at 788.

### F.    The District Court's "Exceptional Case" Finding and Award of Attorney's Fees and Non-Taxable Costs

Domino's subsequently sought an "exceptional case" declaration and an award of $2.7M in attorney's fees under §285. Domino's motion argued that Ameranth's '077 patent validity and infringement positions were weak (Appx476-478); that the vacated jury verdict in *Menusoft* and the PTAB decisions on review of the '850, '325, and '733 patents should have convinced Ameranth to cease enforcement of the '077 patent (*Id.*); and accused Ameranth of an assortment of alleged misdeeds (Appx480-481).

In response, Ameranth explained why Domino's had not satisfied its burden of proving exceptionality. On the specific asserted claims of the '077 patent, Ameranth described how and why the PTAB's multiple, consistent rejections of challenges to the '077 patent weighed dispositively against an exceptional case

16

finding.  The PTAB had clarified why the '077 claims differed from claims of other Ameranth patents in ways that left its eligibility undisturbed and, further, why its conclusion on the '077 patent remained correct even after *Alice* and *Apple*. Appx754-756.  In addition:

1.     Ameranth pointed out that the only substantive issue that had been decided—§101 eligibility—was a controversial, unsettled area of law, and that this judicial uncertainty was a critical factor in weighing relative strength of legal positions in the totality of circumstances. Appx754.  Ameranth recited that no claim of the '077 had been declared ineligible by any authority until the September 2018 district court decision. And Ameranth explained why Domino's delay in seeking a ruling from the court on §101 until the eve of trial should weigh against an exceptional case finding.  Appx755.

2.     In addressing the vacated *Menusoft* judgment, Ameranth explained that the 2011 verdict involved only 7 of 51 claims of the '825, '350 and '733 patents, and did not involve *any* of the '077 claims asserted against Domino's, which were all presumed valid.  Nor did *Menusoft* involve any §101 issue. And the *Menusoft* verdict had been vacated by the trial court and could have no further effect.  Appx754-755.

3.     Ameranth pointed to inaccuracies in Domino's description of the facts surrounding claim construction; and Ameranth explained why those inaccuracies,

on a disputed factual issue that the court never resolved, were irrelevant to the §101 holding upon which the judgment was based.  Appx767-775.

    4.    Ameranth also argued that, even if the court were to make an exceptional case finding, Domino's request for fees covering the entire litigation should be reduced.  Fees should not be awarded, for example, for the PTAB review proceedings in which defendants' challenges to the '077 patent were repeatedly unsuccessful.  Appx775-776.

    Without a hearing (Appx1131), the district court found that the case was "exceptional" and awarded massive attorney's fees dating back to the beginning of the case in 2011:

    1.    The court found that the judicially approved *Menusoft* vacatur supported Domino's contentions on the weakness of Ameranth's litigation position.  In the court's view, *Menusoft* placed a cloud over all Ameranth's patents that made enforcement efforts unreasonable.  Appx8 at 14-18.  The opinion omits any reference to:  (1) the Texas court's vacatur was later revisited by two federal judges in California (Judge Sammartino and Judge Sabraw) who agreed that the vacatur removed any preclusive impact; or (2) that the '077 patent had not yet been issued when the *Menusoft* case settled.  Nor does the opinion consider that the PTO issued the '077 patent after *Menusoft* and after Ameranth had submitted all the prior art references in that case and the *Menusoft* judgment to the PTO during

CONFIDENTIAL MATERIAL REDACTED

prosecution Appx400-403.  The district court's assessment of the totality of circumstances did not acknowledge the unsettled state of the law on §101.

2.      The district court rejected Ameranth's contention that the PTAB's denial of multiple petitions to review '077 claims weighed against finding the case exceptional.  The opinion omits any mention of the PTAB's explanation why review of the '077 was unwarranted even after *Alice* and *Apple* and accepts Domino's contention that the PTAB did not substantively consider those cases.  Appx11.  The opinion concludes that "no reasonable patent litigant would believe" the '077 patent was viable.  Appx12.

3.      Although not advanced by Domino's as a basis for exceptionality, the court viewed Ameranth's settlements with Menusoft and Pizza Hut negatively as indicative of Ameranth's belief that the patents were weak.  Appx8, Appx20.  And the court found the timing of the Pizza Hut settlement "troubling."  *Id.*  The opinion does not mention that the settling defendants [SETTLEMENT TERM] in return for [SETTLEMENT TERM] or that the Pizza Hut the case was settled on the date the court itself set for the mandatory mediation.  Appx1361, ¶3, Appx1364-1387.

4.      Without acknowledging the many claims Ameranth dropped after *Apple,* limiting the litigation solely to the '077 patent, the court found that Ameranth failed to reassess its case after *Alice* and after *Apple*, where this Court found certain claims of the '850 and '325 patents ineligible.  Appx11, Appx17-18.

The court concluded that "…the record reflects that Ameranth pushed ahead without any apparent concern that the '077 Patent might be found unpatentable …. Ameranth's intent to continue with this litigation, and to pursue litigation on other patents from the same family, is indicative of its obstinate position, and suggests a need to deter similar conduct in the future." Appx18.

5.    Addressing Domino's contentions about litigation of the term "synchronous," the court found that any perceived inconsistencies could indicate weakness in Ameranth's position on the issue of infringement.  The court did not explain how this could impact the "exceptional case" analysis where this factual dispute was new, never resolved, and did not relate to patent eligibility under §101. On Domino's other challenges to Ameranth's litigation conduct, the court found that they were either not supported by the record, did not amount to misconduct, or had no bearing on the litigation and were not sufficient to make the case exceptional.  Appx13-15.  The court concluded that the "manner in which this case was litigated is not the stronger of the Domino's Defendants' arguments, but it, too, supports a finding that this case is exceptional."  Appx18.

6.    Turning to quantification of the fee award in a separate opinion, the court accepted Domino's request to be compensated for all litigation back to 2011. The court made a "holistic" total award to Domino's of more than $2.7 million for the entire case from inception, including fees for the multiple PTAB petitions in

which the '077 claims prevailed, and for all the litigation that pre-dated the PTAB

decisions, the *Alice* and *Apple* decisions, and the court's own §101 summary

judgment in September 2018.  Appx26-31.

Ameranth filed a motion for reconsideration that addressed inaccuracies in

the district court's descriptions of the *Menusoft* and *Pizza Hut* settlements, a

subject not set forth in Domino's motion and that the court raised *sua sponte.*

Ameranth explained that given the settlements, the court's criticism and

comparisons to cases involving "nuisance value" settlements were inapt.

Appx1143-1146. And since the settlements were not in the record and available to

the district court when it issued the exceptionality order, Ameranth provided that

information.  The district court denied reconsideration.  Appx2444-2446.

## V.    <u>SUMMARY OF THE ARGUMENT</u>

The districts court's finding that this is an "exceptional case" under §285 is

deeply flawed by its departure from both legal precedent and the factual record. Its

failure to correctly apprehend and apply the "totality of the circumstances"

standard was an abuse of discretion. The court omitted critical, dispositive

circumstances; drew unwarranted negative inferences from an incomplete

assessment of the facts; incorrectly gave great weight to a vacated judgment;

disregarded the bedrock legal rule that an issued patent claim bears a presumption

of validity that is only overcome by clear and convincing evidence; and did not

follow the governing principles for assessing the relative strength of the parties' legal positions at relevant times during the litigation. These critical errors—and more—mandate reversal.

The pivotal events that the court erroneously relied on are the trial judgment, settlement on appeal, and vacatur in the *Menusoft* case in 2011 involving only certain '850 and '325 patent claims.  Contrary to two subsequent S.D. Cal. rulings in 2013 that the judicial vacatur would not be "second guess[ed]" or disturbed (Appx2875, Appx3269), the district court now viewed *Menusoft* as the linchpin for finding Ameranth's subsequent enforcement of any patent to be unreasonable. The court also drew unwarranted negative inferences from the settlement Ameranth and Menusoft reached in this Court's mandated mediation program, ignoring the public policy favoring dispute resolution. In the court's view, this singular event forever damaged and "weakened" the presumption of validity and placed a "dark cloud" over all other Amaranth patents and claims, including those of the '077 that had not even issued at the time.  The district court's erroneous, hindsight conclusion in 2021 is that Amaranth should "just have known" in 2011 that all claims of all of its patents—present and future—were invalid and ceased all enforcement actions. That revisionist history wholly conflicts with the law and the factual record, fails to properly consider the "totality of the circumstances" required in determining an exceptional case, and dooms the court's decision.

1.     Ignoring the PTO's post-*Menusoft* issuance of the '077 and dismissing the PTAB's decisions and analysis as irrelevant, the district court anchored its fee award on the faulty premise that "no reasonable patent litigant would have believed the claims in the ['077] patent were viable." Appx12. That conclusion is contrary to this Court's guidance on implementing §285.

2.     The court must analyze the totality of circumstances in deciding whether the party seeking fees has met its burden of proof. That did not happen here. The fee award is based neither on the totality nor the actuality of the circumstances. The award, moreover, violates this Court's instructions that: (1) a party cannot be penalized for litigating a claim it was permitted to pursue (*Munchkin,* 960 F.3d at 1381); (2) each claim of a patent is a separate invention which is presumed valid (*Comair Rotron, Inc. v. Nippon Densan Corp.,* 49 F.3d 1535, 1539 (Fed. Cir. 1995)); and (3) a patentholder's enforcement of a duly-issued patent is presumed to be in good faith (*Medtronic Nav. v. Brainlab Medizinische*, 603 F.3d 943, 954 (Fed. Cir. 2010).)

A key example demonstrates how the district court's failure to acknowledge the pervasive uncertainty in patent eligibility standards eroded the foundation for its §285 analysis. The court's stated rationale rejected Ameranth's contention that it was reasonable to rely on the PTAB decisions. Instead, the court accepted Domino's argument that in declining to institute review of the '077 patent post-

*Alice* and post-*Apple* the PTAB "did not… find the claims of the '077 Patent 'to be valid and patentable.'" Appx11 at 7-8. The court thus concluded that "the PTAB decisions do not support Ameranth's argument that it had a reasonable basis to believe the claims of the '077 Patent were valid after *Alice* and *Apple*." Appx11 at 8-10.

But the reality is that the PTAB's decisions not to institute review, even post-*Alice*/post-*Apple*, flatly contradict the district court's characterization. The PTAB explained why its conclusion—that the '077 claims were directed "to a specific computer-aided system programmed by software to perform specialized functions"—applied even after *Alice* and *Apple*. Appx858-859. The PTAB made clear that its analysis was not "in tension with *Alice*, its predecessor *Mayo*, or its progeny, and, therefore, we are not persuaded that we should institute this ground due to subsequent statement of the existing law." Appx860-861.

This Court and numerous district courts recognize such PTAB decisions as objective evidence that a patent owner's enforcement efforts are not unreasonable.

Further indicia of the objective reasonableness of Ameranth's enforcement efforts on the '077 patent include: (1) the dozens of industry-leading corporations that sought licenses and agreed to large royalty payments without litigation; (2) the business decisions made by sophisticated companies to settle infringement actions and pay ▮SETTLEMENT TERM▮ sums to license the patented technology; and (3) the knowledge

of all parties to these licenses and settlements that no court had ever found the '077 claims to be ineligible or invalid on any basis.

3.     Among the district court's other stated justifications for a §285 award were Ameranth's successful participation in mandatory court-ordered mediations settling prior cases (including a case settled in this Court's mediation program); and Ameranth's reliance on three consistent judicial rulings (including one by Judge Sabraw) regarding the vacatur of a judgment in a case in another court addressing other patents—not the '077. These stated justifications do not satisfy governing legal principles, do not withstand factual analysis, and do not support the §285 sanction imposed in this case.

Patent owner Ameranth was confronted throughout the litigation with events and facts that could have led to only one reasonable conclusion:   that it had the statutory right, and the court's approval, to continue enforcing the presumed valid claims of the '077 patent through and until an adverse §101 decision in September 2018.  Had the court properly considered all circumstances, it could not have found this case exceptional.

Although the district court's exceptionality decision targets the post-*Apple* period, it shifted fees "holistically" for the entire case *ab initio,* awarding Domino's fees for multiple petitions for review at the PTAB (none of which resulted in review or invalidation of the '077 patent) and for the entire time period

through September 2018, during which the '077 claims remained viable and presumed valid. In quantifying fees in this manner, the district court contravened governing legal standards.

## VI.    **ARGUMENT**

### A.    **Standard of Review**

This Court reviews the grant or denial of attorneys' fees for an abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014). The district court abuses its discretion when it makes "a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017) (internal quotation marks omitted).

This Court exercises plenary review (*de novo*) of a trial court's interpretation of precedent. *Bass Enters. Prod. Co. v. United States*, 133 F.3d 893, 895 (Fed. Cir.1998); *Volkswagen of Am., Inc. v. United States*, 540 F.3d 1324 1330 (Fed. Cir. 2008). The *de novo* standard applies to the district court's application of legal standards in its §285 analysis. *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1372 (Fed. Cir. 2015).

**B.**  **The District Court's Exceptional Case Analysis Is Contrary to the Fundamental Legal Requirement to Consider "Both the Governing Law and the Facts of the Case."**

The touchstone of an exceptional case determination is judicial consideration of "the totality of the circumstances …." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  This encompasses considerations of both law and fact:  "(A)n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (*considering both the governing law and the facts of the case*) or the unreasonable manner in which the case was litigated." *Id.* (emphasis added).

Ameranth need not have an unassailable litigation position, because that is not the standard for finding a case "exceptional." *Stone Basket Innovs., LLC v. Cook Med., LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018).  If it were so, the standard would swallow up the "exception"—with every case ultimately lost susceptible to classification as exceptional and every prevailing party encouraged to request a fee award.  The correct question is whether, in the totality of circumstances, Ameranth's belief that it had a right to enforce its patents was reasonable, as opposed to "hopeless" or "baseless." *SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) ("A party's position on issues of law ultimately need not be correct for them to not 'stand out,' or be found reasonable"); *see also AdaptiveStreaming Inc. v. Netflix, Inc.*, No. 8:19-01450-DOC-KES, 2020 WL

27

2573471 at *2 (C.D. Cal. Mar. 11, 2020) ("Plaintiff's claims were not so baseless

or 'hopeless' so as to warrant attorneys' fees.  And, '(i)n view of the evolving

nature of §101 jurisprudence,' Defendant's arguments as to the "clearly" abstract

nature of Plaintiff's patent are unpersuasive.") (citing *Gust, Inc. v. Alphacap

Ventures, LLC*, 905 F.3d 1321, 1329 (Fed. Cir. 2018)).

This Court vacated a §285 fee award in *Large Audience Display Sys., LLC v.

Tennman*, 660 Fed.Appx. 966 (Fed. Cir. 2016) precisely because the "district court

based its ruling, to some extent, on both a misunderstanding of what factors are

relevant to an exceptionality determination and a clearly erroneous view of the

record evidence."  It explained that:

> (T)he circumstances upon which a district court relies
> must actually exist, and findings that such circumstances
> do exist must be justified by the record.  Here, many of
> the "circumstances" deemed dispositive by the district
> court, including but not limited to those noted, supra,
> either did not occur or were given undue weight.

*Id*. at 971.

### 1.    Contrary to the Presumption of Validity, The District Court Erroneously Concluded That Ameranth Should Have Known that the '077 Claims Were Invalid From Their 2012 Issuance Date

In assessing the relative strength of the parties' legal positions, the district

court ignored the PTO's post-*Menusoft* issuance of, and the substance of all PTAB

decisions on, the '077 claims.  Instead, the court conflated the '077 claims with

those of three other patents.  By summarily discounting the PTAB's rejections of

28

repeated attacks on the '077 patent, its opinion reflects a profound misunderstanding of the PTAB review process and a total obliviousness to the detailed PTAB explanations. The district court's omission or misapprehension of the actual circumstances irredeemably dooms its §285 ruling.

> **a.    The PTAB's Repeated Decisions Finding That the '077 Claims Were Different And Presumed Valid Confirmed the Reasonableness of Ameranth's Continued Assertion of '077 Claims**

Disregarding their statutory presumption of validity under 35 U.S.C. 282(a), and having failed to recognize the differences between the '077 claims and those of other Ameranth patents ('850, '325, '733) reviewed by the PTAB and this Court on appeal, the district court reasoned that Ameranth should have known that the '077 claims were similarly invalid. But the record says exactly the opposite. Until the district court's September 2018 summary judgment, the only authority that reviewed all claims of the four Ameranth patents—the PTAB—expressly distinguished the '077 claims from all the others.

These distinctions by the PTAB, ignored by the district court, are of paramount importance since the PTAB explained its decision not to review the '077 claims multiple times. Both before and after *Alice* and *Apple*, the PTAB reached the same result—the '077 claims are likely patent eligible and cannot be conflated with the others.

This Court has concluded that where PTO action on reexamination supports a party's position, it is probative of reasonableness. *See Old Reliable Wholesale,* 635 F.3d at 549; *see also Univ. of Pittsburgh v. Varia Med. Sys., Inc.,* 561 Fed.Appx. 934, 944 n. 3 (Fed. Cir. 2014).

And indeed, directly on point here, courts have held that the PTAB's declination to institute CBMs is objective evidence that a patentholder's position was reasonable–even where the district court later finds ineligibility. *See Konami Gaming Inc. v. High 5 Games LLC,* No. 2:14- cv-01483-RFB-NJK, 2021 WL 6497033 at *5 (D. Nev. Oct. 25, 2021) ("The PTAB declined to institute such review, citing High 5's failure to demonstrate a reasonable likelihood of establishing the invalidity of any of the challenged claims in the '869 patent. While this Court disagrees with the PTAB's findings with respect to validity, it acknowledges that the PTAB's rejection supports Konami's assertion that its litigating position was not objectively baseless or unreasonable to an outside evaluator with knowledge of patent law."); *Global Cash Access, Inc. v, NRT Tech. Corp.*, 2018 WL 4566678 *3 (D. Nev. 2018) ("the fact that the PTAB declined to institute the two CBMs filed by NRT tends to show it was not objective, established fact that the '792 patent was invalid . . . while the Court disagrees with the PTAB with respect to the validity of the '792 patent, the fact that another tribunal specialized in patent law declined to institute a proceeding that could have

30

found the '792 patent invalid does tend to show that GCA's position was not objectively baseless").

This conclusion is even more compelling when, as here, the PTAB decisions set out the specific reasons for its refusal to institute.  Such definitive language by the PTAB tribunal, the only authority other than the court legally empowered to review validity, necessarily reinforces the reasonableness of a patent owner's confidence in the strength of its patent, the continued presumption of validity, and the right to enforce.  *See Hyatt v. Kappos*, 625 F.3d 1320, 1334 (Fed. Cir. 2010) (en banc) (recognizing the deference owed the PTO as "the knowledgeable agency charged with assessing patentability"); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1331 (Fed. Cir. 2008) ("This is not to say that the determinations made by the corps of examiners are not important, or should not be worthy of appropriate deference to their expertise in … technical matters, especially when we have the benefit of well-reasoned explications.").

Furthermore, the district court erred in crediting Domino's demonstrably inaccurate summary of the PTAB decisions.  Specifically, Domino's argued that:

> Ameranth continues to falsely assert that in the Starbuck's '077 CBM, the PTAB substantively considered the petition**,** in light of the Apple decision**,** and ruled that the '077 patent was patent-eligible. To the contrary, *the PTAB made clear that its decision was not a substantive decision*, instead denying the petition because Starbuck had filed a previous petition. *The Apple case is never mentioned.*

31

Appx2244 (emphasis added). But the PTAB expressly said that its 2014 decision

"found" that challenged '077 claims fell "*within a category of patent eligible*

*subject matter,*" and that defendants' 2017 submission did not change that view

Appx858 (emphasis added). And it expressly addressed *Apple*:

> One of the later cases Petitioner specifically relies upon
> in its Petition is *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d
> 1229, 1235 (Fed. Cir. 2016). In that case, the Federal
> Circuit upheld the Board's determination that claims
> from several patents related to the '077 patent were
> unpatentable under 35 U.S.C. §101. There are, however,
> a number of limitations found in the '077 patent claims
> that are not in the related patents. See Pet. 33–37; 43–52.
> Thus, we view *Ameranth* as providing another example
> of post-*Alice* analysis, but not as requiring a finding of
> unpatentability for the challenged claims in this
> proceeding.

Appx858.

Therefore, the district court incorrectly concluded "the PTAB decisions do

not support Ameranth's argument that it had a reasonable basis to believe the

claims of the '077 Patent were valid after *Alice* and *Apple*." Appx11. This error is

apparent from the plain, unambiguous language of the PTAB decisions.

The '077 claims were entitled to a presumption of validity before defendants

filed their petitions for review, and they were entitled to a presumption of validity

after the PTAB denied the petitions for review. Under governing law, the PTAB

decisions did not terminate, lessen or limit the '077's presumption of validity in

any way. That presumption continued and was essential to assessing the

reasonableness of Ameranth's '077 enforcement efforts. There is no indication that

the court considered the substance and significance of the PTAB's explanations for

rejecting attacks on the '077 claims' validity.

This clear, reversible legal error is at the very foundation of the district

court's exceptionality ruling and nullifies its conclusion under §285.

> **b.    The Actions of Defendants and The Court Were Consistent with the PTAB's View That the '077 Claims Were Valid and Distinct And Ameranth's Enforcement was Reasonable**

Another critical flaw in the §285 ruling is the district court's failure to

account for the actions of Domino's, the party seeking fee-shifting.  Domino's

made no effort to obtain a ruling from the district court on eligibility following the

PTAB's rejection of defendant's petitions.  Domino's did not oppose the lifting of

the stay that permitted the case to proceed toward trial.  And Domino's remained

mum on §101 eligibility throughout the many months of trial preparation until the

eve of trial.

Domino's silence was surely reasonable in light of the PTAB's explanations

why the '077 patent was not vulnerable to the validity challenges previously made

and rejected.  But it just as surely defeats Domino's fee-shifting request.

*Thermolife Int'l LLC v. GNC Corp.,* 922 F.3d 1347, 1357 (Fed. Cir. 2019) (this

Court has "stressed that one consideration that can and often should be important to an exceptional case determination is whether the party seeking fees "provide[d] early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior").

If, as the court concluded, no reasonable litigant would have believed the '077 claims were not viable, that standard should have been applied to Domino's as well.   It was not.

Absent the slightest hint from Domino's that the '077 claims' viability was still in question, how could it be unreasonable for Ameranth to advance the case for trial? And even under the district court's erroneous and retrospective view in 2021 that "no reasonable patent litigant would believe" the '077 patent was viable, why excuse Domino's—the party with the burden of proving its entitlement to fees?  Either way, the governing §285 standards are not satisfied.

This Court's precedents show why Ameranth's continued enforcement was objectively reasonable.  The presumption of validity applies with full force when the invalidity challenge is brought under the "abstract ideas" exception to §101. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) ("This presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the prerequisites for issuance of a patent,' including §101.") (quoting *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91,

95-96 (2011)).

This presumption is strengthened, not lessened, when the PTAB denies repeated petitions to institute review and specifically sets forth, and reconfirms, its reasoning. Domino's belatedly joined and made a §101 challenge only after Pizza Hut settled, the deadline for motions had passed, and the parties expended substantial resources to prepare for the imminent trial.

Domino's delay in bringing the ineligibility motion, alone, warrants denying "exceptional case status" and fee-shifting. The Supreme Court decided *Alice* in 2014, more than four years before Domino's sought a district court ruling. Also weighing heavily against exceptionality is Domino's failure to object to lifting the stay in 2017. Had Domino's believed (as the district court said any reasonable patent litigant would) that the '077 claims were ineligible, how can it be excused for failing to seek a district court ruling on eligibility?

The district court's only explanation for Domino's total inaction on §101 eligibility during this critical period is that "many moving parts" in the litigation might have led Domino's attention elsewhere, ignoring that Domino's was part of a joint defense groups with dozens of firms and counsel. If it was so clear that "no reasonable patent litigant would believe" the '077 claims were valid, how could it be reasonable for Domino's and all the other defendants to put those other "moving parts" ahead of the case-dispositive issue that, in the court's view, made

35

enforcement unreasonable?

This Court's precedents answer that question. It is reversible error for a district court to find an exceptional case based, in part, on a litigant pursuing litigation in reasonable reliance on district court orders allowing the litigation to go forward. *Munchkin,* 960 F.3d at 1381 (holding that "Munchkin cannot be faulted for litigating a claim it was granted permission to pursue," citing *Checkpoint Sys., Inc. v. All-Tag Security S.A.*, 858 F.3d 1371 (Fed. Cir. 2017)). The orders lifting the stay and scheduling trial permitted—and required—Ameranth to move forward. This principle is even more applicable in this case where the only authority that had addressed §101 in the '077 context—the PTAB—rejected the institution of invalidity review multiple times with clear explanations favoring eligibility.

### c. The District Court Ignored the Pervasive Lack of Clarity and Guidance on §101 Patent Eligibility During the Critical Time Period Of This Case

The district court's mistaken assessment of the PTAB's consistent rejection of defendants' §101 challenges to the '077 patent is all the more incorrect because this case was litigated in an era of extreme instability on the underlying substantive legal principles. Standards for patent eligibility under §101 were shifting. How a claim would fare in the existing chaos was far from predictable. For the district court's §285 analysis to weigh "relative strength" of legal positions without even

mentioning the raging §101 storm confirms that this case fails to satisfy the requirement of considering the totality of circumstances. As this Court stated in *Gust*:

> (i)n view of the evolving nature of §101 jurisprudence ... it is particularly important to allow attorneys the latitude necessary to challenge and thus solidify the legal rules without the chill of direct economic sanctions.

905 F.3d at 1329 (reversing §1927 award).

Isn't it penalty enough that patent claims prosecuted, allowed, issued, reviewed and approved by the PTO and PTAB, prior to landmark decisions like *Alice,* are subsequently invalidated under new §101 interpretations that retroactively jeopardize their validly? To go a step further, as the court did here, to find the enforcement of such patents "exceptional" and sanctionable is a bridge too far.

The Supreme Court's *Alice* and *Mayo* decisions generated confusion, discord, and uncertainty on eligibility. That reality placed patent holders and their previously-issued patents in precariously unpredictable positions on foundational questions of law that literally split this Court in half in *American Axle*. The confusion is so dire that past and present members of this Court, the PTO, and every segment of the patent law community have implored the Supreme Court for guidance and clarity, which has yet to come. *See* Brief for the United States as Amicus Curiae, p. 19-21, *American Axle & Manufacturing, Inc. v. Neapco*

*Holdings LLC, et al.*, 142 S.Ct. 2902 (2022), *cert. denied* ("Ongoing uncertainty

has induced 'every judge (on the Federal Circuit) to request Supreme Court

clarification,'" quoting Moore, J., concurring in denial of stay)*; see also American*

*Axle*, 967 F.3d 1347 at 1365 (Fed. Cir. 2020) (Stoll, J., dissenting from denial of

rehearing en banc) ("Without clear direction from this court, the Patent Office and

district courts will likely reach inconsistent results when assessing the patent

eligibility of mechanical inventions …. In the face of our unwillingness to consider

patent eligibility as a full court, I grow more concerned with each passing decision

that we are. . .allowing the judicial exception to patent eligibility to 'swallow all of

patent law'") (internal citations omitted).  And the search for clarity continues.  *See*

*Interactive Wearables, LLC v. Polar Electro Oy,* No. 21-1281, 2022 WL 4651135,

*1 (Oct. 3, 2022) (call for view of Solicitor General).

  District courts should not, upon making a finding of unpatentability on the

eve of trial, use hindsight to impose the extreme sanction of fee shifting under

§285.

> **d.    The District Court's Statement That Ameranth Failed to Reassess Its Case After the Federal Circuit's Decision in *Apple* Case Is Wrong And Contrary to the Record**

The district court opinion relies on the flatly inaccurate view that Ameranth

failed to assess the strength of its case after *Alice* and *Apple.*  The record is directly

opposite.  After *Apple*, in January 2017 Ameranth withdrew its pending appeal to

this Court on ten claims of the '850 and '325 patents (*see* n. 5, *supra*), dropped

enforcement of all the other claims of those patents in the consolidated cases, and

continued to assert only the '077 claims – on which the PTAB had repeatedly

denied CBM review stating that it was more likely than not that the '077 claims

*were patentable*.

The district court does not take into account that Ameranth did, in fact, pare

down the case substantially, and in a way that conformed precisely to the PTAB's

actions. The absence of any recognition of these facts in the district court's

exceptional case analysis is particularly telling. Where the "circumstances" the

court recites are inaccurate, the ruling is clear error.

> ## 2. The District Court Compounded its Errors in Articulating the Governing Legal Standards By Incorrectly Applying §285 Principles to the Record In Its Conclusory Findings of Fact

The district court distilled its assessment of "Ameranth's overall litigation

conduct" to a description fraught with subjective criticism that is contrary to the

record and that clashes with the chronology of critical events.  Starting with

*Menusoft* and other decisions on other patents and ending with the 2018 summary

judgment and appeal in this case, the court states that "those losses have not had a

deterrent effect on Ameranth's behavior."  Appx20.  The court then takes a

negative view of Ameranth for the judicial vacatur of *Menusoft,* for settling with

Menusoft and Pizza Hut, and for appealing the summary judgment in this case.

And the court concludes that "this pattern of continued bullishness" makes this case exceptional. Appx21.

But it is axiomatic that it only takes one claim of one patent to find infringement. And all claims of the '077 patent were alive, well, and entitled to the presumption of validity at least until the September 2018 summary judgment ruling.

Under settled legal principles, the PTO's post-*Menusoft* issuance of the '077 patent and the PTAB decisions rejecting every challenge constitute an "objectively reasonable" basis for Ameranth's continued enforcement of the '077 patent. *Supra* at 29-33. That is confirmed by the actions of the parties and court in resuming the litigation in 2017 in conformance with the PTAB rulings that this Court reviewed in *Apple.*

> **3.    The District Court Consideration of the Vacated Judgment and Improper Inferences From the Settlements of the *Menusoft* and *Pizza Hut* Cases Contravene Governing Legal Standards For Finding Exceptionality**

In 2013, Judge Sammartino ruled that she would not "second guess" the vacatur decision in *Menusoft.* Appx2875. And Judge Sabraw—who left that decision undisturbed by denying a motion to reconsider (Appx3269)—did precisely that. Citing "public policy concerns surrounding vacatur of patent invalidity findings," the court made the vacatur a cornerstone of its exceptionality

decision. Appx8 at 6-20.[7]

The district court's backtracking on its 2013 decision to adhere to the vacatur—which governed the case for years and on which the parties were entitled to rely—exemplifies how its disregard of the PTAB rulings impacted the entire §285 process.

Contrary to the presumption of validity to which the '077 claims were entitled, the district court concluded that the *Menusoft* verdict and vacatur "raise questions about the strength of those presumptions here." Appx8 at 12-13. Even though the trial judge in *Menusoft* had in fact vacated the verdict, the exceptional case opinion proceeds on the stated premise that "claims in the '850, '325 and '733 Patents were found invalid in *Menusoft*." Appx8 at 13-14. And although recognizing that Menusoft did not even involve §101—and certainly did not involve any '077 claims since the patent had not yet issued—the court still found that "…the *Menusoft* verdicts cast a cloud on the Patents, and indicated a weakness in Ameranth's position." Appx8 at 15-16. And it went even further, concluding that "Ameranth's request to vacate those verdicts could be construed as an acknowledgement of that weakness…" Appx8 at 16-18.

Every step in that analysis is incorrect. This Court has consistently held that

---

[7] The only case cited for this public policy is a 1992 district court decision from the Eastern District of Virginia, which the exceptionality opinion misidentifies as the Eastern District of California. *Id.*

the presumption of validity is never weakened. *Microsoft*, 564 U.S. at 98 ("In the nearly 30 years since *American Hoist,* the Federal Circuit has never wavered in this interpretation of § 282"); *ACS Hosp.*, 732 F.2d at 1574-75 ("The presumption is never annihilated, destroyed, or even weakened, regardless of what facts are of record").

Contrary to these governing standards, the court's abandonment of the presumption of validity that stemmed from the vacated *Menusoft* judgment, cascaded and expanded as the litigation progressed. Starting from claims of the three patents in *Menusoft*—that the PTAB expressly distinguished from '077 claims—the district court placed the different claims asserted against Domino's under that same cloud. The exceptionality ruling expanded that conflation of claims even further. It described the summary judgment as invalidating *the patent*, not just the individual claims to which it was limited. And, again speaking of the entire '077 patent, the district court stated that this Court had "affirmed," but it did not mention that this Court vacated-in-part and mandated that claims 4 and 5 be removed from the judgment. Appx4-5. The incorrect, yet expanding, denial of the presumption of validity affects not only the exceptionality ruling. It has important ramifications for the companion appeals in Nos. 2022-1655, *et al.*, involving claims that had never before been invalidated.

a.    **The '077 Claims Asserted against Domino's Were Not Involved in the *Menusoft* Verdict and Were Presumed Valid**

Governing precedents demonstrate why the district court's reasoning and inferences about *Menusoft* are reversible error. *Menusoft* did not involve the '077 patent; it involved patents that Ameranth unilaterally dropped from this case after *Apple;* and it did not involve §101 eligibility. So even if the *Menusoft* jury verdict had not been vacated, it would not have affected the Domino's case. Indeed, Ameranth submitted the *Menusoft* verdict and associated prior art during prosecution of the '077 patent and the PTO still issued the '077 patent after considering it. Appx400-403.

In any event, the *Menusoft* judgment *was* vacated (over the amicus objections of two defendants in the consolidated S.D. Cal. case) and it was legal error to even be considered here. And the vacatur was not a unilateral act by Ameranth; it was confirmed by three judges (including Judge Sabraw). Far from a factor supporting §285 sanctions, the vacatur is something upon which Ameranth should be able to rely in good faith. The vacatur was judicial permission to nullify the verdict so that the merits of the '850 and '325 patent claims could be adjudicated elsewhere. *United States v. Munsingwear*, 340 U.S. 36, 40 (1950); *see also Rumsfeld v. Freedom NY*, 329 F.3d 1320, 1332 (Fed. Cir. 2003) ("(A) vacated judgment has no preclusive force either as a matter of collateral or direct estoppel

or as a matter of the law of the case") (citations omitted); *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1383 (Fed. Cir. 2021). Again, a party should not be penalized for pursuing claims it was permitted to litigate. *Munchkin*, 960 F.3d at 1381.

    **b.    Sanctioning Ameranth For Its Good Faith Participation In This Court's Mandatory Mediation Program In *Menusoft* Was Error**

As this Court has long stated and other courts have endorsed, mediation is a critical and favored aspect of the litigation process: mediators "serve a vital role in our litigation process. Courts depend heavily on the availability of the mediation process to help resolve disputes." *CEATS, Inc. v. Cont'l Airlines, Inc.*, 755 F.3d 1356, 1362 (Fed. Cir. 2014).[8]

For the district court to find this case exceptional based on Ameranth's good faith participation in the Appellate Mediation Program which led to a settlement is particularly alarming. The district court concluded that, by agreeing to the *Menusoft* settlement, along with the thrice-approved vacatur, a perpetual cloud (a virtual presumption of *invalidity*) was cast over *all* claims of *all* other Ameranth

---

[8] "The public interest would be served by acknowledging the efficacy of the Federal Circuit's mandatory mediation program in which the parties participated, thereby encouraging future dispute resolution by means less costly of private and public resources than full-blown litigation." *HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2014 WL 524661 at *3 (D. Kan. Feb. 10, 2014).

CONFIDENTIAL MATERIAL REDACTED

patents.  The exceptionality ruling viewed the entirety of Ameranth's patent

enforcement effort through this occluded prism. This unfounded and unwarranted

conclusion, that the court weighed heavily in favor of fee-shifting, not only lacks

factual support, but is in direct conflict with the foundational premise of patent law

that each surviving claim of each patent continues to have the presumption of

validity.  Menusoft's willingness to forgo defending the jury verdict on appeal, and

to take a license with a substantial commitment to pay ███ SETTLEMENT TERM ███ for the life

of the patents (which continues today) confirms the reasonableness of Ameranth's

continued enforcement.  If successful settlements—achieved in mandatory

mediation conducted under the Court's auspices—can be used to support monetary

sanctions, that would be a powerful blow against the programs that exist in every

federal court.

>           c.    **The Pizza Hut Settlement is Objective Evidence of the**
>                 **Reasonableness of Ameranth's Continued**
>                 **Enforcement of the '077 Claims**

As to Pizza Hut, when the eve-of-trial settlement was reached, the claims of

the '077 patent were still entitled to the presumption of validity flowing from the

string of consistent favorable actions by the PTO (issuing the '077 claims over the

prior art and verdict in *Menusoft*) and the PTAB (in denying, with reasoned

support, every petition seeking review of the '077 claims' validity).  Rather than

wait to see the outcome of either its district court motion or a trial, Pizza Hut

settled and ██████ a ██████████████ ████████ .

Devoid of record support is the district court's statement that Ameranth reached a settlement with Pizza Hut "pending dismissal." *See* Appx5, Appx20. The parties had no such knowledge. Other than a hearing on Pizza Hut's motion, the only thing "pending" at the time of settlement was *trial* on the schedule Judge Sabraw set. The imminence of trial, state of §101 law, and the prior uniform PTAB decisions rejecting invalidity claims, all made Pizza Hut the party with more reason to fear an adverse ruling on its motion. It was clear error for the district court to infer otherwise. And as to the "timing" of the settlement being "troubling" to the court (Appx20), the successful *Pizza Hut* mediation was mandated on a date the court itself chose. Appx9789.

How, then, could the court find the timing of settlement "troubling"? How is a reasonable patent litigant supposed to respond to an offer to settle for the ████████████████? Not settle? If, as the district court's opinion concludes, court-mandated settlement conferences that succeed just prior to trial heavily favor an "exceptional case" finding, what could a reasonable litigant do?

It is inconceivable that a court-mandated mediation that results in a settlement where the defendant obtains a ██████ and the patent holder obtains a ████████████ in return, could ever weigh in favor of an exceptional case finding. Such a result undermines every public policy consideration, every court

46

rule, every interest in promoting compromises of disputes.

Under governing legal standards and the record, the district court's inferences and comparison of this case to *Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC,* No. 2:18-CV-07661 (GJS), 2019 WL 3064112, at \*4 (C.D. Cal. May 23, 2019) ("*Kindred*") is error.  *See* Appx12.

First, the court is mistaken in saying that Ameranth's late-stage settlement of '077 claims with Pizza Hut followed a series of "losses."  *See* Appx20-21.  The '077 claims had suffered no losses.  Ameranth successfully repelled every one of defendants' many attacks.

Second, the record provides no support for the district court's treatment of the *Pizza Hut* settlement as "nuisance value" and made to avoid adjudication. Without knowledge of the settlement amount the district court had no basis for conjecture and adverse inferences about Ameranth's motives.  With Domino's bearing the burden of proving its entitlement to §285 relief, the absence of evidence on the ▮SETTLEMENT TERM▮ should have precluded such adverse inferences.  In stark contrast, the *Kindred* court had actual knowledge of the nominal nature of the many settlements.  Once the confidential amount of Pizza Hut settlement was disclosed to the court, the rationale for an adverse inference evaporated.  Yet, even after Ameranth provided that information on reconsideration, the court left its opinion unchanged.  Appx2444-2446.

CONFIDENTIAL MATERIAL REDACTED

Third, the court's view of the "totality of circumstances" ignores that Ameranth had 47 licensees to the '077 patent over the time period that the Domino's case lasted.  Appx2275-2280.  And *Menusoft* and *Pizza Hut* were settled with sophisticated companies making business decisions to ████████ ████ for ████ .  Appx2270-2271, Appx1364-1387.  This supports a reasonable assumption of patent validity.  *PersonalWeb Techs. v. EMC Corp.*, No. 5:13-cv-01358-EJD, 2020 WL 3639676 at *9 (N.D. Cal. July 6, 2020) ("Moreover, the True Name patents have been licensed dozens of times over a fifteen-year period, which demonstrates that others consider the patents to be valid.").  That, too, is unlike *Kindred*.

In addition, the *Kindred* court considered factors not present here:

•    *Kindred* found that "no reasonable patentee would assert the [alleged claims] against an alleged infringer."  *Kindred,* 2019 WL 3064112, at *4.  The court here found no similar issue of clear non-infringement.  *See* Appx17.

•    The plaintiff in *Kindred* pressed generic, "nuisance value" (paid-up license fees in the range of $10,000 - $15,000) demand letters on defendants in several jurisdictions.  *Kindred,* 2019 WL 3064112, at *5.  But here, there were no nominal "nuisance value" demands or licenses.

•    The *Kindred* plaintiff filed over 500 lawsuits and never took a case through the litigation process, not even to the *Markman* stage.  *Id.* at *5-6 ("ECT

has asserted 27 of those patents a total of 875 times without . . . ever taking a single case to a merits determination"). Here, Ameranth litigated many key legal issues through resolution at the PTAB, the district court, and this Court, up to trial.

The district court's subjective characterization of Ameranth as a patent troll like ECT is incorrect and not supported by the record. Ameranth developed award-winning technology, sought and obtained patent protection for that technology, and made and sold products practicing the technology. Appx339-341; Appx2419. There is no evidence that Ameranth brought this case against Domino's in bad faith or that the claims were "objectively baseless."

> ### 4.    The District Court's Reliance on Undecided Factual Disputes, and Late-Stage Unresolved Non-Infringement Contentions Cannot Support an "Exceptional Case" Determination

In finding this case exceptional, the district court incorrectly relied on its after-the-fact perception that Ameranth's infringement position, involving factual issues that were never resolved by trial or summary judgment, was "weak." Appx10 at 15. But when evaluating an argument for determining exceptionality, "the focus must be on arguments that were frivolous or made in bad faith." *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014) (Dyk, J., sitting by designation). The district court did not find that Ameranth's position was baseless or brought in bad faith.

Courts must begin with a presumption of good faith: "We have held

that there is a presumption that an assertion of infringement of a duly granted patent is made in good faith." *Medtronic*, 603 F.3d at 954; *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 999 (Fed. Cir. 2003))*; see also Checkpoint Sys.,* 858 F.3d at 1376 (discussing the existence of a "presumption that an assertion of infringement of a duly granted patent is made in good faith") (internal quotation marks and citation omitted).

In fact, here, many defendants filed motions to strike Ameranth's infringement contentions, yet none of Ameranth's infringement contentions were stricken by the court. By definition, Ameranth's contentions were reasonable.

In seeking an exceptional case determination, Domino's presented a "kitchen sink" of disputed facts, attacking purported positions it attributed to Ameranth, none of which were adjudicated. *See Stragent,* 2014 WL 6756304, at *6 (totality of circumstances is not an "invitation to a 'kitchen sink' approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees").

The district court expressly rejected each of Domino's contentions:

- On Ameranth's conduct during discovery, the court concluded that "*this allegation does not support an exceptional case finding*." Appx14 at 16-20 (emphasis added).

50

- Domino's attack concerning the issues of scrolling and source code was rejected because Ameranth's conduct "*was not necessarily unreasonable.*" Appx18 at 23 (emphasis added).

- Domino's contention that Ameranth provided inconsistent testimony related to the TransPad was rejected because "inconsistent testimony, standing alone, *does not make this an exceptional case*." Appx14 at 19-20 (emphasis added).

Unadjudicated issues are irrelevant for §285 determinations. Absent resolution, the court lacks a proper frame of reference for assessing the relative strength or weakness of the parties' positions. The §285 process is not a *post hoc* opportunity to litigate factual disputes that were unnecessary for final judgment and could only be decided at trial.

Domino's contentions run into these insurmountable barriers. All of the contested factual and credibility issues it raised were never before a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions….").

Although the district court correctly rejected each of Domino's "issues" as a basis for exceptionality, it erred in its eventual decision to give them weight, favoring Domino's in assessing the totality of the circumstances. *See* Appx18 at

17-26.  By giving those issues weight, the district court abused its discretion and committed error for the reasons this Court explained in *Large Audience,* 660 Fed.Appx. at 971.

The same shortcomings should have precluded the court from crediting Domino's contention that a claim construction argument on "synchronization" was "known" from the beginning of the case in 2011.  *See* Appx8-9.  Domino's contention is false; Ameranth pointed out that this non-infringement argument was "new" and introduced for the first time in June 2018.  Appx767.

This new argument, erroneously credited in the court's §285 analysis, isolates the claim term "synchronization."  But the term "synchronization" was never in dispute; the disputed term in the claims was "master menu."  *See* Appx9777.  Relying on this new construction theory, Domino's contended that it had never infringed; that Ameranth knew it; and that Ameranth took inconsistent positions.  Adopting Domino's view, the district court stated that "Ameranth does not address" Domino's contention that the "publicly available online ordering system for their more than 5,000 stores would have revealed" there was no infringement.  Appx8 at 28.

But Ameranth explicitly addressed—and disputed—Domino's "5000 store" claims construction definition as nonsensical:

> Domino's asks the Court to adopt a *nonsensical construction* for synchronization that Domino's first

> introduced in June 2018 that would require any handheld customer *to be offered the entirety of all 5000+ store menus nationwide*. No person of ordinary skill in the art would consider that *rational/practical*. (Shamos Decl. ¶ 21-28, NOL Ex. 24.) Ordering pizza from a store in Maine, for delivery to one's home in San Diego is a nonsensical concept…

Appx767-768 (emphasis added).

The '077 claims reflect that the claimed "master menu" of the selected store must be synchronized with the customer's smart phone and/or web page menu. No POSA, including Domino's own expert, could or did accept Domino's contrived, non-infringing claim construction.[9]

But this new claim construction dispute was never resolved.  The district court had called for supplementary claim construction.  Appx9777.  Domino's admitted the dispute "*needs to be resolved by the Court.*"  Appx769 (emphasis added); see *Thermolife*, 922 F.3d at 1357 ("To be sure, due process and other procedural rights must be respected in deciding the exceptional-case question as a precondition to awarding fees against a losing party…And more process may well be needed on a fees motion when the issue presented as a basis for fees has not previously been litigated" (internal citations omitted).).  In giving any weight to

---

[9] Domino's expert, Stephen Gray, presented "non infringing alternatives," yet never mentioned this newly-contrived "synchronization" claim construction, non-infringement theory.  Domino's expert, instead, agreed with Ameranth's constructions by relying on a single-store-based prior art reference to allege obviousness.  Appx768.

Domino's contentions on this subject, the district court erred.

**C.    Even If This Case Was Properly Deemed "Exceptional," the District Court Committed Reversible Error In Quantifying Attorney's Fees**

The $2,786,185.29 award of full attorneys' fees and costs is unsupportable. Appx26-31.

**1.    The District Court Failed to Explain the Relationship Between its Exceptionality Findings and the Amount Awarded**

Attorney fees under §285 are compensatory, not punitive.  *In re Rembrandt Technologies LP Patent Litigation,* 899 F.3d 1254, 1278 (Fed. Cir. 2018) (citing *Cent. Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed. Cir. 1983)). In such a "statutory sanction regime[]," a "fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).  Moreover, deterrence "is not an appropriate consideration in determining the *amount* of a reasonable attorney fee." *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 484-85 (Fed. Cir. 2016) (emphasis in original).

As such, "the amount of the award must bear some relation to the extent of the misconduct," and the district court "must explain that relationship, at least to the extent practicable." *Rembrandt*, 899 F.3d at 1278 (quoting *Rambus Inc. v.*

54

*Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003)); *see also Industrial Print Technologies, LLC v. Cenveo, Inc.,* 2020 WL 50507738, at *1 (N.D. Texas Aug. 26, 2020) ("In the context of a patent case and an award of fees under 285, this rule dictates that the court only award attorneys' fees 'caused by the conduct that renders the case exceptional.'"); *Effective Expl., LLC v. BlueStone Nat. Res. II, LLC*, 2018 WL 466246, at *3 (E.D. Tex. Jan. 18, 2018) (same).

Here, the district court's exceptionality order identified three separate bases that, in its view, triggered "serious questions and concerns about Ameranth's litigation conduct and strategy." Appx18 at 25-26.

First, the district court took issue with Ameranth's "ambitious strategy" of filing more than forty cases, which "complicated the litigation and slowed its progress," despite acknowledging "Ameranth does not bear complete responsibility for the delay in resolving these cases." Appx19 at 1-2, Appx19 at 9-10 and Appx20 at 3-5. The court did not account for the fact that Ameranth's 47 licenses confirm the widespread use of its inventions.

Next, the district court attacked Ameranth's settlement with Pizza Hut, stating that "although there may have been many reasons for the parties' decision to settle" (which, of course, there were, *supra* at 46), but that "the timing of the settlement and Ameranth's attempt thereafter to avoid a prompt ruling on the 101 issues, is 'troubling.'" Appx20 at 11-15 (citation omitted).

Finally, the district court found that "Ameranth's overall litigation conduct," was an additional reason for declaring the case exceptional. Appx20 at 21, Appx21 at 4-6.

But other than these conclusory references to its incorrectly limited view of the "totality of the circumstances," and its stated desire to employ a "holistic approach" to fee-shifting, the district court's fees order failed to identify a causal connection between any finding of litigation misconduct and the years of fees it awarded. *See* Appx28 at 21-23, Appx29 at 1-3. The court never determined that the conduct it criticizes was pervasive enough to affect the entire litigation. See, e.g., *Rembrandt*, 899 F.3d at 1279 ("…none of the district court's language implies that it thought the specific instances of misconduct above bore the kind of relation to the overall litigation contemplated by *Goodyear* or *Rambus*."); *cf. Monolithic Power Systems, Inc. v. O2 Micro International Ltd.,* 726 F.3d 1359, 1369 (Fed. Cir. 2013) (upholding a full award of attorney fees against a party because "(the party's) rampant misconduct so severely affected every stage of the litigation that a full award of attorney fees was proper.")

Here, the district court's own findings show otherwise. *See Rembrandt,* 899 F.3d at 1279. The district court rejected all of Domino's arguments that any of Ameranth's specific actions during the litigation was unreasonable. *See, e.g.,* Appx13 at 23-24, Appx14 at 9-11, Appx15 at 16-18. Despite its ultimate

56

conclusion that Ameranth's conduct, coupled with the perceived "weakness" of the claims, rendered the case exceptional, earlier in its order, the district court had rejected the idea that Ameranth's vigorous prosecution was itself a basis for exceptionality: "the filing of all these cases, in and of itself does not make Ameranth a vexatious litigant… Thus, contrary to the suggestion of the Domino's Defendants, the mere existence of other lawsuits filed by Ameranth, without more 'does not mandate negative inferences about the merits or purpose of this suit.'" Appx16 at 14-23, Appx17 at 1-6 (citations omitted).

These findings collectively eliminate any justification for a full fee award—particularly where there was no attempt by the district court to assess which litigated issues the claimed misconduct ultimately affected. *See Rembrandt*, 899 F.3d at 1280 ("What the district court did here—award all fees with no explanation whatsoever of such a causal connection—was not enough.").

Of critical importance, which the court completely ignored in both its "exceptional case" finding and subsequent award of "holistic" fees, is the chilling effect that such a finding and award would have on the basic right to fully litigate unsettled §101 law, including appeals to this Court. *Gust,* 905 F.3d at 1329 (rejecting as "simply incorrect" the contention "that because all abstract idea cases after *Alice* applied the two-step *Alice/Mayo* framework, patent eligibility after *Alice* was settled"). This is particularly applicable here, where the only two

authorities to address the §101 eligibility of the '077 claims—the PTAB and the

district court—disagreed.

### 2.    The District Court Abused Its Discretion When It Failed To Quantify Fees Based on the Temporal Limitations In Its Exceptionality Order

Having failed to anchor its excessive fee award to any purported

misconduct, the district court is left with the other basis for exceptionality—the

substantive strength of Ameranth's litigation position.  To the extent this Court

accepts the designation of this case as "exceptional"—which it should not— the

district court nonetheless erred by failing to correlate the fee award with any of the

points in time at which it suggested Ameranth should have ceased all efforts to

enforce the '077 patent.   When did Ameranth cross the '077 Rubicon?

The district court refused to apportion the fees by selecting a defensible

timeframe.  Instead, the court opted for an unapportioned "holistic approach"—for

the entire case from its inception—based on a "number of factors."  Appx28 at 12-

15, Appx28 at 20-23, Appx29 at 1-3.

The award of fees for only portions of cases or with temporal limitations is a

well-accepted practice.  This Court has repeatedly affirmed partial awards that

align with the circumstances giving rise to exceptionality.  *Inventor Holdings, LLC*

*v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017), affirmed a partial

award in light of the patentee's failure to reassess its case in the wake of *Alice*—an

award that was confined only to fees accrued after the *Alice* decision issued.  *Id.* at 1380.

Likewise, *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.,* 676 Fed.Appx.967 (Fed. Cir. 2017), affirmed a partial award of fees accrued after the plaintiff refused to produce a potentially dispositive document on standing. While the district court did not find the initial filing of the lawsuit or infringement positions exceptional, it did find unreasonable plaintiff's refusal to produce the requested document and the maintenance of the lawsuit once the lack of standing became clear. *Id.* at 972.  This Court agreed, finding "no abuse of discretion in how the district court chose to calibrate the period of the litigation for which Omron was entitled to be awarded its attorney fees."  *Id.* at 973.

District courts routinely apportion fees in similar circumstances.  *See, e.g., Soar Tools, LLC v. Mesquite Oil Tools, Inc.,* No. 5:19-CV-243-H, 2022 WL 1447946, at *12 (N.D. Tex. Feb. 9, 2022) ("Based on Soar's unreasonable litigation conduct prior to the first dismissal, the Court tailors the fee award to only include fees incurred by Mesquite prior to the first order of dismissal."); *NetSoc, LLC v. Chegg Inc.,* No. 18-CV 10262 (RA), 2020 WL 7264162, at *6 (S.D. N.Y. December 10, 2020) (limiting time period for fee award "only after" party put on notice of error in filing).

Ameranth had a statutory right to have all claims of the '077 patent continued to be presumed valid until the district court's summary judgment decision on September 25, 2018.  In a similar context, the district court in Delaware appropriately apportioned fees for the period after a case-dispositive summary judgment motion was resolved.  *Wi-LAN Inc. v. Sharp Electronics Corporation*, No. 15-379-LPS, 2022 WL 1224901, at *2-3 (D. Del. April 25, 2022) (tailoring partial fee award from point at which patentee faced an "insurmountable" failure of proof through summary judgment loss).

Here, the district court did not identify a time at which Ameranth's enforcement actions became "unreasonable," to allocate the attorney's fees and costs accordingly. This is particularly relevant given that the court found that the cases were filed "in good faith" (*see* Appx8 at 7-8)*,* and failed to address and credit the continued presumption of validity of the '077 patent claims up to the 2018 summary judgment.

Finally, no fees should have been awarded for the PTAB proceedings, especially because Ameranth prevailed on every '077 CBM.  *Dragon Intellectual Prop., LLC v. Dish Network LLC*, 956 F.3d 1358, 1362 (Fed. Cir. 2020) ("[W]e see no basis in the Patent Act for awarding fees under §285 for work incurred in *inter partes* review proceedings that the Appellants voluntarily undertook.").

The fee award cannot be justified and must be reversed.

## VII.  **CONCLUSION**

The district court's decisions finding this case exceptional and its award of fees under §285 should be reversed.  Ameranth respectfully requests that this case be heard on the same day and before the same panel as companion Appeals 2022-1655, *et al*.

Respectfully submitted,

/s/ Robert F. Ruyak
Robert F. Ruyak
LARSON LLP
900 17th Street, N.W. Suite 320
Washington, DC 20006
Tel.: (202) 798-4661
Email: *rruyak@larsonllp.com*

Jerrold J. Ganzfried
GANZFRIED LAW
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, DC 20015
Tel.: (202) 486-2004
Email: *jjg@ganzfriedlaw.com*

*Counsel for Plaintiff-Appellant*

November 21, 2022

ADDENDUM

1

2

3

4

5

6

7

8                              **UNITED STATES DISTRICT COURT**

9                            **SOUTHERN DISTRICT OF CALIFORNIA**

10    AMERANTH, INC.,                          Case No.:  12cv0733 DMS (WVG)

11                               Plaintiff,
                                               **ORDER GRANTING IN PART**
12    v.                                       **DEFENDANTS' SECOND**
                                               **RENEWED MOTION TO DECLARE**
13    DOMINO'S PIZZA, INC. and                 **CASE EXCEPTIONAL AND**
      DOMINO'S PIZZA, LLC                      **AWARD ATTORNEY FEES AND**
14                                             **NON-TAXABLE COSTS**
                               Defendants.
15

16

17

18           This case comes before the Court on Defendants Domino's Pizza, LLC and

19    Domino's Pizza, Inc.'s second renewed motion to declare this case exceptional and award

20    attorney fees and non-taxable costs under 35 U.S.C. § 285.  The original motion was filed

21    after this Court found Ameranth's U.S. Patent No. 8,146,077 ("the '077 Patent")

22    unpatentable under 35 U.S.C. § 101, and after Ameranth filed an appeal of that Order.  In

23    light of Ameranth's appeal, the Court denied the original motion without prejudice.  After

24    the Federal Circuit affirmed this Court's unpatentability finding, the Domino's Defendants

25    renewed their motion.  Before briefing was completed on the renewed motion, Ameranth

26    filed a petition for certiorari with the United States Supreme Court.  After the Court denied

27    that petition, the Domino's Defendants withdrew their renewed motion and filed the

28    / / /

1   present motion.  The Court has now reviewed the briefs, the record and the relevant legal

2   authority, and grants the motion in part for the reasons set out below.

3                                          **I.**

4                                  **BACKGROUND**

5          This case is one of forty-three patent infringement cases that Ameranth has filed in

6   this Court.[1]  The first case, *Ameranth, Inc. v. Pizza Hut, Inc.*, Case No. 11cv1810, was filed

7

8   _____

9

10  [1] The full list of cases is as follows: *Ameranth, Inc. v. Pizza Hut, Inc.*, Case No. 11cv1810,
    *Ameranth, Inc. v. Papa John's USA, Inc.*, Case No. 12cv0729, *Ameranth, Inc. v. Seamless*
11  *North America, LLC*, Case No. 12cv0737, *Ameranth, Inc. v. TicketMob, LLC*, Case No.
    12cv0738, *Ameranth, Inc. v. GrubHub, Inc.*, Case No. 12cv0739, *Ameranth, Inc. v. Pizza*
12  *Hut, Inc.*, Case No. 12cv0742, *Ameranth, Inc. v. OpenTable, Inc.*, Case No. 12cv0731,
    *Ameranth, Inc. v. O-Web Techs., Ltd.*, Case No. 12cv0732, *Ameranth, Inc. v. Domino's*
13  *Pizza, LLC*, Case No. 12cv0733, *Ameranth, Inc. v. Agilsys, Inc.*, Case No. 12cv0858,
14  *Ameranth, Inc. v. ChowNow, LLC*, Case No. 12cv1201, *Ameranth, Inc. v. ATX Innovation,*
    *Inc.*, Case No. 12cv1656, *Ameranth, Inc. v. EMN8, Inc.*, Case No. 12cv1659, *Ameranth,*
15  *Inc. v. Starwood Hotels and Resorts Worldwide, Inc.*, Case No. 12cv1629, *Ameranth, Inc.*
16  *v. Micros Systems, Inc.*, Case No. 12cv1655, *Ameranth, Inc. v. Hyatt Hotels Corp.*, Case
    No. 12cv1627, *Ameranth, Inc. v. Best Western Int'l, Inc.*, Case No. 12cv1630, *Ameranth,*
17  *Inc. v. Marriott Int'l, Inc.*, Case No. 12cv1631, *Ameranth, Inc. v. Hotel Tonight, Inc.*, Case
18  No. 12cv1633, *Ameranth, Inc. v. Hotels.com, LP*, Case No. 12cv1634, *Ameranth, Inc. v.*
    *Expedia, Inc.*, Case No. 12cv1654, *Ameranth, Inc. v. Kayak Software Corp.*, Case No.
19  12cv1640, *Ameranth, Inc. v. EMN8, Inc.*, Case No. 12cv1659, *Ameranth, Inc. v. Mobo*
20  *Systems, Inc.*, Case No. 12cv1642, *Ameranth, Inc. v. NAAMA Networks, Inc.*, Case No.
    12cv1643, *Ameranth, Inc. v. Orbitz, LLC*, Case No. 12cv1644, *Ameranth, Inc. v.*
21  *Subtledata, Inc.*, Case No. 12cv1647, *Ameranth, Inc. v. Stubhub, Inc.*, Case No. 12cv1646,
22  *Ameranth, Inc. v. Ticketmasters, LLC*, Case No. 12cv1648, *Ameranth, Inc. v.*
    *Travelocity.com, LP*, Case No. 12cv1649, *Ameranth, Inc. v. Fandango, Inc.*, Case No.
23  12cv1651, *Ameranth, Inc. v. Hotwire, Inc.*, Case No. 12cv1653, *Ameranth, Inc. v.*
24  *Wanderspot LLC*, Case No. 12cv1652, *Ameranth, Inc. v. Usablenet, Inc.*, Case No.
    12cv1650, *Ameranth, Inc. v. Hilton Resorts Corp.*, Case No. 12cv1636, *Ameranth, Inc. v.*
25  *Ticketbiscuit, LLC*, Case No. 13cv0352, *Ameranth, Inc. v. Ticketfly, Inc.*, Case No.
26  13cv0353, *Ameranth, Inc. v. Eventbrite, Inc.*, Case No. 13cv0350, *Ameranth, Inc. v.*
    *MonkeyMedia Software Inc.*, Case No. 13cv0836, *Ameranth, Inc. v. Starbucks Corp.*, Case
27  No. 13cv1072, *Ameranth, Inc. v. Domino's Pizza, LLC*, Case No. 13cv1520, *Ameranth,*
28  *Inc. v. Fandango, Inc.*, Case No. 13cv1525, *Ameranth, Inc. v. Opentable, Inc.*, Case No.

12cv0733 DMS (WVG)

Appx2

1    on August 15, 2011, and originally named nine Defendants:  Pizza Hut, Inc., Pizza Hut of

2    America, Inc., Domino's Pizza, LLC, Domino's Pizza, Inc., Papa John's USA, Inc.,

3    Opentable, Inc., Grubhub, Inc., Netwaiter, LLC and Laughstub LLC.  In a First Amended

4    Complaint filed on September 13, 2011, Ameranth renamed the first eight Defendants from

5    the original Complaint, dropped Defendant Laughstub, and added five additional

6    Defendants:  Ticketmob, LLC, Exit 41, LLC, Quikorder, Inc., Seamless North America,

7    LLC and O-Web Technologies, Ltd.  Ameranth filed a Second Amended Complaint on

8    December 6, 2011, renaming all Defendants from the First Amended Complaint except

9    Netwaiter.  In each of these Complaints, Ameranth alleged the Defendants were infringing

10   its United States Patents Nos. 6,384,850 ("the '850 Patent") and 6,871,325 ("the '325

11   Patent").

12        That case was not the first case Ameranth filed alleging infringement of the '850 and

13   '325 Patents.  The first case was *Ameranth v. Menusoft Systems Corp.*, Case No. 07cv0271,

14   which was filed in the United States District Court for the Eastern District of Texas.  In

15   that case, Ameranth alleged defendants Menusoft and Cash Register Sales & Service of

16   Houston, Inc. were infringing the '850 and '325 Patents, as well as a third Ameranth Patent,

17   U.S. Patent No. 6,982,733 ("the '733 Patent").  That case was litigated for over three years,

18   and eventually tried to a jury.  At the conclusion of the trial, the jury returned verdicts of

19   non-infringement for each defendant on all patent claims asserted,[2] and found those same

20   patent claims were invalid as anticipated and obvious.

21        On June 23, 2011, Ameranth appealed that judgment.  In October 2011, after Case

22   No. 11cv1810 was filed in this Court, the parties in the *Menusoft* case reached a settlement.

23   *Menusoft*, ECF No. 331 at 1-2.  Pursuant to that settlement, the parties filed a joint motion

24

25   _____

26   13cv1840.  Ameranth has also filed other patent infringement cases in this Court on other

27   patents, but those cases are not part of this litigation.

28   [2] The claims submitted to the jury were claims 1 and 4 of the '850 Patent, claims 6, 9, and
     10 of the '325 Patent, and claims 1 and 3 of the '733 Patent.

1   for indicative ruling with the district court on a request to vacate the jury's invalidity

2   verdicts. *Id.* The district court granted that motion, and indicated that if the Federal Circuit

3   remanded the case for consideration of such a request, the court would grant that motion.

4   *Menusoft*, ECF No. 332. Thereafter, two third-parties to that case, Profitstreams, LLC and

5   Seamless (one of the Defendants in Case No. 11cv1810), filed motions for leave to file

6   amicus briefs on the court's indicative ruling. *Menusoft*, ECF Nos. 333, 334. In each of

7   those briefs, the parties informed the court that they were involved in litigation with

8   Ameranth over the '850 and '325 Patents, and that the *Profitstreams* case involved the

9   same claims adjudged to be invalid in *Menusoft*. For those reasons and others, amici urged

10  the court to reconsider its indicative ruling and/or deny the anticipated motion for vacatur.

11  Meanwhile, the *Menusoft* parties proceeded to file a motion to remand the appeal, which

12  was granted, and then filed their joint motion to vacate the invalidity verdicts and judgment.

13  *Menusoft*, ECF No. 348. After considering the amicus briefs and the joint motion, the court

14  confirmed its indicative ruling, granted the motion, and vacated the invalidity verdicts and

15  judgment. *Menusoft*, ECF No. 355.

16      The invalidity findings having been lifted, and following passage of the America

17  Invents Act, *see* 35 U.S.C. § 299, Ameranth began filing additional cases in this Court. As

18  to Defendants named in Case No. 11cv1810, Ameranth filed additional cases against some

19  of them alleging infringement of the '077 Patent. Ameranth also filed other cases against

20  new defendants alleging infringement of the '850, '325 and '077 Patents. Ameranth then

21  filed another series of cases alleging infringement of the '733 Patent, either alone or in

22  combination with the previously asserted patents.

23      In October 2013, after nearly all of the individual cases were filed and discovery had

24  commenced, a majority of Defendants filed petitions with the Patent Trial and Appeal

25  Board ("PTAB") seeking review of the '850, '325 and '733 Patents under the Transitional

26  Program for Covered Business Method ("CBM") Patents. This Court stayed the litigation

27  pending those proceedings. The PTAB instituted review on all three petitions, and it found

28  certain claims of those Patents unpatentable under 35 U.S.C. § 101. On appeal, the Federal

4

1    Circuit affirmed the PTAB's determinations of unpatentability, and reversed the PTAB's

2    determinations that the other claims were patentable.  *Apple, Inc. v. Ameranth, Inc.*, 842

3    F.3d 1229, 1245 (Fed. Cir. 2016).  Specifically, the Federal Circuit found all instituted

4    claims of the '850, '325 and '733 Patents unpatentable under § 101.  *Id.*

5        In light of the Federal Circuit's decision, the only remaining patent in this litigation

6    was the '077 Patent.  Various Defendants twice petitioned the PTAB for CBM review of

7    the '077 Patent, but both of those petitions were unsuccessful.

8        With Defendants having exhausted their available remedies at the PTAB and

9    Ameranth having exhausted its appeals of those decisions, litigation in this Court

10   recommenced.   The parties engaged in motion practice, discovery and Markman

11   proceedings, and the Court resolved in Ameranth's favor another related case alleging a

12   claim of patent interference concerning the '077 Patent.  *See IPDEV Co. v. Ameranth, Inc.*,

13   Case No. 14cv1303 DMS (WVG).

14       After the *IPDEV* case was resolved, the remaining patent infringement cases readied

15   for trial, with the "Pizza Companies and System Providers" slated to go first.  However, in

16   its final round of pre-trial motions, the Pizza Hut Defendants filed a motion for summary

17   judgment of unpatentability of the '077 Patent pursuant to 35 U.S.C. § 101.  That motion

18   was fully briefed and scheduled for oral argument, but three days before the hearing

19   Ameranth and the Pizza Hut Defendants settled their dispute.

20       Pending dismissal of Ameranth's case against the Pizza Hut Defendants, the

21   Domino's Defendants filed an *ex parte* motion to file a late joinder in Pizza Hut's § 101

22   motion, which the Court granted over Ameranth's objection.  The motion was then reset

23   for hearing and Ameranth was provided an opportunity to file a supplemental opposition

24   to the motion, which it did.  After a thorough review, the Court found the '077 Patent

25   unpatentable under § 101, and granted the motion.  Ameranth appealed that ruling to the

26   Federal Circuit, which affirmed this Court's findings in an unpublished opinion.  *See*

27   *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 Fed. Appx. 780 (Fed. Cir. 2019).  Thereafter,

28   Ameranth filed a petition for writ of certiorari with the United States Supreme Court, which

5

1    was denied. *See Ameranth, Inc. v. Domino's Pizza, LLC*, 141 S.Ct. 249 (2020). Following

2    that decision, the parties submitted competing proposals on how to proceed with the

3    litigation, which had been stayed again when Ameranth filed its appeal of the § 101 ruling.

4    After reviewing those proposals, the Court continued the stay pending its ruling on the

5    present motion.

## II.

### DISCUSSION

8    Title 35 U.S.C. § 285 provides: "The court in exceptional cases may award

9    reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. A "central aim" of this

10   statute:

> is to prevent an alleged infringer from suffering a "gross injustice." The injury
> to the alleged infringer is the focus ... § 285 "is remedial and for the purpose
> of compensating the prevailing party for the costs it incurred in the
> prosecution or defense of a case where it would be grossly unjust ... to require
> it to bear its own costs." Again, it is clear that the aim of § 285 is to
> compensate a defendant for attorneys' fees it should not have been forced to
> incur.

16   *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) (internal

17   citation omitted).

18   Until the Supreme Court's decision in *Octane Fitness, LLC v. Icon Health & Fitness,*

19   *Inc.*, 572 U.S. 545 (2014), a case was not exceptional unless there was misconduct during

20   the litigation or in securing the patent, or "'both (1) the litigation [was] brought in

21   subjective bad faith, and (2) the litigation [was] objectively baseless.'" *Id.* at 550 (quoting

22   *Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)).

23   A showing of exceptional case also was subject to the "clear and convincing evidence"

24   standard. *Id.* at 557.

25   In *Octane Fitness*, however, the Supreme Court rejected both the substantive test for

26   exceptionality and the "clear and convincing evidence" standard. The Court found the

27   substantive test was "overly rigid" and "too restrictive." *Id.* at 555. Instead, the Court held

28   that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case

6

1  exercise of their discretion, considering the totality of the circumstances." *Id.* at 554.  In

2  making that determination, the Court explained that an exceptional case "is simply one that

3  stands out from others with respect to the substantive strength of a party's litigation

4  position (considering both the governing law and the facts of the case) or the unreasonable

5  manner in which the case was litigated."  *Id.*  Factors relevant to those issues include,

6  "among other factors, 'frivolousness, motivation, objective unreasonableness (both in the

7  factual and legal components of the case) and the need in particular circumstances to

8  advance considerations of compensation and deterrence.'" *Id.* at 554, n.6.  Courts may also

9  consider "whether a party knew or willfully ignored evidence of the claims' meritlessness;

10 whether the meritlessness could have been discovered by basic pretrial investigation; or

11 whether the meritlessness was made clear early in the litigation." *Printeron, Inc. v.*

12 *BreezyPrint Corp.*, No. H-13-3025, 2015 WL 7149442, at *2 (N.D. Tex. Nov. 10, 2015).

13 On the burden of proof, the Court lowered the standard from "clear and convincing"

14 evidence to a "preponderance" of the evidence. *Octane Fitness*, 572 U.S. at 557-58.

15        Here, the Domino's Defendants raise a number of arguments in support of their

16 request that the Court declare this case exceptional.  First, the Domino's Defendants argue

17 Ameranth's case was baseless.  Specifically, the Domino's Defendants assert Ameranth

18 knew or should have known that the '850, '325 and '733 Patents were invalid based on the

19 jury verdict in *Menusoft*.  The Domino's Defendants also assert Ameranth should have

20 known, based on publicly available information, that they did not infringe the '077 Patent,

21 and that Ameranth should have known the '077 Patent was invalid under § 101 after the

22 Supreme Court's decision in *Alice* and the Federal Circuit's decision in *Apple*.  Second, the

23 Domino's Defendants argue Ameranth's positions on several issues shifted during the

24 litigation, and that Ameranth misled the Court on a number of other issues.

25 **A.     Substantive Strength of Litigation Position**

26        The Domino's Defendants' opening argument is that Ameranth's case was baseless.

27 On the '850, '325 and '733 Patents, the Domino's Defendants argue Ameranth knew or

28 should have known those Patents were invalid based on the jury verdicts in *Menusoft*.

1   Ameranth responds that the *Menusoft* jury invalidated only certain claims from those

2   Patents, none of which were asserted in this case.  Ameranth asserts the remaining patent

3   claims, and specifically, the claims asserted in this case, were unaffected by the *Menusoft*

4   case, and Ameranth was entitled to rely on the general presumption of validity in pursuing

5   those claims here.

6       There is no dispute the '850, '325 and '733 Patents were entitled to a presumption

7   of validity when they were issued, 35 U.S.C. § 282(a), and that Ameranth was entitled to

8   rely on a presumption of good faith when it first asserted its rights in those Patents.  *See*

9   *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018)

10  (stating that upon issuance of valid patent, patentee is entitled to presumption of good faith

11  in asserting its patent rights against an accused infringer).  However, the *Menusoft* verdicts

12  and Ameranth's request to vacate those verdicts raise questions about the strength of those

13  presumptions here.  As stated above, some of the claims in the '850, '325 and '733 Patents

14  were found invalid in *Menusoft*.  Although Ameranth asserted different claims here, the

15  *Menusoft* verdicts cast a cloud on the Patents, and indicated a weakness in Ameranth's

16  position.  Ameranth's request to vacate those verdicts could be construed as an

17  acknowledgement of that weakness, and an effort to remove that cloud from this litigation

18  and other litigation on those Patents. *See Wang Labs. v. Toshiba Corp.*, 793 F.Supp. 676,

19  678 (E.D. CA 1992) (setting out public policy concerns surrounding vacatur of patent

20  invalidity findings).

21      Ameranth's position on the '077 Patent is also questionable.  On the issue of

22  infringement, the Domino's Defendants argue Ameranth knew or should have known that

23  they did not infringe.  Specifically, the Domino's Defendants assert that the claims of the

24  '077 Patent required a "synchronous" system, and that under Ameranth's construction of

25  that term, that meant the system had to be "consistent." The Domino's Defendants contend

26  that a review of their publicly available online ordering system for their more than 5,000

27  stores would have revealed that their system was not consistent, and therefore did not

28  infringe.  Ameranth does not address this particular argument.  Rather, it responds to a

1  different argument, namely that Ameranth took conflicting positions on the construction of

2  "synchronous," which according to the Domino's Defendants, supports a finding that

3  Ameranth litigated this case in an unreasonable manner.

4        On the latter issue, the Court agrees with the Domino's Defendants that Ameranth

5  took inconsistent positions on the meaning of "synchronous." During claim construction,

6  Ameranth proposed that "synchronous" be construed as "made, or configured to make,

7  consistent."[3]  (ECF No. 865 at 12.[4])  Or as explained by Ameranth's counsel at the

8  Markman hearing, "synchronous" or "synchronized" means "that the same information

9  provided to users via display of user interfaces is presented consistently to different client

10 devices." (ECF No. 906 at 154.)  Stated simply, the point of the invention was "to attain

11 consistency across the system[.]" (*Id.*) Ameranth maintained that position when defending

12 the '077 Patent in the *IPDEV* case, arguing that "synchronization" "means that the

13 information in the master menu has to be substantively the same as all of the menu items,

14 modifiers, submodifiers[,] categories that appear in the programmed handheld menu

15 configuration." *IPDEV*, ECF No. 85 at 8. Again, "[s]ubstantively everything on the master

16 server has to have a corresponding element on the programmed handheld menu

17 configuration on the handheld.  That is the synchronous element of it." *Id.* at 9.  In

18 defending against summary judgment of noninfringement, however, Ameranth changed

19 tack, and asserted the '077 claims did "not require that all master menu content … be

20 synchronized in its entirety to the handheld devices." (ECF No. 1451 at 19.)  Contrary to

21 its previous position, Ameranth stated, "The claims *do not* require that there … be 'overall

22 consistency' in the way Domino's incorrectly defines it." (*Id.* at 11.)

23 / / /

24

25

---

26 [3] The Court notes Ameranth's proposed construction in this case is consistent with its
    proposed construction of a similar phrase in *Menusoft*, *see Menusoft*, ECF No. 73 at 10,
27 which construction the *Menusoft* court adopted. *See Menusoft*, ECF No. 106 at 6-8.

   [4] The ECF citation here and similar ECF citations throughout this Order refer to the docket
28 in Case No. 11cv1810.

1    Ameranth disputes that it took inconsistent positions on "synchronous" by raising
2    arguments about claim construction and recharacterizing its counsel's argument during the
3    *IPDEV* hearing. (*See* Opp'n to Mot. at 22-24.) However, the claim construction arguments
4    are nothing more than red herrings, and the briefs and transcripts speak for themselves.
5    What those documents reveal to the Court is a direct inconsistency in Ameranth's position
6    on "synchronization."   *Compare IPDEV*, ECF No. 85 at 8 (stating "synchronization"
7    "means that the information in the master menu has to be substantively the same as all of
8    the menu items, modifiers, submodifiers[,] categories that appear in the programmed
9    handheld menu configuration") *with* ECF No. 1451 at 11 ("Critically, the claims do not
10   require that all system menu data must be synchronized with all connected devices.  The
11   claims do not require that there must be 'overall consistency' in the way Domino's
12   incorrectly defines it.")

13       Applying Ameranth's original understanding of "synchronous," the Court agrees
14   with the Domino's Defendants that Ameranth's position on infringement of the '077 Patent
15   was weak.  Ameranth identified the accused system as "Domino's Ordering System," not
16   the system for any individual Domino's store.  As the Domino's Defendants point out, the
17   online menus for Domino's stores were available to the public, and a cursory review of
18   those menus would have established that different stores have different menus. (Mem. of
19   P. & A. in Supp. of Mot. at 19.)  In other words, they were not "synchronous."  Ameranth
20   disputes that ultimate conclusion, but does not dispute the facts upon which it is based,
21   which reflect the weakness of Ameranth's position on infringement of the '077 Patent.

22       The Domino's Defendants argue Ameranth's invalidity position on the '077 Patent
23   was also weak after the Supreme Court's decision in *Alice* and the Federal Circuit's
24   decision in *Apple*.  Certainly, Ameranth had a "responsibility to reassess its case in view
25   of" *Alice, Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379 (Fed.
26   Cir. 2017) (citing *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed.
27   Cir. 2013)), and it had ample opportunity to do so.  Indeed, when the *Alice* decision was
28   issued, this litigation was stayed and the parties were addressing § 101 issues before the

10

Appx10

1    PTAB. The Federal Circuit then resolved those issues in *Apple*, finding certain claims

2    from the '850, '325 and '733 Patents unpatentable under § 101.

3        Ameranth argues that neither *Alice* nor *Apple* provided a basis for Ameranth to doubt

4    the validity of the '077 Patent, particularly because the PTAB rejected a challenge to the

5    '077 Patent after those decisions were issued. However, as the Domino's Defendants point

6    out, the PTAB declined to institute review of the '077 Patent post-*Alice* and post-*Apple*.

7    (ECF No. 125-5, Ex. 4.) It did not, as Ameranth suggests, find the claims of the '077 Patent

8    "to be valid and patentable[.]" (Opp'n to Mot. at 4.) Therefore, the PTAB decisions do

9    not support Ameranth's argument that it had a reasonable basis to believe the claims of the

10   '077 Patent were valid after *Alice* and *Apple*.

11       Ameranth also argues it had a reasonable basis to believe the claims of the '077

12   Patent were valid because Defendants did not oppose lifting the stay of this case in January

13   2017, and did not move for summary judgment at that time. It is true Defendants did not

14   oppose lifting the stay in January 2017, but that position hardly constitutes an

15   acknowledgement or concession on their part that the '077 Patent was valid or beyond

16   challenge. That Defendants did not file a motion for summary judgment immediately after

17   the stay was lifted is also not helpful to Ameranth. After the stay was lifted, the parties

18   had to regroup and reposition the case in light of the Federal Circuit's finding that the '850,

19   '325 and '733 Patents were invalid. Given the number of Defendants involved, that took

20   time. Ameranth also filed a significant and serious motion to disqualify a member of the

21   defense counsel team as well as his law firm. (*See* ECF No. 629.) The parties also began

22   discovery in earnest, which led to heavy motion practice on those issues. In addition, the

23   parties had to prepare for the Markman hearing and the *IPDEV* trial. Given all of the

24   moving parts and parties in this litigation, any lag time in the filing of the § 101 motion

25   cannot reasonably be construed as an indication that Defendants thought it was unclear

26   "that [the] claims of the '077 Patent were ineligible." (Opp'n to Mot. at 5.)

27       Despite Ameranth's arguments, the Court agrees with the Domino's Defendants that

28   Ameranth's litigation position on the validity of the '077 Patent was especially weak after

1   *Alice* and *Apple*. The '077 Patent was part of the same family as the '850, '325 and '733

2   Patents, all of which were declared invalid by the Federal Circuit in *Apple*. In a case

3   presenting similar facts, the court did not hesitate to find that "no reasonable patent litigant

4   would have believed" the claims in the related patent were viable. *Kindred Studio*

5   *Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*, No. 2:18-CV-07661 (GJS), 2019

6   WL 3064112, at *4 (C.D. Cal. May 23, 2019). The same may be said for Ameranth's

7   position here. Indeed, the facts of this case are even more compelling than the facts in

8   *Kindred Studio*, where the patentee was faced with one finding of invalidity by the district

9   court. Here, Ameranth was presented with two decisions, one from the PTAB and the other

10  from the Federal Circuit, finding the '850, '325 and '733 Patents ineligible. Thus, the

11  reasoning of *Kindred Studio* applies with even more force here, and weighs squarely in

12  favor of an exceptional case finding.

13  **B.   Manner of Litigation**

14  Turning to the second factor, the manner in which the case was litigated, the

15  Domino's Defendants raise two arguments. First, they argue Ameranth's positions on

16  certain issues shifted throughout the case, particularly, its positions on the terms

17  "synchronous," "PHMC/PHC," and the issue of scrolling. Second, the Domino's

18  Defendants argue Ameranth misled the Court on a number of issues, specifically, Keith

19  McNally's testimony regarding the TransPad and the destruction of Ameranth's source

20  code, and the issue of screen counts.

21  The Court addressed the "synchronous" issue above, and thus starts its discussion

22  here with the issue of the "PHMC/PHC." The parties' arguments on this issue are less than

23  precise, but the Domino's Defendants appear to argue that Ameranth took inconsistent

24  positions on whether the "PHMC/PHC" had to have information about the size of the

25  handheld device. Ameranth responds that the Court's claim construction did not require

26  that the "PHMC/PHC" have information about the size of the handheld device, and that its

27  infringement theory was consistent with the Court's claim construction that the

28  / / /

12cv0733 DMS (WVG)

Appx12

1  "PHMC/PHC" be formatted outside the handheld device.  Ameranth also argues that the

2  accused "PHMC/PHC" included formatting information, contrary to Domino's suggestion.

3        Ameranth's arguments, however, do not address the Domino's Defendants' specific

4  point, which is that Ameranth took different positions on whether the "PHMC/PHC" had

5  to contain information about the size of the handheld device.  On that particular issue, the

6  record supports the Domino's Defendants' position that Ameranth again took inconsistent

7  positions depending on whether the issue was infringement or validity.  (*Compare* ECF

8  No. 1421-7 at 7 (Ameranth's infringement expert Sam Malek, Ph.D. stating ███████

9  ████████████████████████████████████████████████) *with* ECF No.

10  1109-19 at 3 (Ameranth's validity expert Michael Shamos, Ph.D. agreeing that ██████

11  ████████████████████████████████████).

12        On scrolling, the Domino's Defendants raise a similar argument, namely that

13  Ameranth took different positions on scrolling depending on the issue at hand.

14  Specifically, in its efforts to obtain the Patent and uphold its validity, Ameranth told the

15  Patent Office and then the Federal Circuit that the invention eliminated the need for

16  scrolling.  However, during claim construction in this Court, Ameranth argued the claims

17  did not preclude scrolling.  Ameranth responds that its position on scrolling has been

18  consistent, namely, that the invention reduced the need for scrolling, but did not eliminate

19  scrolling entirely.

20        Unlike the "synchronous" and "PHMC/PHC" limitations discussed above, which

21  were part of the claims, scrolling, or the absence thereof, "is not claimed." (ECF No. 1475

22  at 19.)  Thus, to the extent Ameranth took inconsistent positions on this issue, it is unclear

23  what effect, if any, that had on this litigation.  Given the collateral nature of this issue, the

24  Court cannot say Ameranth's conduct here was unreasonable.

25        Next, the Domino's Defendants argue that Ameranth's principal Keith McNally

26  made misrepresentations in this case concerning Ameranth's TransPad product.

27  Specifically, the Domino's Defendants assert Mr. McNally testified during his deposition

28  in this case that Ameranth used the TransPad product during a November 1998 trade show

Appx13

1   after testifying to the contrary in the *Menusoft* trial and elsewhere.  Ameranth disputes that

2   Mr. McNally's testimony was inconsistent.  It explains there were two versions of the

3   TransPad, and that Mr. McNally's testimony in *Menusoft* was referring to the first version

4   while his testimony in this case referred to the second version.

5         Although there does appear to be an inconsistency in Mr. McNally's testimony, that

6   inconsistency was not brought to this Court's attention prior to the present motion.

7   Furthermore, and contrary to Domino's suggestion, that testimony was not offered directly

8   to this Court.  Clearly, inconsistent testimony is a cause for concern, and it should be

9   explored.  However, based on the current record, the Court cannot say Mr. McNally's

10  testimony was intentionally inconsistent or that he was attempting to mislead the Court.

11  His inconsistent testimony, standing alone, does not make this an exceptional case.

12        Next, the Domino's Defendants argue Ameranth engaged in litigation misconduct

13  by withholding evidence of Ameranth's source code and then testifying, through Mr.

14  McNally, that the source code did not exist.  Ameranth responds that it did not withhold

15  the source code, and that Mr. McNally's testimony was neither false nor misleading.  The

16  Court finds no misconduct here.  The Domino's Defendants do not dispute that Ameranth

17  produced evidence of the source code in its document productions in April 2012 and May

18  2013.  That the Domino's Defendants may not have recognized that evidence until after

19  Mr. McNally's deposition does not mean Ameranth withheld it.  Accordingly, this

20  allegation does not support an exceptional case finding.

21        The Domino's Defendants' next allegation of litigation misconduct concerns the

22  issue of screen counts.  Specifically, the Domino's Defendants allege Ameranth submitted

23  misleading evidence in an effort to prove that they (and other Defendants) met the

24  "different number of screens" limitation.  Ameranth disputes that there is any discrepancy

25  ///

26  ///

27  ///

28  ///

14

1   in its evidence of screen counts, and also argues this is a factual issue that is not amenable

2   to resolution on the present motion.[5]

3        On the comparison of the iPhone 4S and the Samsung Galaxy S7, the Court agrees

4   with the Domino's Defendants that the discrepancy in the screen counts appears to be the

5   result of the new/existing customer distinction. Ameranth does not dispute this difference

6   in the ordering sequence for these two phones, or that the difference was the cause of the

7   differing screen counts. Instead, it points to a comparison of another set of phones, the

8   iPhone 5 and the Samsung Galaxy S3, to support its position that the Domino's Defendants

9   met the screen count limitation.

10       The screen counts in this latter comparison appear to be different, which would

11   support Ameranth's position on infringement, but whether Domino's meets the screen

12   count limitation is not the issue here. Rather, the issue here is whether Ameranth attempted

13   to mislead the Court with its screen count evidence. Ameranth appears to be avoiding this

14   issue by directing the Court's attention to other issues, like whether Domino's infringed

15   the Patent.[6] It is unclear whether this is an intentional strategy on the part of Ameranth or

16   a misunderstanding of the issues. In any case, it raises concerns about Ameranth's motives.

17   Nevertheless, on the issue of screen counts, the Court cannot say the evidence reflects an

18   intent to mislead the Court as opposed to a less than precise analysis of the evidence. If

19

20

_____

21 [5] Ameranth offers a broader argument that the motion raises a number of "factually

22 intensive and credibility-based issues that were never pled or resolved." (Opp'n to Mot. at 2.) Ameranth argues it is improper for the Court to resolve those issues here, and that the

23 motion should be denied on that basis alone. (*Id.* at 2-3.) In support of that argument, Ameranth relies on *Spineology, Inc. v. Wright Medical Technology, Inc.*, 910 F.3d 1227

24 (Fed. Cir. 2018). However, the Court agrees with the Domino's Defendants' interpretation of that case, and their assertion that the case does not support Ameranth's argument. (*See*

25 Reply at 2.)

26 [6] Ameranth's responses to other arguments are similarly off point. For instance,

27 Ameranth's arguments concerning the TransPad were misdirected to issues of conception and reduction to practice. Ameranth's response to the arguments about the "PHMC/PHC"

28 were also off base.

1   anything, the screen count evidence, and the timing of Ameranth's production of that

2   evidence, reflects a weakness in Ameranth's infringement position, not necessarily an

3   unreasonable litigation tactic.

4        The Domino's Defendants' final argument is that Ameranth is continuing "its

5   vexatious enforcement of this clearly patent-ineligible patent family to this day." (Mem of

6   P. & A. in Supp. of Mot. at 17.)  In support of this argument, Domino's cites to another

7   case Ameranth filed recently against Olo, Inc. in the United States District Court for the

8   District of Delaware, alleging infringement of another patent from the '077 Patent family,

9   United States Patent No. 9,747,651 ("the '651 Patent"),[7] and Ameranth's filing in this

10  Court indicating its intent to bring additional claims against Domino's and other

11  Defendants on two claims of the '077 Patent that remain valid, and another patent from the

12  same family, United States Patent No. 9,009,060 ("the '060 Patent").  Ameranth responds

13  that neither of these filings is evidence of vexatious litigation.

14       Clearly, Ameranth is not shy about enforcing its patent rights.  Indeed, although

15  Ameranth at one point attempted to commercialize the inventions disclosed in the Patents-

16  in-Suit, its current business model appears to be focused on patent licensing rather than

17  commercializing its own products.  This business strategy is evident in the number of cases

18  Ameranth has filed in courts across the country, including appeals to the Federal Circuit

19  and writs to the United States Supreme Court.  However, the filing of all of these cases, in

20  and of itself, does not make Ameranth a vexatious litigant.  *See Molski v. Evergreen*

21  *Dynasty Corp.*, 500 F.3d 1047, 1061 (9th Cir. 2007) (citations omitted) (emphasizing "that

22  the simple fact that a plaintiff has filed a large number of complaints, standing alone, is not

23  a basis for designating a litigant as 'vexatious.'")  Rather, that determination depends on a

24  _____

25

26  [7] *See Ameranth v. Olo, Inc.*, Case No. 20cv518, United States District Court for the District
    of Delaware.  In that case, the court, relying on the Federal Circuit's decisions in *Apple* and

27  *Domino's*, found the '651 Patent unpatentable under § 101, and dismissed the case. (Mem.
    of P. & A. in Supp. of Mot. at 17.)  Ameranth has appealed that decision.  *See Ameranth,*

28  *Inc. v. Olo, Inc.*, Case No. 21-1211, United States Court of Appeals for the Federal Circuit.

16

12cv0733 DMS (WVG)

1  number of factors, which the Domino's Defendants have not addressed here. *See id.* at
2  1058 (quoting *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).[8] Thus,
3  contrary to the suggestion of the Domino's Defendants, the mere existence of other
4  lawsuits filed by Ameranth, without more, "does not mandate negative inferences about
5  the merits or purpose of this suit." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351
6  (Fed. Cir. 2015).

7        What matters to this suit and this motion are the factors discussed above, and
8  considering those factors, the Court finds this to be an exceptional case.  As explained
9  above, Ameranth's substantive position on the '850, '325 and '733 Patents was weak from
10  the outset.  Prior to filing this case, a jury had found that certain claims from those Patents
11  were invalid as anticipated and obvious.  While that case was on appeal, Ameranth
12  negotiated a settlement of that case, under which the parties agreed to jointly request that
13  the district court vacate those invalidity findings.  Although the court granted that request,
14  the jury's findings in *Menusoft* should have alerted Ameranth to potential weaknesses in
15  its case on those three Patents.

16        Ameranth's position on the '077 Patent was also weak.  As discussed above,
17  Ameranth had access to the Domino's Defendants' publicly available ordering systems,
18  and according to Ameranth's initial position on the "synchronous" limitation in this case,
19  which was consistent with its position in the *Menusoft* case, there were serious questions
20  about whether that system was infringing.  Ameranth's substantive position on the validity
21  of the '077 Patent was also weak after the Supreme Court's decision in *Alice* and the

22

23

_____

24  [8] Those factors include: "'(1) the litigant's history of litigation and in particular whether it
25  entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing
    the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?;
26  (3) whether the litigant is represented by counsel; (4) whether the litigant has caused
27  needless expense to other parties or has posed an unnecessary burden on the courts and
    their personnel; and (5) whether other sanctions would be adequate to protect the courts
28  and other parties.'" *Id.* (quoting *Safir*, 792 F.2d at 24).

1   Federal Circuit's decision in *Apple*. As stated above, Ameranth had a "responsibility to
2   reassess its case" after *Alice*, *Inventor Holdings*, 876 F.3d at 1379, and there is little
3   evidence that it did so. On the contrary, the record reflects that Ameranth pushed ahead
4   without any apparent concern that the '077 Patent might be found unpatentable. That
5   proved to be a mistake, and an especially obvious one after the Federal Circuit's decision
6   in *Apple*. Ameranth's intent to continue with this litigation, and to pursue litigation on
7   other patents from the same family, is indicative of its obstinate position, and suggests a
8   need to deter similar conduct in the future. *See Innovation Sciences, LLC v. Amazon.com,*
9   *Inc.*, No. 2020-1639, ___ Fed. Appx. ___, 2021 WL 28216, at *2 (Fed. Cir. Jan. 5, 2021)
10  (holding "that a district court is 'within the scope of its discretion in finding [a] case to be
11  exceptional based on the weakness of [a party's] § 101 arguments and the need to deter
12  similarly weak arguments in the future.'"); *see also Edekka LLC v. 3balls.com, Inc.*, No.
13  2:15-CV-541 JRG, 2015 WL 9225038, at *4 (E.D. Tex. Dec. 17, 2015) (stating questions
14  about whether patentee engaged in a "reasonable and thorough presuit investigation
15  regarding the § 101 standard and relevant authority before filing a significant number of
16  lawsuits … identifies a clear need to advance considerations of deterrence.")

17       The manner in which this case was litigated is not the stronger of the Domino's
18  Defendants' arguments, but it, too, supports a finding that this case is exceptional. As
19  explained above, Ameranth shifted its long-held position on a central element of its
20  invention, namely that the system be "synchronous" or "synchronized," to avoid a finding
21  that the Domino's Defendants did not infringe. Ameranth also shifted its position on
22  another central element, the "PHMC/PHC." Ameranth's conduct with respect to the issues
23  of scrolling and source code was not necessarily unreasonable, but that does not detract
24  from the other factors set out above, including Ameranth's conduct on the issues of the
25  TransPad testimony and the screen counts, which raise serious questions and concerns
26  about Ameranth's litigation conduct and strategy.

27  / / /
28  / / /

1    As set out above, that ambitious strategy included filing more than forty cases in this

2    Court.[9]    The first case in this series of cases, Case No. 11cv1810, included several

3    Defendants and alleged claims based on the '850 and '325 Patents only.    Thereafter,

4    Ameranth proceeded to file new cases against individual Defendants alleging infringement

5    of the '077 Patent and the '733 Patent.    This scattershot approach made for unwieldy

6    litigation, and created procedural and logistical challenges well beyond the ordinary patent

7    case.  It also resulted in repetitive, duplicative, and unnecessary motion work on behalf of

8    all parties and the Court.

9    Ameranth's decision to file all of these cases at the same time also complicated the

10   litigation and slowed its progress.  Although a small handful of Defendants settled with

11   Ameranth shortly after their cases were filed, the great majority did not, and those

12   remaining Defendants were not part of the same industry.  Rather, they were from a variety

13   of industries, including restaurants, online restaurant reservation companies, online food

14   delivery companies, hotels, online hotel reservation companies, online travel reservation

15   companies, and online entertainment ticket companies, not to mention the tech giant Apple.

16   Some of these Defendants entered into a joint defense agreement, which helped to

17   consolidate certain issues and streamline certain proceedings, but given the diverse nature

18   of Defendants' business operations, each Defendant often had to file its own pleadings or

19   a supplement to the joint pleading to make its individual position known.    Although

20   Ameranth was within its rights to file suit against all of these Defendants, its decision to

21   cast such a wide net certainly prolonged the litigation in contravention of Federal Rule of

22   Civil Procedure 1, which states the Federal Rules should be "construed, administered, and

23   employed by the court and the parties to secure the just, speedy, and inexpensive

24   _____

25

26   [9] Although the present motion was filed in the Domino's case only, the Court considers
     Ameranth's wider litigation in this Court in ruling on the present motion.  *See Elec.*
27   *Commc'n Techs., LLC v. ShoppersChoice.com, LLC,* 963 F.3d 1371, 1377 (Fed. Cir. 2020)
     (stating broader context of plaintiff's lawsuit against defendant was "relevant
28   consideration[ ]" on exceptional case motion).

12cv0733 DMS (WVG)

1   determination of every action and proceeding." Fed. R. Civ. P. 1. With the first case, Case

2   No. 11cv1810, now approaching its ten-year anniversary, this litigation can hardly be said

3   to have fulfilled that purpose. Certainly, Ameranth does not bear complete responsibility

4   for the delay in resolving these cases, but it does bear responsibility for its initial decision

5   to file as many cases as it did and to proceed with all of them simultaneously.

6        Another point also deserves mention: Ameranth's settlement with Pizza Hut.

7   Pursuant to the Court's case management orders, Pizza Hut was the first Defendant

8   scheduled for trial with Ameranth. Two weeks before the trial was scheduled to start, the

9   Court issued an order setting Pizza Hut's § 101 motion for argument. Three days after that

10  order issued, and approximately two weeks before the trial was scheduled to begin,

11  Ameranth and Pizza Hut entered into a confidential settlement agreement. Although there

12  may have been many reasons for the parties' decision to settle, the timing of the settlement,

13  and Ameranth's attempt thereafter to avoid a prompt ruling on the § 101 issue, is

14  "troubling." *Cf. Shipping and Transit, LLC v. Hall Enterprises, Inc.*, No. CV 16-06535-

15  AG-AFM, 2017 WL 3485782, at *7 (C.D. Cal. July 5, 2017) (stating plaintiff's repeated

16  dismissal of its own lawsuits to evade a ruling on the merits while continuing to file new

17  lawsuits advancing the same claims is "troubling.") This is especially so given Ameranth's

18  settlement with the *Menusoft* Defendants after the jury's invalidity findings on the '850,

19  '325 and '733 Patents, and the parties' agreement in that settlement to seek vacatur of those

20  findings.

21       Taking a further step back and considering Ameranth's overall litigation conduct is

22  also revealing. From that perspective, Ameranth has had limited success before the one

23  jury to consider its Patents, as well with the PTAB, the Federal Circuit and this Court. The

24  only jury to have considered the '850, '325 and '733 Patents found to be invalid and not

25  infringed, and the PTAB and the Federal Circuit reached similar conclusions. This Court

26  and the Federal Circuit then found that certain claims of the '077 Patent were patent

27  ineligible. Yet, those losses have not had a deterrent effect on Ameranth's behavior. On

28  the contrary, Ameranth had the jury verdicts erased, and settled with the Pizza Hut

1   Defendants on the eve of trial before the Court could hear their § 101 motion.  When that

2   motion was eventually heard and decided adverse to Ameranth, Ameranth responded the

3   same way it responded to its other losses, with an appeal to the Federal Circuit, where its

4   loss was affirmed.    Considering this pattern of continued bullishness in the face of

5   numerous defeats, and the totality of the circumstances discussed above, the Court finds

6   this is an exceptional case under §285.

### III.

### CONCLUSION AND ORDER

9   For the reasons set out above, the Court grants the motion to declare this case

10  exceptional.  As part of their motion, the Domino's Defendants requested fees for the

11  CBMs and Appeals, but the Court declines to resolve that issue in the present order.  Rather,

12  the parties should address whether those fees are reasonable in their briefing on the amount

13  of fees and costs to be awarded.  Domino's shall file its opening brief on that issue on or

14  before March 5, 2021.  Ameranth shall file its opposition brief on or before March 19,

15  2021, and Domino's shall file its reply brief on or before March 26, 2021.  Counsel shall

16  also contact Judge Gallo's Chambers via email at efile_gallo@casd.uscourts.gov to

17  schedule a settlement conference to occur as soon as practicable.

18  **IT IS SO ORDERED**.

19  Dated:  February 5, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court

12cv0733 DMS (WVG)

Appx21

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10
11   AMERANTH, INC.,                      Case No.:  12cv0733 DMS (WVG)
12                          Plaintiff,
                                          **ORDER (1) DENYING**
13   v.                                   **AMERANTH'S MOTION TO**
                                          **RETAX COSTS AND (2) GRANTING**
14   DOMINO'S PIZZA, INC. and             **IN PART AND DENYING IN PART**
     DOMINO'S PIZZA, LLC                  **DOMINO'S MOTION TO RETAX**
15                                        **COSTS**
                          Defendants.
16
17
18

19        On December 7, 2018, the Clerk of Court issued an Order Taxing Costs in this case,
20   awarding Domino's costs in the amount of $51,632.89.  This was less than the $75,197.10
21   that Domino's requested, and more than Ameranth thought was warranted.  The parties
22   now move to retax costs, Ameranth, in the amount of $5,331.55, and Domino's, in the
23   amount of $68,805.39.
24        In its motion, Ameranth raises two issues.  First, it argues the costs taxed for
25   deposition transcripts ($22,405.29) should be apportioned between the thirty-three
26   Defendants because of their joint defense agreement, and as so apportioned, Domino's
27   should be awarded only $678.95 in these costs.  Domino's does not dispute the existence
28

1

Appx22

1  of the joint defense agreement, but asserts the agreement does not require apportionment
2  of these costs.

3         Civil Local Rule 54.1.b.3.a states: "The cost of an original and one copy of any
4  deposition (including videotaped depositions) necessarily obtained for use in the case is
5  allowable."  Here, there is no dispute the Clerk of Court awarded Domino's costs in
6  accordance with this Rule.  Ameranth's only dispute is that the Clerk did not apportion
7  these costs according to the joint defense agreement.  Although Ameranth cites case law in
8  which courts apportioned costs between cases and parties, it fails to cite any case law
9  requiring apportionment here.  Accordingly, the Court declines to retax the costs associated
10 with the deposition transcripts.

11        Next, Ameranth argues the Clerk of Court should not have taxed the costs Domino's
12 incurred in connection with Iron Mountain's services related to Domino's source code.
13 Domino's requested $24,884.90 in costs, and the Clerk awarded $24,575.  Ameranth
14 asserts the Clerk should not have awarded any costs here because they were not
15 "necessarily incurred" as required by Civil Local Rule 54.1.b.6.

16        In *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1332 (Fed. Cir.
17 2013), the Federal Circuit was faced with a similar issue regarding "costs as they relate to
18 the production of source code[.]"  The court found that:

19        [w]here legitimate trade-secret concerns entitle a producing party to use a
20        special form of production media (such as making production copies available
           for review on a secured computer, rather than allowing the requester to take
21        possession of the production copies), the costs of such production media are
22        recoverable under section 1920(4).

23 *Id.*  Ameranth argues the Federal Circuit did not apply Ninth Circuit law or the Local Rules
24 of this Court in reaching this decision, therefore *CBT Flint Partners* does not support the
25 award of costs here.  However, the Court disagrees.  The Federal Circuit clearly applied
26 federal law, specifically 28 U.S.C. § 1920(4), which applies in all federal courts.
27 Furthermore, the language of that statute ("necessarily obtained"), 28 U.S.C. § 1920(4), is
28 similar to the language in the Local Rules ("necessarily incurred"), Civ. L. R. 54.1.b.6,

2

12cv0733 DMS (WVG)

Appx23

1    which further supports application of *CBT Flint Partners* to the facts presented here.  Under
2    the reasoning of that case, the Court declines to retax these costs.

3          Turning to Domino's motion, their first request is that the Court retax costs in the
4    amount of $12,369.50 for converting documents to electronic format for production to
5    Ameranth.  The Clerk of Court declined to award these costs, finding the determination of
6    a reasonable hourly rate was for the Court.  The Clerk also noted that Domino's failed to
7    document the number of pages copied or converted.  Domino's does not dispute that it
8    failed to provide that information, (*see* Reply at 3, ECF No. 96 at 7), which is required by
9    the Local Rules.  Civ. L. R. 54.1.b.6.c.  Therefore, the Court declines to retax these costs.

10          The only other item mentioned in Domino's motion is costs associated with creating
11    visual aids for trial.  Specifically, Domino's asks the Court to retax costs here in the amount
12    of $4,703.  The Clerk of Court declined to tax these costs because he found Domino's did
13    provide sufficient evidence in support, and because the exhibits were not actually used at
14    trial.  Domino's disputes both of those findings.

15          The Court agrees with Domino's that the Local Rules do not require that exhibits be
16    admitted at trial in order for the costs of those exhibits to be recoverable.  *See* Civ. L. R.
17    54.1.b.7.a.  The Court also agrees with Domino's that it provided sufficient evidence in
18    support of these costs.  *See* ECF No. 72-1 at 5-6.  Accordingly, the Court grants Domino's
19    motion to retax these costs.

20          For these reasons, Ameranth's motion to retax costs is denied, and Domino's motion
21    to retax costs is granted in part and denied in part, as set out above.

22          **IT IS SO ORDERED**.

23    Dated:  March 4, 2021

25                                              Hon. Dana M. Sabraw, Chief Judge
                                                United States District Court

3

12cv0733 DMS (WVG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

12cv0733 DMS (WVG)

Appx25

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                       SOUTHERN DISTRICT OF CALIFORNIA
10
11   AMERANTH, INC.,                          Case No.:  12cv0733 DMS (WVG)
12                              Plaintiff,
                                              **ORDER ON DOMINO'S PIZZA, LLC
13   v.                                       AND DOMINO'S PIZZA, INC.'S
                                              REQUEST FOR FEES AND COSTS**
14   DOMINO'S PIZZA, INC. and
     DOMINO'S PIZZA, LLC
15
                               Defendants.
16
17
18          This case comes before the Court on the parties' briefing on the amount of fees and
19   costs to be awarded to the Domino's parties after this Court's exceptional case finding.
20   The Domino's parties request a total of $3,341,492.69 in fees, non-taxable costs and pre-
21   judgment interest for work performed in the district court litigation and related appeal and
22   the Covered Business Method ("CBM") proceedings and related appeal.  Ameranth argues
23   the Domino's parties should not recover fees or costs incurred on the CBM proceedings or
24   the appeals, nor should they recover any prejudgment interest.  Ameranth also asserts the
25   Domino's parties should not recover any fees incurred before March 26, 2018, which was
26   the date of the hearing in *IPDEV*, and that any fees incurred after that date should be
27   reduced by fifty percent.  Alternatively, Ameranth contends the Domino's parties should
28   not recover any fees incurred before November 29, 2016, which is when the Federal Circuit

                                              1

Appx26

1   issued its decision in *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016).

2   Ameranth also urges the Court to decline to award fees for redacted billing, to reduce any

3   fees awarded based on the Domino's parties' misconduct, and to decline to award any non-

4   taxable costs.

**I.**

**DISCUSSION**

7        The Domino's parties used the lodestar method for calculating the fees incurred in

8   this case. Under that method, the number of hours expended is multiplied by the applicable

9   hourly rate. Ameranth does not object to the hourly rates charged or the total number of

10   hours expended, both of which the Court finds to be reasonable. The Court therefore turns

11   to Ameranth's other arguments for reducing the requested award.

12        The first of those arguments is that the Domino's parties should not recover any fees

13   for work performed on the appeal from this Court's summary judgment ruling or the CBM

14   proceedings and the appeal therefrom. The Domino's parties respond that the Court should

15   take a more holistic approach and award fees for all stages of the case.

16        The Federal Circuit has stated that "a case should be viewed more as an 'inclusive

17   whole' rather than as a piecemeal process when analyzing fee-shifting under § 285."

18   *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014) (citing

19   *Comm'r, INS v. Jean*, 496 U.S. 154, 160 (1990)). In *Therasense*, the court stated that

20   although "parties often task the trial court with allocating costs and attorney's fees, …

21   '[n]either § 285 nor its legislative history distinguishes between awarding attorney fees in

22   the district court and in the appellate court.'" *Id.* at 517 (quoting *Rohm & Haas Co. v.*

23   *Crystal Chemical Co.*, 736 F.3d 688, 692 (Fed. Cir. 1984)). "Indeed, § 285 does not bar

24   the trial court from awarding fees for the entire case, including any subsequent appeals."

25   *Id.* (citing *Jean*, 496 U.S. at 160).

26        Ameranth raises two arguments as to why the Court should not follow this approach,

27   namely that its appeals were not frivolous and that the CBM proceedings did not obviate

28   the need for further litigation in this Court. Neither of these arguments, however, provides

2

Appx27

1 | a basis for this Court to deviate from the holistic approach set out above. Therefore, the
2 | Court rejects Ameranth's argument that the fees and costs incurred on appeal and in the
3 | CBM proceedings should not be awarded to the Domino's parties.[1]

4 |     Next, Ameranth urges the Court to put a temporal limitation on any fee award.
5 | Ameranth offers two options in this regard. First, it asserts the Domino's parties should
6 | not receive fees for any work performed before March 26, 2018, which is the date of the
7 | *IPDEV* hearing. Although Ameranth maintains it did not take any inconsistent positions
8 | in this case, it argues to the extent it may have created "an appearance of inconsistency"
9 | on the "synchronous" limitation in the Patents, the only time it could have possibly done
10 | so was at the *IPDEV* hearing. Accordingly, Ameranth argues any fees incurred prior to
11 | that date are not recoverable. Ameranth's argument, however, places too much emphasis
12 | on only one aspect of this Court's exceptional case finding. As the Court explained in its
13 | rulings, that finding was based on a number of factors, not just Ameranth's conduct at the
14 | *IPDEV* hearing. Thus, the Court rejects Ameranth's invitation to limit the Domino's
15 | parties' fees to only those incurred after the *IPDEV* hearing.

16 |     Failing that cut-off date, Ameranth offers the Court another date before which fees
17 | should not be recoverable: November 29, 2016, which is the date of the Federal Circuit's
18 | decision in *Apple*. As set out in the Courts exceptional case order, Ameranth's case on the
19 | '077 Patent was especially weak after the *Apple* decision. (ECF No. 134 at 11-12.)
20 | However, as with the *IPDEV* hearing discussed above, that decision was not the only basis
21 | for the Court's exceptional case finding. Rather, consistent with the *Octane Fitness*
22 | standard, this Court considered and relied on the totality of the circumstances in this case
23 | in making its exceptional case finding. Given that standard, and the Federal Circuit's
24 |
25 |

26 | [1] After the parties submitted their briefs, the Court requested supplemental briefing on
27 | whether *Amneal Pharmaceuticals LLC v. Almirall, LLC*, 960 F.3d 1368 (Fed. Cir. 2020),
28 | affects the recovery of fees and costs related to the CBM proceedings. The Court reviewed the parties' supplemental briefs, and finds *Amneal* does not apply here.

3

Appx28

1   preference for a more holistic approach to fee-shifting under § 285, *Therasense*, 745 F.3d

2   at 517 (quoting *Jean*, 496 U.S. at 161–62), the Court declines to impose a cut-off date on

3   the recovery of fees in this case.

4          Next, Ameranth argues the Domino's parties should not be entitled to recover fees

5   for redacted billing entries.  The Domino's parties explain their redactions covered "three

6   types of information:  (1) communications with its client, (2) communications with the

7   joint defense group ("JDG") and (3) the substance of legal/prior art research[,]" (Reply at

8   7), and thus all of their redactions were proper.

9          The case law supports the Domino's parties.  In *Clarke v. American Commerce Nat.*

10  *Bank*, 974 F.2d 127, 129 (9th Cir. 1992), the Ninth Circuit stated that "correspondence,

11  bills, ledgers, statements, and time records which also reveal the motive of the client in

12  seeking representation, litigation strategy, or the specific nature of the services provided,

13  such as researching particular areas of law, fall within the [attorney-client] privilege."  The

14  court has also stated that redactions are appropriate when they cover "what went on

15  between client and counsel, and among counsel[,]" and that work product protection

16  extends to "issues that may raise problems for one's claim, or problems affecting the relief

17  one will obtain in district court after prevailing on" an argument.  *Democratic Party of*

18  *Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).  The redactions Ameranth

19  complains about appear to fall into these categories.  For instance, the May 9, 2012

20  redactions follow the entry of an invalidity search, (Decl. of Thomas Cunningham in Supp.

21  of Opening Br. ("Cunningham Decl."), Ex. A at 37[2]), and the subject of legal research.

22  (*Id.*)  The September 20, 2012 redactions cover the topic of discussion between the JDG.

23  (*Id.* at 68.)  These kinds of redactions are a far cry from the redactions in *IPS Group, Inc.*

24  *v. Duncan Solutions, Inc.*, No. 15-cv-1526-CAB (MDD), 2018 WL 3956109 (S.D. Cal.

25  Aug. 17, 2018), which is the case Ameranth relies upon.  There, the moving party redacted

26

27

28  _____

[2] The page numbers cited here reflect the page number assigned by the Court's CM/ECF
system.

4

1    the entirety of the work description for every billing entry. *See IPS Group, Inc. v. Duncan*

2    *Solutions, Inc.*, No. 15-cv-1526-CAB (MDD), ECF No. 301-3.   Contrary to Ameranth's

3    suggestion, that case is not "instructive[,]" (Opp'n to Mot. at 20), and it does not support

4    Ameranth's request for a reduction of the fee award in this case based on any redacted

5    billings.

6        Next, Ameranth argues any fee award should be reduced due to the Domino's

7    parties' misconduct.  The Domino's parties dispute that they engaged in any misconduct

8    in this case, and assert that Ameranth's argument to the contrary is baseless.  The Federal

9    Circuit has held that the conduct of the prevailing party should be considered as part of the

10   totality of the circumstances in deciding an exceptional case motion. *Romag Fasteners,*

11   *Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1340 (Fed. Cir. 2017).  However, Ameranth fails to cite

12   any authority to support its argument that the conduct of the prevailing party should be

13   considered after the exceptional case finding is made and the court is considering the

14   amount of fees to be awarded, which is the situation here.  Absent any authority to support

15   Ameranth's argument, the Court declines to adjust the fee award based on any alleged

16   misconduct on the part of the Domino's parties.

17       Next, Ameranth argues the Court should exercise its discretion and decline to award

18   the Domino's parties any non-taxable costs.  In support of this argument, Ameranth relies

19   on the arguments discussed above, which the Court has rejected.  Ameranth also raises a

20   specific objection to the "Computer Legal Research Charges" as excessive and

21   unexplained.  The Court disagrees that these charges are excessive, but does agree that

22   some of the charges are unexplained.  Although most of the charges appear to correspond

23   to legal research described in the relevant invoice, some invoices include "computer search

24   charges" without any mention of the performance of legal research.  (*See, e.g.,*

25   Cunningham Decl., Ex. A at 9-12, 53-58.)  On those charges, which total $8,954.04 by the

26   Court's calculations, the Court agrees with Ameranth that those costs are not recoverable.

27   The remainder of the non-taxable costs are recoverable, however.

28

12cv0733 DMS (WVG)

Appx30

1    Ameranth's final argument is that the Court should not award any prejudgment

2  interest because the Domino's parties failed to request it in their exceptional case motion

3  and because Ameranth did not engage in "highly egregious conduct." As to the latter

4  argument, there is no requirement that a party engage in "highly egregious conduct" before

5  a court may award prejudgment interest on an attorney fee award under § 285. Rather, that

6  decision is a discretionary one that depends on "all the facts and circumstances." *Mathis

7  v. Spears*, 857 F.2d 749, 761 (Fed. Cir. 1988). In this case, Ameranth correctly points out

8  that the Domino's parties "did not raise the prospect of prejudgment interest" in their

9  exceptional case motion, and considering that circumstance, the Court declines to award

10  prejudgment interest here. *See M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, No. 14-

11  4857 (JRT/HB), 2018 WL 1399308, at *2 (D. Minn. Mar. 20, 2018) (declining to award

12  prejudgment interest because defendant did not request it in fee motion).

13                                          **II.**

14                                   **CONCLUSION**

15    For all of the reasons set out above, the Court awards the Domino's parties the

16  following fees and costs pursuant to 35 U.S.C. § 285:

| Case | Attorneys' Fees | Costs | Total |
|------|-----------------|-------|-------|
| District Court | $2,233,510.70 | $167,964.23 | $2,401474.93 |
| Appeal of SJ | $175,003.50 | $2,203.53 | $177,207.03 |
| CBMs + Appeal | $189,867.00 | $17,636.33 | $207,503.33 |
| Totals | $2,598,381.20 | $187,804.09 | $2,786,185.29 |

23    **IT IS SO ORDERED**.

24  Dated: June 21, 2021

                                   Hon. Dana M. Sabraw, Chief Judge
                                   United States District Court

12cv0733 DMS (WVG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12cv0733 DMS (WVG)

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10
11   AMERANTH, INC.,                          Case No.:  12cv0733 DMS (WVG)
12                             Plaintiff,
                                              **ORDER GRANTING AMERANTH'S**
13   v.                                       **MOTION FOR ISSUANCE OF A**
                                              **FINAL AND APPEALABLE**
14   DOMINO'S PIZZA, INC. and                 **AMENDED JUDGMENT**
     DOMINO'S PIZZA, LLC
15
                             Defendants.
16
17
18        This case comes before the Court on Ameranth's motion for issuance of a final and
19   appealable amended judgment.  Defendants filed an opposition to the motion, and Plaintiff
20   filed a reply.
21        Ameranth requests that the Court issue a final judgment in accordance with the
22   Federal Circuit's November 1, 2019 judgment, and that the final judgment incorporate the
23   Court's Orders finding this case exceptional and awarding Defendants their attorneys' fees
24   and costs.  Defendants do not object to the issuance of a final judgment that complies with
25   the Federal Circuit's judgment, but they do object to inclusion of the issues of exceptional
26   case and fees and costs in that final judgment.
27        Clearly, the Court must enter an amended judgment in accordance with the Federal
28   Circuit's opinion.  Whether the Court must include in the amended judgment the

1

Appx33

1 exceptional case finding and the award of fees and costs is hotly disputed, apparently more
2 for tactical reasons than on the merits, but the Court finds no authority preventing it from
3 including those issues.  Indeed, this Court granted a similar request in another case.  *See*
4 *Digital Empire Limited v. Compal Electronics Inc.*, Case No. 14cv1688 DMS (KSC), ECF
5 No. 167.  Thus, in the interests of finality and the efficient administration of justice, the
6 Court grants Ameranth's motion and issues the following Amended Judgment:

7      WHEREAS the Patent Trial and Appeal Board and/or the Federal Circuit Court of
8 Appeals has held all claims of U.S. Patent No. 6,384,850 (the "'850 Patent"), all claims
9 other than claim 14 of U.S. Patent No. 6,871,325 (the "'325 Patent"), and all claims of U.S.
10 Patent No. 6,982,733 (the "'733 Patent") patent ineligible and/or invalid, and all appeals of
11 those decisions have been exhausted;

12      WHEREAS the issue of patent eligibility of certain claims of U.S. Patent No.
13 8,146,077 (the "'077 Patent") under 35 U.S.C. §101 (hereinafter "Section 101") was
14 brought before this Court on summary judgment by Domino's Pizza, LLC and Domino's
15 Pizza, Inc. (collectively hereinafter "Domino's"), fully briefed, oral argument heard, and a
16 decision rendered;

17      WHEREAS, on October 11, 2018, the Court issued a Judgment (Doc. No. 66)
18 declaring all asserted claims of the '077 Patent (claims 1, 4-9, 11, 13-18) patent ineligible
19 under Section 101 and entering judgment in favor of Domino's on Domino's counterclaim
20 for invalidity of Ameranth's '850, '325, '733, and '077 Patents;

21      WHEREAS, on November 1, 2019, the Federal Circuit, Case No. 2019-1141/2019-
22 114, issued a Decision affirming in part and vacating in part the District Court's Order
23 granting summary judgment, and remanded the matter to the District Court to vacate the
24 October 11, 2018 Judgment with respect to claims 4 and 5 of the '077 Patent;

25      WHEREAS, on November 6, 2020, based upon the Court's October 11, 2018
26 Judgment (Doc. No. 66), Domino's brought a motion to declare this case exceptional and
27 to award its fees and costs incurred in the matter under 35 U.S.C. §285 (hereinafter
28 / / /

2

Appx34

1   "Section 285"), and such motion was fully briefed and a decision rendered (Doc. No. 134);

2   and

3         WHEREAS, on June 21, 2021, the Court issued an Order (Doc. No. 169) awarding

4   Domino's fees and costs against Ameranth pursuant to 35 U.S.C. §285,

5         Now, therefore, pursuant to Rule 58 of the Federal Rules of Civil Procedure and in

6   accordance with the Mandate of the Federal Circuit (Doc. No. 108), IT IS HEREBY

7   ORDERED AND ADJUDGED:

8         Domino's motion for summary judgment of unpatentability under Section 101 is

9   granted in part, and claims 1, 6-9, 11, and 13-18 of the '077 Patent, only, are declared patent

10   ineligible under Section 101 as set forth in the Court's Order Granting the Motion For

11   Summary Judgment Of Unpatentability (Doc. No. 1395 in Case No. 11-cv-1810 DMS-

12   WVG).

13         The case is declared exceptional under Section 285 as set forth in the Court's Order

14   Granting in Part Defendants' Second Renewed Motion to Declare Case Exceptional (Doc.

15   No. 134).

16         Domino's is awarded fees and costs in this matter in the total amount of

17   $2,786,185.29 under Section 285, as set forth in the Court's Order on Domino's Request

18   for Fees and Costs (Doc. No. 169).

19         Judgment is entered in favor of Domino's on its counterclaim for patent ineligibility

20   of claims 1, 6-9, 11, and 13-18, only, of the '077 Patent, and on all claims of the '850, '325,

21   and '733 Patents other than claim 14 of the '325 Patent.   Domino's other counterclaims

22   are dismissed without prejudice.

23         The Clerk of Court shall enter judgment accordingly and close this case.

24         **IT IS SO ORDERED**.

25

26

27

28

Appx35

1 | Dated:  November 18, 2021

2

3                          Hon. Dana M. Sabraw, Chief Judge
                           United States District Court
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12cv0733 DMS (WVG)

Appx36

1
2
3
4
5
6
7

8                              UNITED STATES DISTRICT COURT

9                              SOUTHERN DISTRICT OF CALIFORNIA

10

11    AMERANTH, INC.,                          Case No.:  12cv0733 DMS (WVG)

12                              Plaintiff,      **ORDER GRANTING AMERANTH'S**

13    v.                                        **MOTION FOR ISSUANCE OF A**
                                                **FINAL AND APPEALABLE**
14    DOMINO'S PIZZA, INC. and                  **AMENDED JUDGMENT**
      DOMINO'S PIZZA, LLC
15
                              Defendants.
16

17

18         This case comes before the Court on Ameranth's motion for issuance of a final and

19    appealable amended judgment.  Defendants filed an opposition to the motion, and Plaintiff

20    filed a reply.

21         Ameranth requests that the Court issue a final judgment in accordance with the

22    Federal Circuit's November 1, 2019 judgment, and that the final judgment incorporate the

23    Court's Orders finding this case exceptional and awarding Defendants their attorneys' fees

24    and costs.  Defendants do not object to the issuance of a final judgment that complies with

25    the Federal Circuit's judgment, but they do object to inclusion of the issues of exceptional

26    case and fees and costs in that final judgment.

27         Clearly, the Court must enter an amended judgment in accordance with the Federal

28    Circuit's opinion.   Whether the Court must include in the amended judgment the

                                              1

Appx37

1  exceptional case finding and the award of fees and costs is hotly disputed, apparently more

2  for tactical reasons than on the merits, but the Court finds no authority preventing it from

3  including those issues.  Indeed, this Court granted a similar request in another case.  *See*

4  *Digital Empire Limited v. Compal Electronics Inc.*, Case No. 14cv1688 DMS (KSC), ECF

5  No. 167.  Thus, in the interests of finality and the efficient administration of justice, the

6  Court grants Ameranth's motion and issues the following Amended Judgment:

7        WHEREAS the Patent Trial and Appeal Board and/or the Federal Circuit Court of

8  Appeals has held all claims of U.S. Patent No. 6,384,850 (the "'850 Patent"), all claims

9  other than claim 14 of U.S. Patent No. 6,871,325 (the "'325 Patent"), and all claims of U.S.

10  Patent No. 6,982,733 (the "'733 Patent") patent ineligible and/or invalid, and all appeals of

11  those decisions have been exhausted;

12        WHEREAS the issue of patent eligibility of certain claims of U.S. Patent No.

13  8,146,077 (the "'077 Patent") under 35 U.S.C. §101 (hereinafter "Section 101") was

14  brought before this Court on summary judgment by Domino's Pizza, LLC and Domino's

15  Pizza, Inc. (collectively hereinafter "Domino's"), fully briefed, oral argument heard, and a

16  decision rendered;

17        WHEREAS, on October 11, 2018, the Court issued a Judgment (Doc. No. 66)

18  declaring all asserted claims of the '077 Patent (claims 1, 4-9, 11, 13-18) patent ineligible

19  under Section 101 and entering judgment in favor of Domino's on Domino's counterclaim

20  for invalidity of Ameranth's '850, '325, '733, and '077 Patents;

21        WHEREAS, on November 1, 2019, the Federal Circuit, Case No. 2019-1141/2019-

22  114, issued a Decision affirming in part and vacating in part the District Court's Order

23  granting summary judgment, and remanded the matter to the District Court to vacate the

24  October 11, 2018 Judgment with respect to claims 4 and 5 of the '077 Patent;

25        WHEREAS, on November 6, 2020, based upon the Court's October 11, 2018

26  Judgment (Doc. No. 66), Domino's brought a motion to declare this case exceptional and

27  to award its fees and costs incurred in the matter under 35 U.S.C. §285 (hereinafter

28  / / /

1  "Section 285"), and such motion was fully briefed and a decision rendered (Doc. No. 134);
2  and

3      WHEREAS, on June 21, 2021, the Court issued an Order (Doc. No. 169) awarding
4  Domino's fees and costs against Ameranth pursuant to 35 U.S.C. §285,

5      Now, therefore, pursuant to Rule 58 of the Federal Rules of Civil Procedure and in
6  accordance with the Mandate of the Federal Circuit (Doc. No. 108), IT IS HEREBY
7  ORDERED AND ADJUDGED:

8      Domino's motion for summary judgment of unpatentability under Section 101 is
9  granted in part, and claims 1, 6-9, 11, and 13-18 of the '077 Patent, only, are declared patent
10 ineligible under Section 101 as set forth in the Court's Order Granting the Motion For
11 Summary Judgment Of Unpatentability (Doc. No. 1395 in Case No. 11-cv-1810 DMS-
12 WVG).

13     The case is declared exceptional under Section 285 as set forth in the Court's Order
14 Granting in Part Defendants' Second Renewed Motion to Declare Case Exceptional (Doc.
15 No. 134).

16     Domino's is awarded fees and costs in this matter in the total amount of
17 $2,786,185.29 under Section 285, as set forth in the Court's Order on Domino's Request
18 for Fees and Costs (Doc. No. 169).

19     Judgment is entered in favor of Domino's on its counterclaim for patent ineligibility
20 of claims 1, 6-9, 11, and 13-18, only, of the '077 Patent, and on all claims of the '850, '325,
21 and '733 Patents other than claim 14 of the '325 Patent.   Domino's other counterclaims
22 are dismissed without prejudice.

23     The Clerk of Court shall enter judgment accordingly and close this case.
24     **IT IS SO ORDERED**.

25
26
27
28

3

12cv0733 DMS (WVG)

1   Dated:  November 18, 2021

2                                                                Hon. Dana M. Sabraw, Chief Judge

3                                                                United States District Court

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

12cv0733 DMS (WVG)

Appx40

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number**   22-1200, 22-2223

**Short Case Caption**   Ameranth, Inc. v. Domino's Pizza, LLC

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on __11/21/2022__

by   ☐   U.S. Mail   ☐   Hand Delivery   ☑ Email   ☐ Facsimile
       ☐   Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
| --- | --- |
| Frank A. Angileri<br>Brooks Kushman P.C. | 1000 Town Center, 22nd Floor, Southfield, MI 48075<br>fangileri@brookskushman.com |
| Thomas W. Cunningham<br>Brooks Kushman P.C. | 1000 Town Center, 22nd Floor, Southfield, MI 48075<br>tcunningham@brookskushman.com |
|  |  |
|  |  |
|  |  |

☐   Additional pages attached.

Date: __11/21/2022__

Signature:   /s/ Robert F. Ruyak

Name:   Robert F. Ruyak

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2022-1200, 2022-2223

**Short Case Caption:**  Ameranth, Inc. v. Domino's Pizza, LLC and Domino's Pizza, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑   the filing has been prepared using a proportionally-spaced typeface and includes  13,671  words.

☐   the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐   the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date:  11/21/2022              Signature:    /s/ Robert F. Ruyak

                               Name:    Robert F. Ruyak

Save for Filing

**FORM 31. Certificate of Confidential Material**

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:**     2022-1200, 2022-2223

**Short Case Caption:**     Ameranth, Inc. v. Domino's Pizza, LLC, et al.

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda.  *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains ___fifteen___ number of unique words (including numbers) marked confidential.

☑     This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐     This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐     This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: ___11/21/2022___          Signature:     /s/ Robert F. Ruyak

Name:     Robert F. Ruyak