2022-1200, 2022-2223

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

AMERANTH, INC.,
*Plaintiff-Appellant*

v.

DOMINO'S PIZZA, LLC, DOMINO'S PIZZA, INC.,
*Defendants-Appellees*

Appeals from the United States District Court for the Southern District of California in No. 3:12-cv-00733-DMS-WVG, Judge Dana M. Sabraw

-------------------------------

AMERANTH, INC.,
*Plaintiff-Appellant*

v.

PAPA JOHN'S USA, INC., OPENTABLE, INC.,
SEAMLESS NORTH AMERICA, LLC, GRUBHUB,
INC., AGILYSYS, INC., HYATT CORPORATION,
STARWOOD HOTELS & RESORTS WORLDWIDE
INC., BEST WESTERN INTERNATIONAL, INC.,
MARRIOTT INTERNATIONAL, INC., RITZCARLTON
HOTEL COMPANY, L.L.C., MARRIOTT
HOTEL SERVICES, INC., RENAISSANCE HOTEL
OPERATING COMPANY, HOTEL TONIGHT, INC.,
HOTELS.COM, L.P., HILTON RESORTS
CORPORATION, HILTON WORLDWIDE, INC.,
HILTON INTERNATIONAL CO., KAYAK

SOFTWARE CORPORATION, MOBO SYSTEMS,
INC., ORBITZ, LLC, STUBHUB, INC.,
TICKETMASTER, LLC, LIVE NATION
ENTERTAINMENT, INC., TRAVELOCITY.COM LP,
USABLENET, INC., FANDANGO, INC., HOTWIRE,
INC., EXPEDIA, INC., ORACLE CORPORATION,
ATX INNOVATION, INC., APPLE INC.,
EVENTBRITE, INC., TICKETBISCUIT, LLC,
TICKETFLY, INC., STARBUCKS CORPORATION,
*Defendants-Appellees*

————————————

2022-1655, 2022-1657, 2022-1660, 2022-1661, 2022-1662,
2022-1663, 2022-1666, 2022-1667, 2022-1668, 2022-1669,
2022-1671, 2022-1672, 2022-1673, 2022-1674, 2022-1675,
2022-1676, 2022-1677, 2022-1678, 2022-1679, 2022-1680,
2022-1681, 2022-1682, 2022-1683, 2022-1684, 2022-1686,
2022-1687, 2022-1689, 2022-1690, 2022-1692

————————————

Appeals from the United States District Court for the
Southern District of California in Nos. 3:12-cv-00729-DMS-WVG,
3:12-cv-00731-DMS-WVG, 3:12-cv-00737-DMS-WVG,
3:12-cv-00739-DMS-WVG, 3:12-cv-00858-DMS-WVG,
3:12-cv-01627-DMS-WVG, 3:12-cv-01629-DMS-WVG,
3:12-cv-01630-DMS-WVG, 3:12-cv-01631-DMS-WVG,
3:12-cv-01633-DMS-WVG, 3:12-cv-01634-DMS-WVG,
3:12-cv-01636-DMS-WVG, 3:12-cv-01640-DMS-WVG,
3:12-cv-01642-DMS-WVG, 3:12-cv-01644-DMS-WVG,
3:12-cv-01646-DMS-WVG, 3:12-cv-01648-DMS-WVG,
3:12-cv-01649-DMS-WVG, 3:12-cv-01650-DMS-WVG,
3:12-cv-01651-DMS-WVG, 3:12-cv-01653-DMS-WVG,
3:12-cv-01654-DMS-WVG, 3:12-cv-01655-DMS-WVG,
3:12-cv-01656-DMS-WVG, 3:12-cv-02350-DMS-WVG,
3:13-cv-00350-DMS-WVG, 3:13-cv-00352-DMS-WVG,
3:13-cv-00353-DMS-WVG, and 3:13-cv-01072-DMS-WVG,
Judge Dana M. Sabraw

## BRIEF OF DEFENDANTS-APPELLEES
## DOMINO'S PIZZA, LLC, DOMINO'S PIZZA, INC.,

Frank A. Angileri
Thomas W. Cunningham
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075-1238
(248) 358-4400

*Counsel for Defendants-Appellees*

February 2, 2023

# FEDERAL CIRCUIT RULE 28(a)(12)(B) STATEMENT

Exemplary claim 1 of U.S. Patent No. 8,146,077 may contain limitations at issue in this appeal. Claim 1 reads:

1. An information management and real time synchronous communications system for configuring and transmitting hospitality menus comprising:

    a. a central processing unit,

    b. a data storage device connected to said central processing unit,

    c. an operating system including a first graphical user interface,

    d. a master menu including at least menu categories, menu items and modifiers, wherein said master menu is capable of being stored on said data storage device pursuant to a master menu file structure and said master menu is capable of being configured for display to facilitate user operations in at least one window of said first graphical user interface as cascaded sets of linked graphical user interface screens, and

    e. menu configuration software enabled to generate a programmed handheld menu configuration from said master menu for wireless transmission to and programmed for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu,

    wherein the menu configuration software is further enabled to generate the programmed handheld menu configuration in conformity with a customized display layout unique to the wireless handheld computing device to facilitate user operations with and display of the programmed handheld menu configuration on the display screen of a handheld graphical user interface integral with the wireless handheld computing device, wherein said customized display layout is compatible with the displayable size of the handheld graphical user interface wherein the programmed handheld menu configuration is configured by the menu configuration software for display as programmed cascaded sets of linked graphical user interface screens appropriate for the

customized display layout of the wireless handheld computing device, wherein said programmed cascaded sets of linked graphical user interface screens for display of the handheld menu configuration are configured differently from the cascaded sets of linked graphical user interface screens for display of the master menu on said first graphical user interface, and

wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of the programmed handheld menu configuration to the wireless handheld computing device and real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device, and

wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system, and

wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system includes a different number of user interface screens from at least one other wireless handheld computing device in the system.

# CERTIFICATE OF INTEREST

Counsel for Appellees, Domino's Pizza LLC and Domino's Pizza, Inc., certifies the following:

1.    **Represented Entities.**  Provide the full names of all entities represented by undersigned counsel in this case. Domino's Pizza LLC and Domino's Pizza, Inc.

2.    **Real Party in Interest.**  Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.   None

3.    **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.   Domino's, Inc., Domino's Pizza, Inc.

4.    **Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

| | |
|---|---|
| Stephen S. Korniczky<br>Rebecca Roberts<br>Sheppard Mullin Richter & Hampton LLP<br>12275 E1 Camino Real, Suite 200<br>San Diego, CA  92130-2006 | William E. Thomson, Jr.<br>Brooks Kushman P.C.<br>1000 Town Center, 22nd Floor<br>Southfield, MI  48075 |

5.    **Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir.R.47.5(b).

The Court is aware of the cases from which the consolidated appeals arise.

There are no cases that will be directly affected by this Court's decision in the pending appeal as this issue deals strictly with an exceptional case determination and award of attorneys' fees to Domino's. Previous appeals before this Court that may affect this Court's decision include:

- *Apple Inc. et. al. v. Ameranth, Inc.*, Nos. 2015-1703, 2015-1704, 2015-1792, 2015-1793, decided November 29, 2016, before Circuit Judges Reyna, Chen and Stoll (842 F.3d 1229 (Fed. Cir. 2016)).

- *Ameranth, Inc. v. Domino's Pizza, LLC*, Nos. 2019-1141 and 2019-1144, decided November 1, 2019, before Circuit Judges Prost, Plager and Dyk (792 Fed. Appx. 780 (Fed. Cir. 2019)).

- *Ameranth, Inc. v. Olo, Inc.*, No. 2021-1211, decided October 8, 2021, before Circuit Judges Moore, Prost and Taranto (2021 WL 4699180 (Fed. Cir. 2021)(per curiam)).

6.    Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6). ___None._____

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................i

TABLE OF AUTHORITIES....................................................vii

STATEMENT OF RELATED CASES ......................................1

STATEMENT OF THE ISSUE................................................2

STATEMENT OF THE CASE ..................................................3

    A.   This appeal arises from Ameranth's lengthy, widespread, failed enforcement of four related patents.........3

    B.   The district court awarded Domino's its attorneys' fees based on the totality of the circumstances, including Ameranth's many weak litigating positions and the manner in which Ameranth litigated the case ......................7

          1.   The totality of circumstances included weak infringement and/or validity positions on all four asserted patents............................................................7

          2.   The totality of circumstances included a "scattershot approach," shifting positions on key claim constructions, and "pattern of continued bullishness in the face of numerous defeats" ...............9

    C.   This appeal follows multiple notices of appeal and an extension of time granted by the district court ....................11

SUMMARY OF THE ARGUMENT .........................................12

ARGUMENT ...........................................................................16

    A.   Standard of review ................................................16

    B.   The district court faithfully followed the *Octane* approach and its thorough analysis of the totality of circumstances supports its exceptional case finding............17

C.     The district court's multiple findings that Ameranth's litigating position was weak support its conclusion that this case stands out from others and is therefore exceptional ............................................................................ 18

    1.     The substantive strength of Ameranth's positions on the '850, '325 and '733 Patents was weak .............. 18

    2.     The substantive strength of Ameranth's position on infringement for the '077 Patent was weak ............ 21

    3.     The substantive strength of Ameranth's position on validity for the '077 Patent was weak ..................... 25

D.     The district court's many findings that Ameranth litigated in an unreasonable manner further support its conclusion that this case stands out from others and is therefore exceptional ............................................................ 26

    1.     Ameranth's "scattershot approach" of 43 patent infringement cases, covering four patents with no success, "stands out from other[]" cases ..................... 27

    2.     Ameranth taking inconsistent positions on two key claim terms "stands out from other[]" litigants who take a principled approach ........................................... 29

    3.     Ameranth's "pattern of continued bullishness in the face of numerous defeats" also "stands out from others" ........................................................................ 31

E.     Ameranth's brief fails on its face because Ameranth addresses only a small portion of the totality of the circumstances on which the district court relied ................. 33

F.     Ameranth's arguments misapply the law and misstate the record and the district court's analysis ........................... 35

1. Ameranth's contention that it had a "reasonable" basis for asserting the '077 Patent applies the wrong legal standard and does not impact the district court's totality of the circumstances analysis .......................................................................35

2. The district court expressly rejected Ameranth's attempt to blame Domino's ...........................................38

3. Ameranth's arguments about the "lack of clarity" on "§ 101 eligibility" ignore the fact that Ameranth's patents claim the type of invention this Court has routinely held unpatentable ................39

4. Ameranth's arguments regarding the *Menusoft* and Pizza Hut settlements misstate the district court's findings ..............................................................41

5. Ameranth's arguments about the substantive strength of its case do not address the district court's findings ..............................................................43

G. The district court properly awarded Domino's all its fees ...........................................................................46

1. There is no reason to apportion fees based on the substantive strength of Ameranth's litigation position since all of it was weak ...................................47

2. Ameranth's arguments for parsing fees based on the district court's manner of litigation findings fail ...............................................................................49

CONCLUSION AND RELIEF SOUGHT ...............................................51

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ................................................................52

# TABLE OF AUTHORITIES

## Cases

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ....................................... 32

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016) ....................................... 40

*Ameranth, Inc. v. Domino's Pizza, LLC*,
  792 Fed. Appx. 780 (Fed. Cir. 2019) ..................................... passim

*Ameranth, Inc. v. Olo, Inc.*, No. 20-518-LPS,
  2020 WL 604392 (D. Del. October 13, 2020),
  *aff'd* 2021 WL 4699180 (Fed. Cir. October 8, 2021) ........................ 3

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016) .............................................. passim

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  851 F.3d 1302 (Fed. Cir. 2017) .............................................. passim

*Blackbird Tech LLC v. Health In Motion LLC*,
  944 F.3d 910 (Fed. Cir 2019) ....................................... 18, 26, 39, 47

*Bywaters v. United States*,
  670 F.3d 1221 (Fed. Cir. 2012) ....................................... 47

*Electronic Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  963 F.3d 1371 (Fed. Cir. 2020) ....................................... 25

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
  15 F.4th 1378 (Fed. Cir. 2021) ................................................. 26, 31

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  572 U.S. 559, 134 S. Ct. 1744, 188 L.Ed.2d 829 (2014) ......... passim

vii

*Homeland Housewares, LLC v. Sorensen Rsch.*,
    581 F.App'x 877 (Fed. Cir. 2014) ................................................... 47

*In re Rembrandt Techs. LP Pat. Litig.*,
    899 F.3d 1254 (Fed. Cir. 2018) ...................................................... 49

*Innovation Scis., LLC v. Amazon.com, Inc.*,
    842 F.App'x 555 (Fed. Cir 2021) ................................................... 25

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) ..................................................... 40

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017) .......................................... 18, 40, 50

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
    811 F.3d 479 (Fed. Cir. 2016) ....................................................... 25

*Microsoft Corp. v. GeoTag, Inc.*,
    817 F.3d 1305 (Fed. Cir. 2016) ................................................ 26, 44

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
    726 F.3d 1359 (Fed. Cir. 2013) ..................................................... 48

*Pierce v. Underwood*,
    487 U.S. 552, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988) ........... 16, 39

*Raniere v. Microsoft Corp.*,
    887 F.3d 1298 (Fed. Cir. 2018) ..................................................... 26

*SFA Sys., LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015) ..................................................... 36

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    745 F.3d 513 (Fed. Cir. 2014) ....................................................... 50

*Thermolife Int'l LLC v. GNC Corp.*,
    922 F.3d 1347 (Fed. Cir. 2019) ................................................ 18, 24

## Statutes

35 U.S.C. § 101................................................................... passim

35 U.S.C. § 103............................................................... 19, 25

35 U.S.C. § 285.............................................................. 2, 12

## Rules

Fed. R. Civ. P. 1 .................................................................. 9, 28

## STATEMENT OF RELATED CASES

There are no related cases that will be directly affected by this Court's decision in the pending appeal as this issue deals strictly with an exceptional case determination and award of attorneys' fees to Domino's. Previous appeals before this Court that may affect this Court's decision include:

*Apple Inc. et. al. v. Ameranth, Inc.*, Nos. 2015-1703, 2015-1704, 2015-1792, 2015-1793, decided November 29, 2016, before Circuit Judges Reyna, Chen and Stoll (842 F.3d 1229 (Fed. Cir. 2016));

*Ameranth, Inc. v. Domino's Pizza, LLC*, Nos. 2019-1141 and 2019-1144, decided November 1, 2019, before Circuit Judges Prost, Plager and Dyk (792 Fed. Appx. 780 (Fed. Cir. 2019)).

*Ameranth, Inc. v. Olo, Inc.*, No. 2021-1211, decided October 8, 2021, before Circuit Judges Moore, Prost and Taranto (2021 WL 4699180 (Fed. Cir. 2021) (per curiam)).

## STATEMENT OF THE ISSUE

The district court oversaw Ameranth's "scattershot approach" to 43 patent infringement lawsuits over 10 years, which included weak positions on infringement and validity for four Ameranth patents, and a "pattern of continued bullishness in the face of numerous defeats."  Did the district court abuse its discretion when it considered the totality of the circumstances it experienced over those 10 years and 43 lawsuits, and concluded that this case "stands out from others," is therefore "exceptional" under 35 U.S.C. § 285, and warrants awarding Domino's attorneys' fees for its part in defending against Ameranth's many failed patent assertions?

Domino's answers:  The district court did not abuse its discretion in finding this case exceptional and awarding Domino's its fees.

## STATEMENT OF THE CASE

**A.    This appeal arises from Ameranth's lengthy, widespread, failed enforcement of four related patents**

This appeal and its companions arise from Ameranth's long, broad, extremely unsuccessful campaign asserting a family of patents, *i.e.*, U.S. Patent Nos. 6,384,850 ("the '850 Patent"), 6,871,325 ("the '325 Patent"), 6,982,733 ("the '733 Patent"), and 8,146,077 ("the '077 Patent")[1]. Ameranth has been filing lawsuits on these patents for more than 15 years, against dozens of defendants in myriad industries, and has essentially won nothing in those lawsuits.

Ameranth started its campaign in 2007 in the Eastern District of Texas, asserting the '850, '325 and '733 Patents in *Ameranth v. Menusoft Systems Corp.*, Case No. 07-cv-0271. Appx3; (Blue Br. 10.) In 2010, the *Menusoft* jury found all asserted claims not infringed and invalid as anticipated and obvious. Appx3; Appx492-501; (Blue Br. 10.) Ameranth was able to revive these claims but not on the merits. After a settlement

---

[1] Ameranth later asserted a fifth patent in the same family against Olo, Inc., which was also held patent ineligible under 35 U.S.C. § 101 by the District of Delaware, a finding this Court affirmed without opinion. *Ameranth, Inc. v. Olo, Inc.*, No. 20-518-LPS, 2020 WL 604392 at *7-10 (D. Del. October 13, 2020), *aff'd* 2021 WL 4699180 (Fed. Cir. October 8, 2021).

on appeal, the *Menusoft* court granted a joint motion to vacate the invalidity verdicts. Appx3-4.

Concerning the instant appeal, "[t]his case is one of forty-three patent infringement cases" (the "California Lawsuits") filed by Ameranth and adjudicated by Hon. Dana Sabraw, Chief Judge of the United States District Court for the Southern District of California. Ameranth began the 43 California Lawsuits in 2011, when it asserted the '850 and '325 Patents against numerous defendants in a variety of industries. Appx2-3. After the *Menusoft* vacatur, Ameranth began filing additional California Lawsuits. Appx4. Ameranth filed additional cases asserting the '077 Patent against some then-existing defendants, filed other cases against new defendants asserting the '850, '325 and '077 Patents, and filed another series of cases asserting the '733 Patent, either alone or in combination with the previously asserted patents. Appx4. All the California Lawsuits were consolidated for pre-trial proceedings. Appx330-334.

In October 2013, the district court stayed the California Lawsuits pending Covered Business Method ("CBM") proceedings for the '850, '325 and '733 Patents before the Patent Trial and Appeal Board ("PTAB").

Appx4.  In the initial CBMs, the PTAB found only certain challenged claims unpatentable under 35 U.S.C. § 101.  Then this Court affirmed those determinations and found *all other* instituted claims of the '850, '325 and '733 Patents unpatentable under § 101 – which included the same claims previously invalidated in *Menusoft*.  Appx4-5; *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1245 (Fed. Cir. 2016) (hereinafter "*Apple*"); Appx492-501.  In additional CBM proceedings for the '850 and '325 Patents, the PTAB invalidated the remaining asserted claims under 35 U.S.C. § 102 and § 103.  Ameranth originally appealed those decisions but dropped the appeals.  Appx3460-3513; Appx3514-3568.

After these CBM proceedings and this Court's *Apple* decision, only the '077 Patent remained.  Appx5.  After resolving a patent interference in Ameranth's favor (Appx5), the district court limited each defendant in the California Lawsuits to a single summary judgment motion.  Appx11397.  Pizza Hut had already raised patent ineligibility under 35 U.S.C. § 101, so Domino's raised noninfringement.  Appx8594-8596; Appx11398-11405.  After Pizza Hut settled, Domino's asked to join Pizza Hut's motion, since it could be dispositive for all defendants.  Appx9813-9825.  Ameranth "strongly oppos[ed]".  Appx9828.  The district court

granted Domino's motion to join the Pizza Hut motion (Appx9837-9838) and then, after thorough review, granted the motion finding the '077 claims unpatentable. Appx10929-10942.

After Ameranth appealed the summary judgment, this Court affirmed invalidity for all claims asserted against Domino's. *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 Fed. Appx. 780, 788 (Fed. Cir. 2019) (hereinafter "*Domino's*"). The Court vacated invalidity solely for dependent claims 4 and 5, finding the district court had lacked jurisdiction because those claims were not asserted against Domino's. *Id.*

On remand, even after this Court's previous decisions in *Apple* and *Domino's*, Ameranth continued to pursue additional '077 Patent claims not asserted against Domino's, in the context of other California Lawsuits where they were asserted. Appx11505-11507. The district court again granted summary judgment of invalidity under 35 U.S.C. § 101, finding the claims plainly only added field of use limitations to the previously invalidated '077 claims. Appx11243-11249. That summary judgment decision is the subject of the many companion appeals.

**B. The district court awarded Domino's its attorneys' fees based on the totality of the circumstances, including Ameranth's many weak litigating positions and the manner in which Ameranth litigated the case**

After this Court affirmed invalidity for all claims asserted against Domino's, Domino's renewed an earlier filed motion for attorneys' fees. Appx681-688. As discussed below, Judge Sabraw followed the Supreme Court's directive in *Octane* and made detailed findings on "the substantive strength of [Ameranth's] litigating position" and the "manner in which the case was litigated." Appx7-12; Appx12-21; *see Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554, 134 S. Ct. 1749, 188 L.Ed.2d 816 (2014).

**1. The totality of circumstances included weak infringement and/or validity positions on all four asserted patents**

In examining the substantive strength of Ameranth's litigation position, Judge Sabraw found it weak on many grounds. Appx7-12. First, he found that "Ameranth's substantive position on the '850, '325 and '733 Patents was weak from the outset." Appx8, Appx17. He also cited several objective facts that support his finding. The court explained that before filing the California Lawsuits, Ameranth had no success in prior efforts to enforce those patents. Appx3-4. Further, when some of

7

the defendants in the instant appeals challenged these patents, the PTAB and/or this Court held *all* asserted claims unpatentable. Appx4-5 (citing *Apple*, 842 F.3d at 1245).

The district court also found that Ameranth's positions on the '077 Patent were weak for both infringement and invalidity. Appx8-10, Appx10-12, Appx17-18. Concerning infringement, the court found that Ameranth needed to take inconsistent claim construction positions on a key term (synchronization) to support its infringement case against Domino's. Appx9-10. Specifically, the court found that Ameranth asserted a narrow view of synchronization to avoid invalidity in the CBMs and in an interference (the *IPDEV* case, Appx5), and then a broad view of synchronization for infringement. Appx10. Significantly, the court found that "[a]pplying Ameranth's original understanding of 'synchronous,' . . . Ameranth's position on infringement of the '077 Patent was weak" from the start. Appx10.

The district court also found that Ameranth's position on validity of the '077 Patent was weak. Appx10-12, Appx17-18. Here again the objective facts support that finding—this Court held all asserted claims against Domino's unpatentable under 35 U.S.C. § 101. *Domino's,* 792

Fed. Appx. at 788.  The district court also relied on this Court's prior *Apple* decision on the related patents, and on Ameranth resisting Domino's request to have the district court hear Pizza Hut's motion for summary judgment.  Appx11-12, Appx20; *Apple,* 842 F.3d at 1245.

### 2.     The totality of circumstances included a "scattershot approach," shifting positions on key claim constructions, and "pattern of continued bullishness in the face of numerous defeats"

Judge Sabraw also analyzed and made numerous findings on the "manner of litigation," *i.e.*, the second *Octane* consideration.  Appx12-21.

Judge Sabraw began his opinion by explaining the context of the instant case against Domino's: "This case is one of forty-three patent infringement cases that Ameranth has filed in this Court."  Appx2.  The district court recognized that "Ameranth was within its rights to file suit against all of these Defendants," but noted that Ameranth's "decision to cast such a wide net certainly prolonged the litigation in contravention" of the Federal Rules' goal of "'just, speedy, and inexpensive determination of every action and proceeding.'"  Appx19-20 (*quoting* Fed. R. Civ. P. 1).

Judge Sabraw also found that Ameranth "took inconsistent [claim construction] positions" on two key terms "depending on whether the issue was infringement or validity."  Appx13.  First, "Ameranth shifted

its long-held position on a central element of its invention, namely that the system be 'synchronous' or 'synchronized,' to avoid a finding that the Domino's Defendants did not infringe." Appx18; Appx9. Second, "Ameranth also shifted its position on another central element, the 'PHMC/PHC [*i.e.*, programmable handheld menu configuration].'" Appx18, Appx13.

Finally, Judge Sabraw stepped back and found that "Ameranth's overall litigation conduct" was "also revealing." Appx20-21. The district court found that Ameranth "had limited success before the one jury to consider its Patents, as well with the PTAB, the Federal Circuit and this Court," yet "those losses" had no "deterrent effect on Ameranth's behavior." Appx20. "On the contrary," the court found, Ameranth showed a "pattern of continued bullishness in the face of numerous defeats." Appx20-21.

Based on the "pattern" of conduct Judge Sabraw observed over 10+ years, and "the totality of the circumstances" he outlined in detail, Judge Sabraw found "this is an exceptional case under § 285." Appx21. After further briefing on the amount of fees, the court awarded Domino's $2,786,185.29 in fees and costs. Appx31.

**C.    This appeal follows multiple notices of appeal and an extension of time granted by the district court**

Ameranth filed its first notice of appeal on November 24, 2021. Appx2528-2531.  This Court ruled that notice of appeal was late but remanded to let the district court consider a then-undecided request to extend Ameranth's appeal deadline.  Dkt. No. 13.  On remand, the district court granted Ameranth's request and Ameranth filed a second notice of appeal, which led to this Appeal No. 2022-2223. Appx2681-2684.   On October 17, 2022, this Court consolidated this appeal with the companion appeals, which concern the district court's summary judgment on the two '077 dependent claims this Court remanded (for lack of jurisdiction) in 2019.  Dkt. No. 24; *Domino's*, 792 Fed. Appx. at 788.

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion in finding the present case "exceptional" under § 285.  Judge Sabraw presided over 43 failed lawsuits for more than ten years. He personally decided nearly all the issues raised by the parties in the case, held hearings on various motions, and conducted numerous status conferences. He is, by far, in the best position to determine whether this case "stands out from the others" with respect to the substantive strength of the parties' legal positions and the manner in which the case was litigated.  Judge Sabraw made detailed findings on those issues and found this case exceptional.  Given the long and broad history of this case, the abuse of discretion standard of review is especially appropriate. Ameranth's attacks on Judge Sabraw's exceptionality findings are without merit and certainly do not meet the abuse of discretion standard.

This Court has affirmed an exceptional case finding where the substantive strength of a party's position on a single issue was weak. Here, Ameranth asserted four patents and the district court found all were weak, *i.e.*:

- "Ameranth's substantive position on the '850, '325 and '733 Patents was weak from the outset" (Appx8; Appx17);

12

- "Ameranth's position on infringement of the '077 Patent was weak" (Appx10);

- "Ameranth's litigation position on the validity of the '077 Patent was especially weak" (Appx11-12).

These findings have significant support. Among other things, this Court and the PTAB held invalid all claims of the '850, '325, '733 and '077 Patents asserted against Domino's. Regarding Ameranth's weak infringement case, the district court found publicly available documents show that Domino's clearly did not infringe under Ameranth's original construction of the key term "synchronous." Appx8; Appx10; Appx17.

The district court also made extensive findings on the other key *Octane* factor, the manner in which Ameranth litigated the case. Here Ameranth's litigation conduct stood out from others from beginning to end. First, Ameranth filed 43 California Lawsuits in a "scattershot approach" that "prolonged the litigation in contravention" of the Federal Rules. Appx19-20. During the lawsuit, Ameranth took inconsistent positions on two key claim limitations – the "synchronization" limitation and the "PHMC/PHC" limitation. Appx13, Appx18. Finally, even after Ameranth suffered losses before the one jury to consider its patents, the

13

PTAB, and this Court, those losses had no "deterrent effect on Ameranth's behavior." Appx20. Instead, Ameranth showed a "pattern of continued bullishness in the face of numerous defeats." Appx21.

Ameranth's arguments misstate the district court's analysis and misapply the law. For example, Ameranth argues that the *Menusoft* vacatur is the "fulcrum," "linchpin" and "cornerstone" of the district court's decision (Blue Br. 1, 22, 40-41); in fact, the court merely discussed the *Menusoft* decision and vacatur as part of Ameranth's history of failed litigation coupled with actions to avoid its defeats. Appx3; Appx 8. Ameranth similarly misstates the district court's analysis when it argues that the court "anchored its fee award on the faulty premise that 'no reasonable patent litigant would have believed the claims in the ['077] patent were viable.'" (Blue Br. 23.) The court made no such finding and in fact found that *all four* of Ameranth's asserted patents were weak.

Ameranth misapplies the law when it argues that the issue is whether Ameranth's beliefs were "reasonable, as opposed to 'hopeless' or 'baseless.'" (Blue Br. 27.) On the contrary, *Octane* expressly rejected the "objectively baseless" and "bad faith" requirements, and instead asks whether the case "stands out from others with respect to the substantive

14

strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane*, 572 U.S. at 554-555. Again, the district court made extensive findings on both *Octane* factors.

Ameranth again ignores the district court's broad-based findings when it argues against the full fee award. For example, Ameranth tries to compartmentalize the district court's findings and argue that the court did not link fees to Ameranth's misconduct. Again, Ameranth's arguments ignore the fact the district court found that Ameranth's substantive position was weak on *all four* asserted patents, and that Ameranth's manner of litigation throughout the entire case stood out from others in many ways.

This case, as much as any other, shows why the highly deferential standard of review required by *Highmark* applies. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564, 134 S. Ct. 1744, 188 L.Ed.2d 829 (2014). After 10+ years adjudicating 43 California Lawsuits, the district court did not abuse its discretion in deciding that this case is exceptional, and that Domino's is entitled to $2,786,185.29 in fees and costs.

# ARGUMENT

## A.    Standard of review

Following the Supreme Court's analysis in *Highmark*, this Court addressed the standard of review for an exceptional case finding in *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1305-1306 (Fed. Cir. 2017).  First, as the Supreme Court held in *Highmark*, "an appellate court should review all aspects of a district court's § 285 determination for abuse of discretion." *Id.* (quoting *Highmark*, 134 S.Ct. at 1747). Second, *Bayer* explained the Supreme Court's rationale:

> "[A]s a matter of the sound administration of justice," the district court "is better positioned" to decide whether a case is exceptional, because it lives with the case over a prolonged period of time.... [T]he question is "multifarious and novel," not susceptible to "useful generalization" of the sort that *de novo* review provides, and "likely to profit from the experience that an abuse-of-discretion rule will permit to develop."

*Bayer*, 851 F.3d at 1306 (*quoting Highmark*, 134 S. Ct. at 1748–49 and *Pierce v. Underwood*, 487 U.S. 552, 559–60, 562, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988)).

The "[a]buse of discretion is a highly deferential standard of appellate review." *Bayer*, 851 F.3d at 1306. "To meet the abuse-of-discretion standard," Ameranth must show the district court

16

"made 'a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *Id.* (quoting and citing multiple cases).

**B.    The district court faithfully followed the *Octane* approach and its thorough analysis of the totality of circumstances supports its exceptional case finding**

The Supreme Court's focus on deference to the "better positioned" district court "because it lives with the case over a prolonged period of time" was especially prophetic in the instant case. *Highmark*, 134 S. Ct. at 1748–49.  Judge Sabraw had a front row seat to Ameranth's 10+ years of failed litigation in the 43 California Lawsuits.  When assessing the totality of the circumstances to determine whether this case "stands out from others," Judge Sabraw drew on that extensive experience when he applied the exceptional case analysis as reframed by the Supreme Court. In *Octane*, the Court rejected that bad faith standard and held "that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane,* 572 U.S. at 554.  Judge Sabraw faithfully followed the *Octane* approach, made detailed findings

17

on both *Octane* factors, and did not abuse his discretion in concluding that this case is exceptional.

## C. The district court's multiple findings that Ameranth's litigating position was weak support its conclusion that this case stands out from others and is therefore exceptional

Many cases have affirmed fees based on findings that "the substantive strength of a party's litigating position" was weak. *Bayer* 851 F.3d at 1303, 1307; *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.,* 876 F.3d 1372, 1377 (Fed. Cir. 2017) (weak merits on patent eligibility under 35 U.S.C. § 101); *Thermolife Int'l LLC v. GNC Corp.,* 922 F.3d 1347, 1356-57 (Fed. Cir. 2019) (weak merits on infringement); *Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 914-16 (Fed. Cir 2019) (weak merits on infringement).  Here, the district court found that Ameranth's position was weak on not just one patent, but four related patents.  Further, he found it weak on both invalidity and infringement.

### 1. The substantive strength of Ameranth's positions on the '850, '325 and '733 Patents was weak

Judge Sabraw's first "substantive strength" finding was that "Ameranth's substantive position on the '850, '325 and '733 Patents was weak from the outset," (Appx8; Appx17) and the objective facts prove the

district court correct. First, when some Ameranth defendants challenged these patents through CBMs before the PTAB, all challenged claims of each patent, except a few claims from the '733 Patent, were held unpatentable under § 101 or § 103. *Apple*, 842 F.3d at 1235-36 (§ 101 all three patents); Appx3461, Appx3512 (§ 103, '850 Patent); Appx3515, Appx3566 (§ 103, '325 Patent). Ameranth did not appeal the unpatentability findings under § 103. On appeal of the § 101 determination, this Court found *all* instituted claims of the '850, '325 and '733 Patents unpatentable under § 101. Appx4-5; *Apple*, 842 F.3d at 1245. Finally, the district court found that the invalidity verdicts from the *Menusoft* case "indicated a weakness in Ameranth's position" and that Ameranth's request to vacate those verdicts "could be construed as an acknowledgement of that weakness." Appx8.

Ameranth does not even attempt to show the district court's weakness findings on the '850, '325 and '733 Patents are clearly erroneous. Instead, Ameranth addresses two strawman arguments— points the district court did not make.

First, Ameranth asserts incorrectly that the district court found the *Menusoft* verdict and vacatur undermined *the '077 Patent* claims. (Blue

19

Br. 1-2, 41, 43-44.)  But the district court did *not* find that the *Menusoft* verdict and vacatur undermined *the '077 Patent* claims.  Rather, it found that "Ameranth's substantive position on the '850, '325 and '733 Patents was weak from the outset" and that "the jury's findings in *Menusoft* should have alerted Ameranth to potential weaknesses in its case on *those three Patents*."  Appx17 (emphasis added).  The district court made separate findings on the weakness of the '077 Patent, discussed below.

Second, Ameranth tries to defend the vacatur (Blue Br. 44-45), but the district court did not find the *vacatur* was wrong.  Rather, the court found the *loss coupled with the vacatur* "indicated a weakness" and Ameranth's "acknowledgement of that weakness." Appx8.  The point is that Ameranth lost convincingly at trial and did not prevail on appeal.  So, despite the vacatur, the only substantive merits decision is a convincing loss on all asserted claims.  That certainly does not suggest strength in '850, '325 and '733 Patents, and the district court was within its discretion in finding the unsuccessful verdict coupled with no reversal on appeal suggests weakness.

The district court did not abuse its discretion in finding that "Ameranth's substantive position on the '850, '325 and '733 Patents was weak from the outset." Appx8; Appx17.

### 2. The substantive strength of Ameranth's position on infringement for the '077 Patent was weak

Continuing his analysis of *Octane's* "substantive strength" factor, Judge Sabraw also found that "Ameranth's position on infringement of the '077 Patent was weak." Appx10. That finding was based in part on the court's conclusion that "Ameranth took inconsistent positions on the meaning of 'synchronous.'" Appx9. Ameranth's inconsistent positions on the meaning of "synchronous" (Appx689-691) were critical because all the '077 Patent claims are directed to a "real-time synchronous communications system" that focus heavily on synchronizing information to maintain a "single truth" of data among all connected devices in a system. As Ameranth itself described the claimed '077 invention to the PTAB in successfully opposing a CBM petition:

> The patented invention uniquely solved these challenges with a technological software system solution in which a central/master database maintains ***"database equilibrium"*** and contains a ***"single truth" of hospitality data***–for example, an up-to date restaurant menu with current items and pricing–and through the software modules described in the patents … ***causes that same substantive menu data to be*** correctly formatted, sequenced, displayed and ***updated***

21

> ***across a variety of connected devices***–including but not
> limited to different types of wireless handheld computing
> devices, such as smart phones.

Appx4453-4546 at Appx4479-4480 (emphasis added).

Indeed, Ameranth's principal brief in the 2019 merits appeal repeatedly used the word synchronous, synchronized, or synchronizing to describe the invention of the '077 Patent. *See, e.g.*, Case No. 19-1141, Doc 16, at brief pages 5-6, 17, 22, 26-29, 35, 40. Examples include:

> [T]he claims of the '077 patent are directed to improved
> synchronization systems and methods for integrating non-PC
> standard graphical formats, display sizes and/or applications.

*Id*. at brief page 5.

> Prior to Ameranth's inventions, it was not possible to
> automatically generate, configure, and synchronize the
> menus for multiple disparate handheld devices with different
> display sizes, a backoffice server and Web pages in real time.

*Id*. at brief page 29.

The district court found that Ameranth needed to take inconsistent claim construction positions on synchronization to support its infringement case against Domino's. Appx9-10. In particular, "[d]uring claim construction," and when defending an invalidity challenge in the *IPDEV* case, Ameranth asserted "that ***'synchronous' be construed*** as '***made***, or configured to make, ***consistent***.'" Appx9 (emphasis added).

Ameranth asserted in *IPDEV* that "[s]ubstantively everything on the master menu has to have a corresponding element … on the handheld." *Id.*

In opposing summary judgment of noninfringement, however, "Ameranth changed tack" and stated that the "***claims do not require*** that there … be 'overall ***consistency***.'" Appx9 (emphasis added). The court further found that "[a]pplying Ameranth's original understanding of 'synchronous,' . . . Ameranth's position on infringement of the '077 Patent was weak." Appx10. Indeed, a cursory review of Domino's publicly available online ordering system demonstrated it is ***not*** consistent, because the online menu varies by store. Appx11409-11414. Thus, those ordering from different stores via handheld devices see different – not synchronous – menus. Appx10; Appx17. As such, Domino's system is not "synchronous" under Ameranth's original construction of the term, which Ameranth had asserted in its earlier *Menusoft* litigation. *Id.*

Ameranth does not dispute the district court's finding that public documents show Domino's system is ***not*** consistent. Ameranth instead argues, like it did to the district court, that requiring complete consistency in "nonsensical." (Blue Br. 52.) But complete consistency is

exactly what Ameranth argued was required when it was trying to preserve the validity of the '077 claims. Appx9-10. Examples not quoted by the district court include:

> So every entree that is in the master menu … also has to appear on the programmed handheld. That is the synchronization.

Appx11440.

> [I]f you make a change, if you update a menu item, if you remove one, if you add one, it gets promulgated throughout the entire system.

Appx11444.

Ameranth also argues that the "district court did not find that Ameranth's position was baseless or brought in bad faith." (Blue Br. 49.) As discussed in Section F.1. and F.5. below, "bad faith" is not required. *Octane,* 572 U.S. at 554. Ameranth also argues the district court should not have addressed the weakness of its infringement case because "[u]nadjudicated issues are irrelevant for §285 determinations." (Blue Br. 50-51.) On the contrary, *Octane* expressly instructs courts to evaluate "the substantive strength of a party's litigating position." *Octane,* 572 U.S. at 554. And this Court has endorsed the district court considering merits issues not fully adjudicated. *Thermolife*, 922 F.3d at 1356-57

("[W]e held that a district court did not abuse its discretion in finding the case exceptional because '[t]he allegations of infringement were ill-supported,' even though non-infringement had not been adjudicated before the asserted claims were invalidated") (quoting *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 481–83 (Fed. Cir. 2016)).

The district court did not abuse its discretion finding that "Ameranth's position on infringement of the '077 Patent was weak." Appx10; Appx17.

### 3.    The substantive strength of Ameranth's position on validity for the '077 Patent was weak

Finally, Judge Sabraw also found that Ameranth's position on validity for the '077 Patent was weak. Appx10-12; Appx17-18. Again, the objective evidence supports the district court's finding. Indeed, the PTAB and/or this Court's *Apple* decision held all asserted claims of three patents in the '077 patent family (the '850, '325 and '733 Patents) unpatentable under § 101 and § 103. *See, e.g.*, *Innovation Scis., LLC v. Amazon.com, Inc.*, 842 F.App'x 555, 557 (Fed. Cir 2021) (affirmance of § 101 invalidity for other patent family members supports the finding of weak from inception); *Electronic Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1379 (Fed. Cir. 2020) (earlier

decision found § 101 invalidity for claims of patents in the same family and with the same specification as the asserted patent).

Finally, Ameranth fails to directly address the weakness of its '077 Patent invalidity position, and instead tries to reframe the issue to whether Ameranth acted in bad faith. (Blue Br. 49.) As discussed more fully below in Sections F.1. and F.5., this distorts the issue with an improper pre-*Octane* analysis. *Octane* says look at the strength of Ameranth's positions; bad faith is not required. *Octane,* 572 U.S. at 554-55.

The district court did not abuse its discretion in finding that Ameranth's position on validity for the '077 Patent was weak. Appx10-12; Appx17-18.

**D.   The district court's many findings that Ameranth litigated in an unreasonable manner further support its conclusion that this case stands out from others and is therefore exceptional**

Many cases have affirmed fees based on the litigant's "manner of litigation," which is the second *Octane* consideration. *Bayer,* 851 F.3d at 1307; *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1308-09 (Fed. Cir. 2018); *Blackbird*, 944 F.3d at 916-17; *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1383-84 (Fed. Cir. 2021). As discussed above, Judge

26

Sabraw made numerous findings on this point, including Ameranth's (1) overall approach (a "scattershot" of 43 lawsuits) (Appx2 and Appx19-20); (2) "inconsistent positions" on key claim construction issues "depending on whether the issue was infringement or validity" (Appx9, Appx13 and Appx18) and (3) a "pattern of continued bullishness in the face of numerous defeats" (Appx20-21). All these findings are part of the "totality of circumstances" that support the district court's conclusion that this case stands out from others and therefore is exceptional.

### 1. Ameranth's "scattershot approach" of 43 patent infringement cases, covering four patents with no success, "stands out from other[]" cases

On the first point, Judge Sabraw began his opinion by explaining the context of the instant case against Domino's, *i.e.*: "This case is one of forty-three patent infringement cases that Ameranth has filed in this Court." Appx2. The district court expressly recognized that "Ameranth was within its rights to file suit against all of these Defendants." However, the court also found that Ameranth's "scattershot approach made for unwieldy litigation, and created procedural and logistical challenges well beyond the ordinary patent case." Appx19. Specifically, Ameranth's "scattershot" manner of litigating "resulted in repetitive, duplicative, and unnecessary motion work on behalf of all parties and the

Court." *Id.* Further, "given the diverse nature of Defendants' business operations, each Defendant often had to file its own pleadings or a supplement to the joint pleading to make its individual position known." *Id.* Thus, Ameranth's "decision to cast such a wide net certainly prolonged the litigation in contravention" of the Federal Rules' goal of "'just, speedy, and inexpensive determination of every action and proceeding.'" Appx19-20 (*quoting* Fed. R. Civ. P. 1).

Ameranth essentially ignores Judge Sabraw's entire analysis with a one-page response that asserts "it only takes one claim of one patent to find infringement." (Blue Br. 39-40.) Ameranth's "it only takes one claim" argument does not address its "scattershot approach" of 43 lawsuits nor the "procedural and logistical challenges" that approach created. Appx19. Indeed, throughout its brief, Ameranth treats the instant case against Domino's as if it were filed in isolation. That is obviously not true.

In short, Ameranth may have had the right to sue 43 defendants, but where Ameranth lost all those cases, the district court did not abuse its discretion in finding that Ameranth's "scattershot approach" "stands out from others." Appx2; Appx19-20. *Octane*, 572 U.S. at 554.

### 2. Ameranth taking inconsistent positions on two key claim terms "stands out from other[]" litigants who take a principled approach

The district court also found Ameranth's "manner of litigation" stood out from others because Ameranth took inconsistent positions on two key claim limitations. Appx9-10. First, as discussed in Section C.2. above, the district court correctly found that Ameranth needed to take inconsistent claim construction positions on the "synchronization" limitations to maintain an infringement case. Appx9-10. Indeed, public documents showed Domino's system is ***not*** consistent and therefore not "synchronous" under Ameranth's original construction of the term, which Ameranth had asserted in its earlier *Menusoft* litigation. Appx10; Appx17.

Second, "Ameranth also shifted its position on another central element, the 'PHMC/PHC,'" *i.e.*, programmable handheld menu configuration, "depending on whether the issue was infringement or validity." Appx18; Appx13; Appx691-693. Ameranth's brief in the *Domino's* merits appeal acknowledged the importance of the PHMC. Specifically, Ameranth argued that the "claims at issue . . . are directed to technology for an improved system with PHMC's that can be displayed on different screen sizes of handheld devices and synchronized across

29

nodes for consistency in real time. . . ."  Case No. 19-1141, Doc 16, at brief page 40.

Critically, to prove infringement in the district court, Ameranth argued that the PHMC/PHC need not contain any information about the display sizes of the handheld devices – because Domino's alleged PHMC/PHC contained no such information. Appx691-693 ("Domino's motion incorrectly argues that the PHMC/PHC must contain information about the handheld device.")  Then on appeal of the '077 Patent § 101 unpatentability finding to this Court, Ameranth argued that a "technological advantage" of the invention was that "the handheld menu configuration [PHMC] is generated <u>from</u> the master menu even though the display configurations are different and with the menu configuration taking into account the known size of the handheld display into its configurations." Case No. 19-1141, Doc 16, at brief page 13 (emphasis in original).

Yet, Ameranth makes no attempt to address its inconsistent positions on the PHMC.

Given Ameranth's emphasis on the synchronous and PHMC claim limitations, the district court did not abuse its discretion in finding that

manner of litigation "stands out from others" in part because Ameranth shifted positions on two key claim limitations in the '077 claims. *Innovation Sciences*, 842 Fed. Appx. at 557 (affirming exceptional case where the district court relied in part on the plaintiff asserting an infringement theory inconsistent with an earlier claim construction).

### 3. Ameranth's "pattern of continued bullishness in the face of numerous defeats" also "stands out from others"

Finally, the district court found that Ameranth "had limited success before the one jury to consider its Patents, as well with the PTAB, the Federal Circuit and this Court," yet "those losses" had no "deterrent effect on Ameranth's behavior." Appx20. "On the contrary," the court found, Ameranth showed a "pattern of continued bullishness in the face of numerous defeats." Appx20-21. Judge Sabraw found "Ameranth's overall litigation conduct" was "revealing." *Id.* Based on the "pattern" of conduct Judge Sabraw observed over 10+ years, and "the totality of the circumstances" he outlined in detail, Judge Sabraw found "this is an exceptional case under §285." Appx21; *see Energy Heating,* 15 F.4th at 1384 (patentee "litigated the case in an unreasonable manner by persisting in its positions").

31

Ameranth does not really dispute its "pattern of continued bullishness." Ameranth argues instead its actions were justified because "it only takes one claim of one patent to find infringement" and Ameranth allegedly had an "objectively reasonable" basis for continued enforcement of the '077 Patent. (Blue Br. 39-40.) These arguments essentially validate the district court's "continued bullishness" finding.[2] Post-*Octane*, the issue is not whether Ameranth can meet the thinnest standard for maintaining a case, but rather whether its manner of litigation "stands out from others." *Octane,* 572 U.S. at 554-55. Even if Ameranth could show that it had an "objectively reasonable" basis for maintaining "one claim of one patent," that does not address the context—a sea of lawsuits against many defendants with loss after loss along the way.

The district court did not abuse its discretion in finding that manner of litigation "stands out from others" in part because Ameranth

---

[2] The district court's finding is further validated by Ameranth continuing to assert dependent claims 4 and 5 of the '077 Patent against other defendants in the California Lawsuits, even though these claims directly depend from claims this Court found patent ineligible and add only field of use limitations. *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) ("The Supreme Court and this court have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract.")

showed a "pattern of continued bullishness in the face of numerous defeats." Appx21.

### E. Ameranth's brief fails on its face because Ameranth addresses only a small portion of the totality of the circumstances on which the district court relied

Ignoring the district court's many findings on the *Octane* factors, Ameranth tries from the beginning of its brief to reframe the court's analysis as focused on a few things. For example, on page one Ameranth argues that the "starting point and fulcrum for the district court's exceptional case determination was a settlement on appeal" in the *Menusoft* case. (Blue Br. 1.) Ameranth also calls the *Menusoft* vacatur the "linchpin" and "cornerstone" of the district court's "exceptionality decision." (Blue Br. 22, 40-41.)

Judge Sabraw did not use "fulcrum," "linchpin" nor "cornerstone" in his decision, and the *Menusoft* decision/vacatur holds no special significance in his analysis. Rather, he discusses the *Menusoft* decision and vacatur as part of Ameranth's history of failed litigation coupled with actions to avoid its defeats. Appx3; Appx 8. While he cited this as part of his analysis, it was hardly a cornerstone.

Similarly, Ameranth's assertion that "the district court anchored its fee award on the faulty premise that 'no reasonable patent litigant

would have believed the claims in the ['077] patent were viable'" is simply not true.  (Blue Br. 23) (*quoting* Appx12).  While the court did find that Ameranth's position on validity for the '077 Patent was weak (Appx10-12; Appx17-18) the court also found:

- "Ameranth's substantive position on the '850, '325 and '733 Patents was weak from the outset."  Appx8; Appx17.

- "Ameranth's position on infringement of the '077 Patent was weak."  Appx10.

Ameranth's brief depends on its reductionist view and therefore fails on its face.  Beyond mischaracterizing Judge Sabraw's analysis, Ameranth simply ignores its breadth.  Ameranth boldly asserts that Judge Sabraw did not "analyze the totality of circumstances" (Blue Br. 23), but as discussed above, that is plainly untrue.  On the contrary, as discussed more fully below, Ameranth's brief simply fails to address many of the district court's findings.

Because Ameranth fails to address all the findings underlying the Judge Sabraw's exceptional case conclusion, Ameranth does not show that he abused his discretion.

**F.    Ameranth's arguments misapply the law and misstate the record and the district court's analysis**

When Ameranth addresses portions of the district court's analysis,

Ameranth applies the wrong standards and inaccurately describes it.

**1.    Ameranth's contention that it had a "reasonable" basis for asserting the '077 Patent applies the wrong legal standard and does not impact the district court's totality of the circumstances analysis**

Ameranth opens its argument by asserting that the "correct

question is whether, in the totality of circumstances, Ameranth's belief

that it had a right to enforce its patents was reasonable, as opposed to

'hopeless' or 'baseless.'" (Blue Br. 27.) Ameranth then follows with a

series of arguments why its enforcement of the '077 Patent was

"reasonable." (Blue Br. 29-36 (*e.g.*, headings a. and b.) and 40.) These

arguments apply the wrong legal standard and fail to address the district

court's many findings supporting its exceptional case conclusion.

Ameranth's arguments on reasonableness apply the wrong legal

standard because they suggest the court needed to find Ameranth's case

was "baseless" or pursued in bad faith. (*See, e.g.*, Blue Br. 28 (heading 1:

"that Ameranth should have known that the '077 claims were invalid

from their 2012 issuance date")). But *Octane* expressly rejected the

"objectively baseless" and "bad faith" requirements. *Octane*, 572 U.S. at

35

554-555. Under *Octane*, the court asks whether the case "stands out from others with respect to the substantive strength of a party's litigating position." *Octane*, 572 U.S. at 554. The district court found that the substantive strength of Ameranth's litigating position stood out from others because it was weak on many grounds. Appx7-12.

In *Bayer*, this Court addressed and rejected a similar attempt to avoid the new *Octane* framework. There as here, the appellant Bayer argued "that the district court erred in finding the case exceptional because 'Bayer had an objectively reasonable case on the merits.'" *Bayer*, 851 F.3d at 1306. *Bayer* explained that the "Supreme Court rejected such a rigid approach in *Octane Fitness*, holding that whether a party's merits position was objectively reasonable is not dispositive under § 285." *Id*. While a district court may consider a "litigant's unreasonableness in litigating" and/or "bad faith," those are not required. *Id*.[3]

---

[3] Ameranth cites *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) to support its assertion of a "reasonable, as opposed to 'hopeless' or 'baseless'" standard, but that case imposes no such standard. (Blue Br. 27.) *SFA* merely states that a "party's position on issues of law ultimately need not be correct for them to not 'stand[ ] out,' or be found reasonable." 793 F.3d at 1348. This statement does not and cannot overturn *Octane*.

Even if the district court had found that Ameranth's '077 Patent assertions were unreasonable, Ameranth has not shown that such a finding would have been an abuse of discretion. First, Ameranth argues the claims are "presumed valid." (Blue Br. 29-30.) But the district court acknowledged the presumption of validity (Appx8) and since the presumption applies to every patent, the presumption alone does not establish reasonableness.

Ameranth also argues the PTAB did not invalidate the '077 claims and that the district court erred in crediting Domino's description of the PTAB decisions. (Blue Br. 30-31.) In this regard, Domino's asserted that "the PTAB made clear that its decision [denying institution on the 2017 Starbucks CBM for the '077 patent] was not a substantive decision" and that this Court's *Apple* decision was not mentioned. (Blue Br. 31-32, *quoting* Appx2244.) Ameranth does not dispute that the PTAB's decision was ***not*** substantive and instead merely quotes a footnote from the PTAB decision that references this Court's *Apple* decision. Yet the quoted footnote states that the *Apple* decision did not "requir[e] a finding of unpatentability for the challenged claims in this proceeding"—which is

37

entirely consistent with Domino's assertion that the PTAB's decision did not substantively address the '077 claims. Appx2244.

Further, the district court made detailed findings supporting its weakness conclusions. For the '077 Patent, for example, the court concluded that all asserted claims were invalid under 35 U.S.C. § 101 and this Court affirmed for all claims asserted against Domino's. Appx9-11; *Domino's*, 792 F.App'x at 788. The district court also cited this Court's *Apple* decision, where this Court considered three patents with the same or similar disclosure and held all claims at issue invalid under 35 U.S.C. § 101. Appx10-11.

Finally, even if Ameranth could show that its belief in the validity of the '077 claims was "reasonable," that does not undermine the district court's findings that its assertions were weak on many grounds (Appx7-12) nor its many findings on Ameranth's "manner of litigation" (Appx12-21). *Bayer*, 851 F.3d at 1306 ("district court considered factors beyond the merits—including *Bayer's* litigation conduct").

## 2. The district court expressly rejected Ameranth's attempt to blame Domino's

Ameranth next tries to blame Domino's, arguing that Domino's did not oppose lifting a stay and did not raise patent eligibility soon enough.

(Blue Br. 33.)  The stay is a red herring as Domino's had no reason to oppose restarting the case after this Court's *Apple* decision.  And the district court expressly addressed and rejected Ameranth's assertion that Domino's should have raised patent eligibility sooner: "Given all of the moving parts and parties in this litigation, any lag time in the filing of the § 101 motion cannot reasonably be construed as an indication that Defendants thought it was unclear 'that [the] claims of the '077 Patent were ineligible.'"  Appx11; *cf. Blackbird*, 944 F.3d at 916 ("The District Court was not obliged to advise Blackbird of the weaknesses in its litigation position").  This express finding on a procedural question is exactly the type of finding warranting high deference. *Highmark*, 134 S. Ct. at 1748–49 ("[A]s a matter of the sound administration of justice," the district court "is better positioned" to decide whether a case is exceptional, "because it lives with the case over a prolonged period of time.") (quoting *Pierce*, 487 U.S. at 559–60); *Bayer*, 851 F.3d at 1306.

### 3.    Ameranth's arguments about the "lack of clarity" on "§ 101 eligibility" ignore the fact that Ameranth's patents claim the type of invention this Court has routinely held unpatentable

After trying to blame Domino's, Ameranth tries to blame the Supreme Court and its decision not to review the *American Axle* case.

(Blue Br. 36-37.) *American Axle* is irrelevant, since Ameranth's claims concern software "inventions" and not a mechanical invention as in *American Axle*. This Court has put forth a broad range of precedent addressing § 101 eligibility for software inventions that gave Ameranth plenty of guidance that its '077 claims were weak on invalidity. *See, e.g., Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1293, 1294, 1300 (Fed. Cir. 2016). As in *Inventor Holdings*, the *Alice* test was easy to apply here. *Inventor Holdings,* 876 F.3d at 1379 (rejecting an argument that exceptional case was improper because § 101 was an evolving area of the law).

More specifically, this Court's *Apple* decision on three patents in the same family as the '077 Patent gave Ameranth very specific guidance that indicated the weakness of the '077 claims. *Apple*, 842 F.3d at 1241 ("the claims are directed to certain functionality … the claims are not directed to a specific improvement in the way computers operate.") Moreover, this Court in *Apple* relied in part on the specification describing "the hardware elements of the invention as 'typical' and the software programming needed as 'commonly known.'" *Id*. at 1242. These

admissions apply equally to the '077 Patent claims, since the '077 Patent has the same specification admissions. Appx312 (col. 6, ll. 54-58), Appx315 (col. 12, ll. 57-61); *Domino's*, 792 F.App'x at 787-88.

### 4. Ameranth's arguments regarding the *Menusoft* and Pizza Hut settlements misstate the district court's findings

Ameranth's arguments about the *Menusoft* and Pizza Hut settlements (Blue Br. 40-49) fail because they misstate the district court's findings. First, Ameranth argues that "the district court concluded that the *Menusoft* verdict and vacatur 'raise[d] questions about the strength" of the presumption of validity of ***the '077 claims***. (Blue Br. 41) (*quoting* Appx8 at 12-13) (emphasis added). But the cited paragraph of the district court's opinion addresses the '850, '325 and '733 Patents, not the '077 Patent. Appx8 at 6-20. Similarly, Ameranth asserts that the "district court concluded" that the *Menusoft* settlement and vacatur cast a cloud "over *all* claims of *all* other Ameranth patents." (Blue Br. 44-45) (emphasis added by Ameranth). But the district court made no such finding, and Ameranth cites nothing to support its assertion.

Ameranth tries to challenge the district court's findings by citing law that "the presumption of validity is never weakened" (Blue Br. 41-42), but the court did not say that. Rather, Ameranth had objective

proof—a verdict on the '850, '325 and '733 Patents—that showed existing evidence could overcome the presumption. Thus, although the Texas court had granted Ameranth's vacatur request, "the jury's findings in *Menusoft* should have alerted Ameranth to potential weaknesses in its case on those three Patents." Appx17.

Ameranth also misstates the district court's consideration of the Pizza Hut settlement and subsequent events. Ameranth asserts: "Devoid of record support is the district court's statement that Ameranth reached a settlement with Pizza Hut 'pending dismissal.'" (Blue Br. 46) (citing Appx5, Appx20). The district court did not link "pending dismissal" with the Pizza Hut settlement but instead with a Domino's motion after the settlement: "*Pending dismissal* of Ameranth's case against the Pizza Hut Defendants, *the Domino's Defendants filed an ex parte motion* to file a late joinder in Pizza Hut's § 101 motion, which the Court granted over Ameranth's objection." Appx5 (emphasis added).

Ameranth further misstates the district court's analysis when it asserts the court found the "timing" of the settlement "troubling." (Blue Br. 46.) In fact, the court focused on Ameranth's attempt to use the settlement to avoid a decision: "the timing of the settlement, *and*

42

*Ameranth's attempt thereafter to avoid a prompt ruling on the § 101 issue*," was "troubling." Appx20 (emphasis added). Similarly, Ameranth says the "the record provides no support for the district court's treatment of the Pizza Hut settlement as 'nuisance value'"—yet the district court never used those words, let alone linked them to the Pizza Hut settlement.

Finally, Ameranth tries to distinguish itself from another case (*Kindred*) that the district court found had similar facts. Appx12. Ameranth's analysis here confirms its desire to relitigate the district court's decision *de novo*. But that is not the standard. Nor does this case turn on the fact-intensive question of just how similar it is to the *Kindred* case. Rather, the question is whether the district court abused its discretion when, after overseeing this case for 10+ years, it found this case exceptional after making detailed fact findings on the two *Octane* factors. The answer is—the district court did not abuse its discretion in so finding.

### 5. Ameranth's arguments about the substantive strength of its case do not address the district court's findings

Ameranth addresses the strength of its infringement position on page 49, and again misstates the legal standard when it asserts that "the

focus must be on arguments that were frivolous or made in bad faith." (Blue Br. 49.)  As discussed above, the Supreme Court rejected a rigid approach in favor of a totality of the circumstances approach. *Octane*, 572 U.S. at 554-55.  While "frivolousness" and "bad faith" can be considered, they are not required.  *Bayer*, 851 F.3d at 1306.  The district court's findings of multiple weaknesses in Ameranth's case supports its conclusion that the case was so meritless that, per *Octane*, it "stands out from others." *Octane*, 572 U.S. at 554.

Ameranth next cites Domino's arguments that the district court *rejected*. (Blue Br. 50-51.)  These points are irrelevant since district court did not rely on them in finding the case exceptional. *Microsoft Corp. v. GeoTag, Inc.,* 817 F.3d 1305, 1316 (Fed. Cir. 2016) (Because "[t]he District Court did not base its [ruling on the issue,] the disputed construction did not form the basis of the District Court's [ruling], we will not address it.")  If anything, the district court's rejection of some Domino's arguments demonstrates the balance and thoroughness of its analysis.

Ameranth next argues that the district court should have rejected "Domino's contention that a claim construction argument on

'synchronization' was 'known' from the beginning of the case in 2011." (Blue Br. 52) (citing Appx8-9).    But Domino's did not argue that Ameranth's "claim construction argument" was known in 2011.    Rather, Domino's argued that Ameranth should have known Domino's did not infringe, based on Ameranth's original claim construction position that the claimed "synchronous" system must be "consistent," since publicly available documents showed Domino's system is ***not*** consistent.    Appx8. As Judge Sabraw stated, "Ameranth [did] not address this particular argument" in the district court (Appx8), and Ameranth does not address it here.

Finally, Ameranth asserts the "new claim construction dispute" was never resolved.    The district court did not need to resolve the "new claim construction dispute" because that "dispute" was between Ameranth (for invalidity) and Ameranth (for infringement).    Instead, the court recognized Ameranth's shifting position and that Ameranth's shift on central issues supported an exceptional case finding.    Appx9; Appx18 ("As explained above, Ameranth shifted its long-held position on a central element of its invention, namely that the system be "synchronous" or

"synchronized," to avoid a finding that the Domino's Defendants did not infringe.").

## G.    The district court properly awarded Domino's all its fees

Finally, Ameranth argues that the district court's award of $2,786,185.29 is "unsupportable." (Blue Br. 54.)  Here Ameranth repeats arguments that fail for the same reasons they failed above.  Ameranth tries to compartmentalize the district court's ruling and ignores the broad-based findings underlying the award.  Ameranth ignores the fact that the district court found that Ameranth's case was substantively weak on *all four* patents, and for both infringement and invalidity. Ameranth ignores that the district court found Ameranth's manner of litigation stood out from others at the beginning, middle and end.  At the beginning, Ameranth filed a "scattershot" of 43 California Lawsuits that were substantively weak. Appx2 and Appx19-20.   In the middle, Ameranth took inconsistent positions on key claim terms. Appx9, Appx13 and Appx18.  And throughout, Ameranth continually ignored its defeats and instead proceeded with a "pattern of bullishness."  Appx20-21.

Again, the district court managed Ameranth's 43 California Lawsuits over 10+ years.  Because that experience cannot be replaced, the Supreme Court's reasons for giving deference to district courts apply

46

here as much as any other case. *Homeland Housewares, LLC v. Sorensen Rsch.*, 581 F.App'x 877, 881 (Fed. Cir. 2014) ("We have long afforded district courts 'considerable discretion' in determining the amount of reasonable attorneys' fees under § 285, as we respect 'the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'") (citing *Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012))).

### 1. There is no reason to apportion fees based on the substantive strength of Ameranth's litigation position since all of it was weak

Ameranth next asks this Court to revisit the district court's decision for not allocating between the '077 Patent and other patents. (Blue Br. 58-60.) First, there is no basis for allocation since the district court found that all four patents were weak. Second, Ameranth never raised this argument before the district court. To support the argument, Ameranth cites cases where a district court, in its discretion, awarded partial fees. (Blue Br. 59.) Here, the district court, in its discretion, found that all fees are appropriate and the abuse of discretion standard mandates affirming that conclusion where the court made broad-based findings on why the case stood out from other for many reasons. *Blackbird*, 944 F.3d at 918-19 (finding full award of fees proper where "the record supports the

47

conclusion that Blackbird's misconduct 'so severely affected every stage of the litigation that a full award of attorneys' fees was proper here.'"); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013) (affirming full fee award based on conduct "that was 'pervasive' enough to infect the entire litigation") (internal citation omitted).

Finally, Ameranth repeats its attempt to misstate the standard when it argues that the district court somehow erred by not identifying a time at which Ameranth's enforcement action became "unreasonable." (Blue Br. 60.)  Again, the district court did not need to make an unreasonableness finding. *Octane*, 572 U.S. at 554-55.  Rather, the district court faithfully applied the two key factors required by *Octane* and found broad-based assertions of weak patents and improper manner of litigation, and therefore appropriately awarded Domino's all its fees and costs.

Judge Sabraw did not abuse his discretion in awarding Domino's $2,786,185.29 in fees and costs.

**2.     Ameranth's arguments for parsing fees based on the district court's manner of litigation findings fail**

Ameranth first tries to parse the fees based on the district court's findings on the manner of litigation. Ameranth relies on *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1278 (Fed. Cir. 2018) and argues that "the amount of the award must bear some relation to the extent of the misconduct." (Blue Br. 54.) But *Rembrandt* was a "massive case" where the "claimed misconduct affected only some patents asserted against some defendants." 899 F.3d at 1280. Here, in contrast, the district court found that the substantive strength of Ameranth's case was weak for *all* asserted patents which affected *all* defendants. Further, Ameranth's manner of litigation affected all aspects of the case as discussed above. Significantly, *Rembrandt* itself recognized that when a case stands out from others in a manner "that affects all of the patents in suit," that "may justify an award of all of the fees incurred." *Id.*

Ameranth next revisits several district court findings and asserts that the district court had an "incorrectly limited view of the 'totality of the circumstances.'" (Blue Br. 56.)   Ameranth's arguments here improperly ask this Court to retry the issue in violation of the deferential standard of review required by *Highmark*, 572 U.S. at 564; *Bayer*, 851

F.3d at 1305-06; *see also Inventor Holdings, LLC*, 876 F.3d at 1380 ("§ 285 'does not bar the trial court from awarding fees for the entire case, including any subsequent appeals.'") (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 517 (Fed. Cir. 2014)).

Finally, Ameranth asserts that the district court's fee award has a "chilling effect" on the "basic right to fully litigate unsettled § 101 law." (Blue Br. 57.)  As discussed in Section F.3. above, this case does not trigger any novel § 101 issue and the district court's ruling chills, at most, only the excessive assertion of a family of patents with weak merits, using litigation methods that stand out from others from beginning to end.  Regardless, the district court did not seek any kind of chilling effect. Instead, it merely compensated Domino's for being forced to oppose Ameranth's assertions of numerous weak patents in a manner that stands out from others in multiple ways.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, this Court should affirm the district court's orders on attorneys' fees.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

 /s/ Frank A. Angileri
Frank A. Angileri
Thomas W. Cunningham
1000 Town Center, 22nd Floor
Southfield, Michigan 48075
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351

*Counsel for Defendants-Appellees*

Date: February 2, 2023

# CERTIFICATE OF COMPLIANCE
# WITH TYPE-VOLUME LIMITATIONS

This filing complies with the relevant type-volume limitation of the

Federal Rules of Appellate Procedure and Federal Circuit Rules because

it meets one of the following:

☒   the filing has been prepared using a proportionally-spaced typeface and includes 9,457 words.

☐   the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐   the filing contains _____ pages / _____ words / _____lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

 /s/ Frank A. Angileri
Frank A. Angileri
Thomas W. Cunningham
1000 Town Center, 22nd Floor
Southfield, Michigan 48075
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351

*Counsel for Defendants-Appellees*

Date:  February 2, 2023